UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

BANKERS LIFE INSURANCE COMPANY, :
                               :
      Plaintiff,                :
                               :
vs.                                    :      Civil Action No.
                               :
CREDIT SUISSE FIRST BOSTON    :      8:07-CV-00690-EAK-MSS
CORPORATION, also known as Credit Suisse :
Securities (USA) LLC, CREDIT SUISSE   :
FIRST BOSTON MORTGAGE SECURITIES :
CORP., DLJ MORTGAGE CAPITAL, INC., :
TRIAD GUARANTY INSURANCE      :
CORPORATION, SELECT PORTFOLIO   :
SERVICING, INC. and BANK OF NEW   :
YORK,                              :
                               :
      Defendants.            :

## AMENDED COMPLAINT

Plaintiff, BANKERS LIFE INSURANCE COMPANY ("BANKERS") sues Defendants CREDIT SUISSE FIRST BOSTON CORPORATION, a/k/a CREDIT SUISSE SECURITIES (USA) LLC ("CSFB"), CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORP. ("CSFB Mortgage"), DLJ MORTGAGE CAPITAL, INC. ("DLJ"), TRIAD GUARANTY INSURANCE CORPORATION ("TRIAD"), SELECT PORTFOLIO SERVICING, INC. ("SPS") and BANK OF NEW YORK ("BoNY"), and alleges as follows:

1.      This is an action involving BANKERS' purchase and ownership of pieces of security certificates issued by CSFB Mortgage which certificates are collateralized by pools of individual "sub-prime" mortgage loans on residential real estate.

## JURISDICTION AND VENUE ALLEGATIONS

2.      This is an action for damages and other relief in excess of Seventy-Five Thousand ($75,000.00) Dollars and is within the monetary jurisdiction of this Court.

3.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and 1337. In addition, this Court has jurisdiction pursuant to 28 U.S.C. § 1332, as there is complete diversity among the parties and the amount in controversy exceeds $75,000.00.

4.     Venue is proper in this District pursuant to 28 U.S.C. §1391. Upon information and belief, substantial and material events and omissions giving rise to this action, including certain transactions, acts, practices and course of business, took place in the Middle District of Florida.

5.     In connection with the acts alleged herein, the Defendants, directly or indirectly, used means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## THE PARTIES

6.     BANKERS is a corporation organized and existing under and by virtue of the laws of the State of Florida, with its principal place of business at 360 Central Avenue, St. Petersburg, FL 33701.

7.     CSFB is a Delaware corporation, with its principal place of business in New York, New York. CSFB is, and was at all relevant times, a securities broker/dealer licensed to do business in the State of Florida and is registered with the United States Securities and Exchange Commission ("SEC"), the State of Florida and the National Association of Securities Dealers, Inc. ("NASD"). CSFB is subject to the laws of the United States and the State of Florida, and the rules and regulations promulgated thereunder by the SEC and subject to the rules and regulations of the self-regulating organizations ("SROs") of which it is a member, in addition to being subject to its own internal rules and regulations. CSFB was the underwriter of

2

the securities (hereinafter defined as Certificates) that are the subject of this action, and sold those Certificates to investors and other broker-dealers.

8.    CSFB Mortgage is a Delaware corporation, with its principal place of business in New York, New York. CSFB Mortgage is an affiliate of CSFB. CSFB Mortgage acquired from DLJ the mortgage loans which served as collateral for the Securities described herein and assigned the mortgage loans to a trust for the benefit of the holders of the Securities.

9.    DLJ is a Delaware corporation, with its principal place of business in New York, New York. DLJ is an affiliate of CSFB and the seller of the mortgage loans which served as collateral for the Securities.

10.    TRIAD is an Illinois corporation, with its principal place of business in Greensboro, North Carolina. TRIAD issued a mortgage guaranty insurance policy purportedly to cover the mortgage loans which served as collateral for the Securities.

11.    SPS is a Utah corporation, with its principal place of business at 3815 Southwest Temple, Salt Lake City, Utah. SPS is an affiliate of CSFB and is the servicer of the mortgage loans which serve as collateral for the securities.

12.    BoNY is a commercial bank chartered under the laws of the State of New York with its principal place of business in New York, New York. In connection with the transactions alleged herein, BoNY has served as Trustee for the benefit of the holders of the Securities.

13.    This Court may properly exercise personal jurisdiction over each Defendant pursuant to the claims asserted herein and Florida's Long Arm Statute § 48.193(1) and § 48.193(2), Florida Statutes, since at all times material hereto, each of the Defendants has engaged in substantial and not isolated business activities in Florida, committed tortious acts in Florida, breached contracts in Florida, caused injury to persons in Florida arising out of an act or

**The Hodkin Kopelowitz Ostrow Firm, P.A.**
350 EAST LAS OLAS BLVD.• SUITE 980 • FT. LAUDERDALE, FLORIDA 33301 • TELEPHONE 954-525-4100 • FAX 954-525-4300

omission by Defendants outside and within Florida, and otherwise engaged in systematic and continuous contact with Florida.

## FACTUAL BACKGROUND

14.     On or about November 29, 2001, CSFB Mortgage issued a series of Mortgage-Backed Pass-Through Certificates, titled Series 2001-28, which were collateralized by pools of "sub-prime" residential real estate mortgages located in Florida and elsewhere that had been first purchased by DLJ and then sold to CSFB Mortgage (the "Certificates").[1]  The Certificates are what is commonly known in the industry as an "Asset Backed Security" (hereinafter, an "ABS Security").[2]

15.     CSFB purchased the Certificates from CSFB Mortgage on or after November 30, 2001, in order to sell individual pieces (aka "tranches") of the Certificates to purchasers on the open market, including investors and other broker-dealers.

16.     Amongst other actions, in order to facilitate the sale of the Certificates on the open market, on and after October 23, 2001 CSFB:

      a.  Published a Prospectus regarding the sale of the Certificates (*see* Exhibit "A"); and

      b.  Published a November 29, 2001 Prospectus Supplement regarding the sale

---

[1] The collateral for CSFB 2001-28 consisted of a mortgage pool of one group of 3,055 fixed rate mortgage loans ("Group I mortgage loans") with an aggregate principal balance of $247,399,776 and a second group of 393 adjustable rate mortgage loans ("Group II mortgage loans") with an aggregate principal balance of $37,521,925. The aggregate principal balance of the two groups was $304,921,701.

[2] On January 18, 2005, the SEC approved the following definition of Asset-Backed Securities:

> The term "asset-backed security" is currently defined in Form S-3 to mean a security that is primarily serviced by the cash flows of a discrete pool of receivables or other financial assets either fixed or revolving that by their terms convert into cash within a finite time period plus any rights or other assets designed to assure the securing or timely distribution of proceeds to the security holders.

**The Hodkin Kopelowitz Ostrow Firm, P.A.**
350 EAST LAS OLAS BLVD.• SUITE 980 • FT. LAUDERDALE, FLORIDA 33301 • TELEPHONE 954-525-4100 • FAX 954-525-4300

of the Certificates (*see* Exhibit "B").

17.     The Prospectus and the Prospectus Supplement were prepared and issued with the input, advice, and consent of defendants DLJ, CSFB, CSFB Mortgage, Bank One as trustee (predecessor in interest to defendant BoNY), and Vesta Servicing, L.P. (predecessor in interest to defendant SPS).

18.     Amongst other actions, in order to facilitate the sale of the Certificates on the open market, on and after October 23, 2001 CSFB Mortgage:

    a.  Created trust(s) to hold the Certificates for the benefit of certificate holders and to be administered by Bank One, National Association, as trustee (predecessor in interest to defendant BoNY); and

    b.  Acquired for the benefit of the trust loan a level mortgage guaranty insurance policy issued by Defendant Triad as a "credit enhancement" in order to offer additional security to certificate holders in the trust, and to induce Moody's Rating Service to provide a higher credit rating for the Certificates and thereby making the Certificates more attractive to potential purchasers;[3] and

    c.  Entered into a Pooling and Servicing Agreement dated November 1, 2001 with, amongst others, Vesta Servicing, L.P. (the predecessor in interest to

---

[3] As of November 29, 2001, the date of the Prospectus Supplement, Security I-B-2 was rated A2 (low risk and eligible for bank investment) by Moody's with a maturity date of November 25, 2031 and a projected weighted average life[3] of nine (9) years. Moody's rating of the Securities was based on information supplied by CSFB addressing the likelihood that the financial obligations represented by the securities would be honored. Similarly, as of November 29, 2001, Security I-B-3 was rated Baa2 by Moody's, an investment grade designation, with a maturity date of November 25, 2031 and a projected weighted average life of nine (9) years.

**The Hodkin Kopelowitz Ostrow Firm, P.A.**
350 EAST LAS OLAS BLVD.• SUITE 980 • FT. LAUDERDALE, FLORIDA 33301 • TELEPHONE 954-525-4100 • FAX 954-525-4300

defendant SPS), defendant DLJ Mortgage Capital, Inc., and Bank One National Association as trustee (predecessor in interest to defendant BoNY) (*see* Exhibit "C").

19. Amongst other things, the Prospectus Supplement issued by CSFB provides that:

   a. "[n]o mortgage loan [that makes up the pool collateralizing the Certificates] will be delinquent more than 30 days as of the cut-off date." (*See* Exhibit "B", S-19). The Prospectus Supplement defines the cut-off date as November 1, 2001 (*See* Exhibit "B", S-5); and

   b. In the event of a breach of any representation or warranty relating to a mortgage loan that materially and adversely affects the interest of the certificateholders in that mortgage loan, the seller of that mortgage loan (including defendant DLJ) would be obligated to do one of the following: (i) cure that breach; (ii) repurchase that mortgage loan ... or (iii) substitute a replacement mortgage loan for that mortgage loan within two years of the closing date (*see* Exhibit "B", S-17 and S-18); and

   c. That credit support would be provided by over-collateralization[4] ("O/C") of $2,286,915 which would be properly administered; and

   d. That fraudulent mortgage loans would be put back to DLJ;

   e. That the mortgage loans would be properly serviced;

---

[4] The original O/C of $2,286,915 was the difference between the total unpaid principal balance of $304,921,701 of the mortgage loans for the Transaction minus the principal amount sold to investors ($302,634,786). CSFB, SPS and others conspired to charge loan losses to the O/C account which should have been put back to DLJ, the seller of the mortgage loans, or a claim for insurance should have been filed with TRIAD. The current balance of the O/C is <u>zero</u> because CSFB, SPS and others have wrongfully charged the O/C for losses that should have been covered by TRIAD insurance or tendered to DLJ in violation of the representations made to BANKERS.

**The Hodkin Kopelowitz Ostrow Firm, P.A.**
350 EAST LAS OLAS BLVD.• SUITE 980 • FT. LAUDERDALE, FLORIDA 33301 • TELEPHONE 954-525-4100 • FAX 954-525-4300

f.   That insurance claims would be properly filed and pursued.

20.   Notwithstanding the representation in the Prospectus Supplement that "[n]o mortgage loan will be delinquent more than 30 days as of the cut-off date [November 1, 2001]" the trustee's own Statement to Certificateholders established that there were loans that were delinquent more than 30 days as of the cut-off date.   *See* Exhibit "D", Statement to Certificateholders (Dec. 26, 2001) (at least 132 of the loans underlying the Certificates were more than 30 days delinquent as of November 30, 2001).   Thus, the representation in the Prospectus Supplement that "[n]o mortgage loan will be delinquent more than 30 days as of the cut-off date" was false, and CSFB, CSFB Mortgage, Bank One as trustee (the predecessor in interest to defendant BoNY), and Vesta Servicing, L.P. (predecessor in interest to defendant SPS) (the loan servicer) knew or should have known the representation was false when it was made.

21.   Although Bank One as trustee (predecessor in interest to defendant BoNY), CSFB, CSFB Mortgage, and SPS knew or should have known the Prospectus Supplement was materially misleading and wrong as of the day it was issued, they never issued an amendment or correction to the Prospectus Supplement.

22.   The Trustee, CSFB, CSFB Mortgage, and SPS knew or should have known that third party purchasers of the Certificates would rely on the information in the Prospectus Supplement when purchasing the Certificates or any part thereof.   In fact, the Prospectus Supplement specifically provides that "[y]ou should rely on the information contained in this document or to which we have referred you in this prospectus supplement.   We have not authorized anyone to provide you with information that is different." (*See* Exhibit "B", S-2).

23.   Additionally, in the Pooling and Servicing Agreement, defendant DLJ represented

7

and warranted, amongst other things, that:

a. All payments due prior to the Cut-off Date (November 1, 2001) for such Mortgage Loan have been made as of the Closing Date (November 30, 2001), the Mortgage Loan is not delinquent in payment more than 30 days; and there are no material defaults under the terms of the Mortgage Loan. (*See* Exhibit "C", Schedule III(A)(iii) (p. III-1).

b. "No fraud, error, omission, misrepresentation, negligence, or similar occurrence with respect to a Mortgage Loan has taken place on the part of Seller or the Mortgagor, or to the best of the Seller's knowledge, on the part of any other party involved in the origination of the Mortgage Loan." (*See* Exhibit "C," Schedule III(A)(x), p. III-3); and

c. Upon discovery of any breach of a representation or warranty that materially and adversely affects the interests of the Certificateholders, the Seller (defendant DLJ) would cure the breach, or, if the breach occurred prior to the second anniversary of the Closing Date, DLJ would have the alternative option of supplying a substitute mortgage loan for the loan that caused the breach, or repurchase the subject mortgage loan. (*See* Exhibit "C," § 2.03(c), p. 47.

24. The Certificateholders, including but not limited to BANKERS, are intended third party beneficiaries to the Pooling and Servicing Agreement.

25. DLJ knew or should have known that the following representations and warranties that it made as related in the preceding paragraph were false, or were recklessly made:

**The Hodkin Kopelowitz Ostrow Firm, P.A.**
350 EAST LAS OLAS BLVD.• SUITE 980 • FT. LAUDERDALE, FLORIDA 33301 • TELEPHONE 954-525-4100 • FAX 954-525-4300

    a.  That all payments due prior to the Cut-Off Date for such Mortgage Loans that formed the collateral for the Certificates had been made as of the Closing Date;

    b.  The Mortgage Loans were not delinquent in payment more than 30 days;

    c.  There are no material defaults under the terms of the Mortgage Loan; and

    d.  That there was no fraud, error, omission, misrepresentation, negligence, or similar occurrence with respect to the Mortgage Loan on the part of Seller or the Mortgagor.

26.    On information and belief, DLJ did not cure the breaches of the foregoing representations and warranties, or repurchase the Mortgage Loans subject to the breach of the representations or warranties, or (within two years of the Closing Date) supply substitute collateral for the breach of the representation or warranty.

27.    Neither Bank One as trustee (predecessor in interest to defendant BoNY) nor SPS as servicer have protected the Certificateholders, including BANKERS, by pursuing the remedies available under to the Pooling and Servicing Agreement to force DLJ to cure the breaches relating to the subject Mortgage Loans, or caused DLJ to provide substitute collateral for the Mortgage Loans, or caused DLJ to repurchase the Mortgage Loans.

28.    In January and February of 2004, BANKERS purchased tranches of the Certificates, including the tranches identified as Security I-B-2 and Security I-B-3 (hereinafter the "Certificate Tranches").[5]

---

[5] Security I-B-2 was acquired by BANKERS in two separate purchases as follows:

**The Hodkin Kopelowitz Ostrow Firm, P.A.**
350 EAST LAS OLAS BLVD.• SUITE 980 • FT. LAUDERDALE, FLORIDA 33301 • TELEPHONE 954-525-4100 • FAX 954-525-4300

29.    At the time or prior to BANKERS' purchase of the Certificate Tranches, neither

CSFB, CSFB Mortgage, SPS, nor Bank One as trustee (the predecessor in interest to defendant

BoNY) had: (a) made any amendment or correction to the Prospectus Supplement (commonly

known in the industry as a "sticker," where corrective information may be displayed on a sticker

pasted to the Prospectus Supplement) or any of the Statements to Certificate holders; (b)

informed potential purchasers of the Certificates, including BANKERS, that neither SPS nor

Bank One as trustee had sought to enforce against DLJ as seller their rights under the Pooling

and Servicing Agreement to prevent the impairment of the collateral and its concomitant

diminution in value; or (c) informed potential purchasers, including BANKERS, that the insurer

(Triad) had declined to cover many of the mortgage loans in the pool on the basis, amongst other

things, that the loans had been procured through the use of fraud; or (d) informed potential

purchasers, including BANKERS, that neither SPS nor Bank One as trustee had sought to

enforce their legal remedies against the insurer for denying insurance coverage for many of the

delinquent mortgage loans.

30.    Prior to BANKERS' purchase of the Certificate Tranches, neither CSFB, CSFB

---

       a)    $800,000 original face amount of January 12, 2004 at a price of
104 24/32. ($811,685.87). The current face of I-B-2 at the time
of purchase was $773,860.49.

       b)    $95,000 original face amount on February 25, 2004 at a price of
104 8/32. ($95,801.51). The current face of I-B-2 at the time of
purchase was $91,895.98.

Security I-B-3 was acquired by BANKERS in a single purchase in accordance with the following
terms:

          $500,000 original face amount on February 2, 2004 at a price of
$100.00 (par). The current face of Security I-B-3 at the time of
purchase was $483,662.81.

**The Hodkin Kopelowitz Ostrow Firm, P.A.**
350 EAST LAS OLAS BLVD.• SUITE 980 • FT. LAUDERDALE, FLORIDA 33301 • TELEPHONE 954-525-4100 • FAX 954-525-4300

Mortgage, SPS, nor Bank One as trustee notified Moody's Rating Service, a source commonly relied on in the industry by investors in making decisions to purchase or not purchase particular securities, and for ratings on various securities, including the Certificates at issue in this case, that (a) there were numerous loan delinquencies and defaults in the pool; and (b) SPS had not enforced against DLJ as seller its rights under the Pooling and Servicing Agreement to prevent the impairment of the collateral and its concomitant diminution in value; and (c) that the insurer had declined to cover many of the mortgage loans in the pool on the basis, amongst other things, that the loans had been procured through the use of fraud; or (d) that neither Bank One as trustee nor SPS as servicer had sought to enforce their rights against the insurer for denying insurance coverage for many of the delinquent Mortgage Loans. Had this information been disclosed to Moody's, it would have certainly resulted in an earlier downgrade of the Certificates by Moody's.

31. On the dates BANKERS purchased (January 12, 2004 and February 25, 2004) both pieces of Security I-B-2, the Moody's rating was still A2, the same as it was at the time of original distribution. Similarly, on the date BANKERS purchased (February 2, 2004) Security I-B-3, the Moody's rating was still Baa2.

32. Following the purchase of the Securities by BANKERS in January and February 2004, both Security I-B-2 and Security I-B-3 suffered a series of Moody's rating downgrades which commenced in January, 2005.[6] Had a downgrade been made prior to BANKERS' purchase, BANKERS would not have purchased the Securities.

---

[6] Security I-B-2 suffered a series of Moody's rating downgrades as follows:

**The Hodkin Kopelowitz Ostrow Firm, P.A.**
350 EAST LAS OLAS BLVD.• SUITE 980 • FT. LAUDERDALE, FLORIDA 33301 • TELEPHONE 954-525-4100 • FAX 954-525-4300

33.     Moreover, if CSFB, CSFB Mortgage, Bank One as trustee (predecessor in interest to defendant BoNY), or SPS as servicer published information to reflect the problems with loan delinquencies and the improper administration of the insurance related and other credit enhancements prior to purchase, BANKERS would not have purchased the Certificate Tranches.

34.     Had the Securities been properly downgraded to reflect the problems with loan delinquencies and the improper administration of the insurance related and other credit enhancements prior to purchase, BANKERS would not have purchased the Certificate Tranches.

35.     All of the foregoing representations regarding the collateral and credit enhancements, coupled with the falsely maintained investment grade ratings of the Securities by Moody's, due to CSFB's misrepresentations and omissions, and CSFB's reputation and marketing efforts regarding the nature and minimal risk of the Securities, induced BANKERS to purchase Security I-B-2 and Security I-B-3 as set forth above.

| Rating[6] | Date of Downgrade |
|---|---|
| A2*- | 1/05 |
| Baa3 | 3/05 |
| Baa3*- | 7/05 |
| B1 | 9/05 |
| B1*- | 7/06 |
| Caa1 | 10/06 |
| Ca | 5/11/07 |

Similar to Security I-B-2, between January, 2005 and September, 2005, Security I-B-3 has suffered a series of rating downgrades by Moody's as follows:

| Rating[6] | Date of Downgrade |
|---|---|
| Baa2*- | 1/05 |
| B1 | 3/05 |
| B1*- | 7/05 |
| Ca | 9/05 |

**The Hodkin Kopelowitz Ostrow Firm, P.A.**
350 EAST LAS OLAS BLVD.• SUITE 980 • FT. LAUDERDALE, FLORIDA 33301 • TELEPHONE 954-525-4100 • FAX 954-525-4300

36.     All conditions precedent to the institution of this action have occurred, have been excused, are futile or impossible, are satisfied, or have been otherwise waived.

## Count I

### Negligent Misrepresentation Against CSFB

37.     BANKERS repeats and realleges each and every allegation contained in Paragraphs 1 through 37 above, with the same force and effect as if set forth fully herein.

38.     As more fully described above, CSFB made misrepresentations of material fact and omitted material facts to the investing public, including BANKERS, in connection with the Transaction and the purchase by BANKERS of Security I-B-2 and Security I-B-3. Specifically, CSFB represented in the Prospectus Supplement that "no mortgage loan will be delinquent more than 30 days as of the cut-off date."

39.     In addition, CSFB, after the creation and issuance of the Securities, continued to misrepresent material facts by omitting material facts and concealing the condition of the loan pool. CSFB knew that the investing public would be relying upon the Prospectus, the Prospectus Supplement, the terms of the Pooling and Servicing Agreement, and the Moody's rating in deciding whether or not to purchase the Securities, but CSFB as underwriter never updated (stickered as set forth above) these documents, as is customary in the industry, to reflect that: (a) insurance coverage had been denied for a substantial portion of the mortgage loans constituting the mortgage pool; (b) the servicer had not enforced its legal rights under the Pooling and Servicing Agreement; (c) the trustee had not reported information to the rating agencies (e.g., Moody's) relied on by the investing public, regarding the status of the loans constituting the mortgage pools; (d) the trustee had not reported information to the rating agencies (e.g., Moody's) relied on by the investing public regarding the insurance coverage available (or lack

13

thereof) in connection with the Pooling and Servicing Agreement; (e) the trustee had not enforced its rights under the Pooling and Servicing Agreement against the insurer under the Pooling and Servicing Agreement; or (f) the trustee had not enforced its rights under the Pooling and Servicing Agreement against the Seller (DLJ) to cure loan defaults.

40.     BANKERS would not have purchased the Certificate Tranches if: (a) CSFB had published any of the information referred to in the preceding paragraph; (b) the Prospectus Supplement accurately stated the status of the loans as of the Closing Date; or (c) the Prospectus Supplement had been updated ("stickered" as referred to hereinabove) after its issuance.

41.     CSFB failed to use reasonable care when supplying the false information described above, or when omitting to publish accurate information, and knew or should have known that the information would be used by members of the investing public, including BANKERS, to purchase the Securities.

42.     CSFB made the foregoing misrepresentations and/or omissions with the intent to influence purchases of the Securities.

43.     BANKERS reasonably and justifiably relied on misrepresentations made by CSFB, or the misrepresentations CSFB made by omission, in deciding to purchase Security I-B-2 and Security I-B-3.

44.     But for CSFB's conduct, BANKERS would not have purchased Security I-B-2 and Security I-B-3.

45.     As a direct and proximate result of CSFB's conduct, CSFB has caused BANKERS to incur substantial monetary damages.

46.     CSFB's actions as more fully described above were willful, oppressive and malicious; therefore BANKERS reserves its right to bring a claim for punitive damages.

WHEREFORE, BANKERS respectfully requests that this Court enter a judgment in its favor for:

(a)     its damages caused by CSFB's negligent misrepresentation, plus pre-judgment and post-judgment interest; and

(b)     such other and further relief as this Court considers appropriate.

### Count II

### False Information Negligently Supplied for the Guidance of Others against CSFB

47.     BANKERS repeats and realleges each and every allegation contained in Paragraphs 1 through 37 above, with the same force and effect as if set forth fully herein.

48.     BANKERS is one of a limited group of persons for whose benefit and guidance CSFB intended to supply the information contained in the Prospectus and the Prospectus Supplement.

49.     CSFB intended the information in the Prospectus and the Prospectus Supplement to influence the limited group of persons who are purchasers of the Certificates, like BANKERS, to influence BANKERS' purchase of the Certificate Tranches.

50.     As more fully described above, CSFB made misrepresentations of material fact and omitted material facts to the investing public, including BANKERS, in connection with the Transaction and the purchase by BANKERS of Security I-B-2 and Security I-B-3. Specifically, CSFB represented in the Prospectus Supplement that "no mortgage loan will be delinquent more than 30 days as of the cut-off date."

51.     Additionally, CSFB, after the creation and issuance of the Securities, continued to misrepresent material facts by omitting material facts and concealing the condition of the loan pool. CSFB knew that the investing public would be relying upon the Prospectus, the Prospectus

15

Supplement, the terms of the Pooling and Servicing Agreement, and the Moody's rating in deciding whether or not to purchase the Securities, but CSFB as underwriter never updated (stickered as set forth above) these documents, as is customary in the industry, to reflect that: (a) insurance coverage had been denied for a substantial portion of the mortgage loans constituting the mortgage pool; (b) the servicer had not enforced its legal rights under the Pooling and Servicing Agreement; (c) the trustee had not reported information to the rating agencies (e.g., Moody's) relied on by the investing public, regarding the status of the loans constituting the mortgage pools; (d) the trustee had not reported information to the rating agencies (e.g., Moody's) relied on by the investing public regarding the insurance coverage available (or lack thereof) in connection with the Pooling and Servicing Agreement; (e) the trustee had not enforced its rights under the Pooling and Servicing Agreement against the insurer under the Pooling and Servicing Agreement; or (f) the trustee had not enforced its rights under the Pooling and Servicing Agreement against the Seller (DLJ) to cure loan defaults.

52.     BANKERS would not have purchased the Certificate Tranches if: (a) CSFB had published any of the information referred to in the preceding paragraph; (b) the Prospectus Supplement accurately stated the status of the loans as of the Closing Date; or (c) the Prospectus Supplement had been updated ("stickered" as referred to hereinabove) after its issuance.

53.     CSFB supplied false information for the guidance of others (in this case, the class of investors purchasing the Certificates, like BANKERS) in their business transactions.

54.     BANKERS justifiably relied on the false information published by CSFB when BANKERS purchased the Certificate Tranches.

55.     BANKERS suffered pecuniary loss and has been damaged by CSFB's false information.

**The Hodkin Kopelowitz Ostrow Firm, P.A.**
350 EAST LAS OLAS BLVD.• SUITE 980 • FT. LAUDERDALE, FLORIDA 33301 • TELEPHONE 954-525-4100 • FAX 954-525-4300

56.     CSFB's actions as more fully described above were willful, oppressive and malicious; therefore BANKERS reserves its right to bring a claim for punitive damages.

WHEREFORE, BANKERS respectfully requests that this Court enter a judgment in its favor for:

(a)     its damages caused by CSFB's false information, plus pre-judgment and post-judgment interest; and

(b)     such other and further relief as this Court considers appropriate.

## COUNT III

### Common Law Fraud Against CSFB

57.     BANKERS repeats and realleges each and every allegation contained in Paragraphs 1 through 37 above, with the same force and effect as if set forth fully herein.

58.     As more fully described above, CSFB made misrepresentations of material fact and omitted material facts to the investing public, including BANKERS, in connection with the Transaction and the purchase by BANKERS of Security I-B-2 and Security I-B-3.

59.     In addition, CSFB, after the creation and issuance of the Securities, continued to misrepresent material facts, omitted material facts and intentionally concealed the true nature of the Transaction. CSFB knew that the investing public would be relying upon the Prospectus, the Prospectus Supplement, and the Moody's rating in deciding whether or not to purchase the Securities.

60.     Had CSFB updated the Prospectus Supplement to accurately reflect the status of the collateral for the Certificates, BANKERS would not have purchased the Certificate Tranches.

61.     CSFB knew or should have known of the falsity of the misrepresentations, as well as the omissions, and made the foregoing misrepresentations and/or omissions with the intent to

influence purchases of the Certificate Tranches.

62.    BANKERS reasonably and justifiably relied on the reputation of CSFB, the Moody's rating (controlled by CSFB) and the various misrepresentations and/or omissions made by CSFB and purchased Security I-B-2 and Security I-B-3.

63.    But for CSFB's conduct, BANKERS would not have purchased Security I-B-2 and Security I-B-3.

64.    As a direct and proximate result of CSFB's conduct, CSFB has caused BANKERS to incur substantial monetary damages.

65.    CSFB's actions as more fully described above were willful, oppressive and malicious; therefore BANKERS reserves its right to bring a claim for punitive damages.

WHEREFORE, BANKERS respectfully requests that this Court enter a judgment in its favor for:

(a)    its damages caused by CSFB's fraud, plus pre-judgment and post-judgment interest; and

(b)    such other and further relief as this Court considers appropriate.

## COUNT IV

### Breach of Fiduciary Duty Against CSFB

66.    BANKERS repeats and realleges each and every allegation contained in Paragraphs 1 through 37 above, with the same force and effect as if set forth fully herein.

67.    CSFB offered the Certificates to the investing public, including BANKERS, in the State of Florida.

68.    CSFB, their officers, agents and employees, held themselves out to the certificateholders, including BANKERS, as having knowledge and expertise in the area of ABS

**The Hodkin Kopelowitz Ostrow Firm, P.A.**
350 EAST LAS OLAS BLVD.• SUITE 980 • FT. LAUDERDALE, FLORIDA 33301 • TELEPHONE 954-525-4100 • FAX 954-525-4300

Securities and sought to obtain BANKERS' trust, confidence and reliance, and thus, owed BANKERS a fiduciary duty of full disclosure, honesty and complete candor and loyalty in their dealings.

69.     CSFB knew, or reasonably should have known, that BANKERS would be relying on the information being disseminated regarding the Securities.

70.     CSFB owed BANKERS the duty to make full disclosure of all material facts necessary for BANKERS to make informed investment decisions.

71.     CSFB owed BANKERS a fiduciary duty to act in a fair, honest, just, trustworthy and equitable manner.

72.     CSFB breached its fiduciary duties to BANKERS in a willful, reckless and negligent manner by undertaking to harm BANKERS, by making misrepresentations of material fact and omitting material facts that caused substantial losses to BANKERS.

73.     As a direct and proximate result of the foregoing, BANKERS has been substantially damaged in an amount to be subsequently determined.

74.     CSFB's actions were willful, oppressive and malicious, therefore BANKERS reserves its right to bring a claim for punitive damages.

WHEREFORE, BANKERS respectfully requests that this Court enter a judgment in its favor for:

(a)     its damages caused by CSFB's breach of fiduciary duty, plus pre-judgment and post-judgment interest; and

(b)     such other and further relief as this Court considers appropriate.

**The Hodkin Kopelowitz Ostrow Firm, P.A.**
350 EAST LAS OLAS BLVD.• SUITE 980 • FT. LAUDERDALE, FLORIDA 33301 • TELEPHONE 954-525-4100 • FAX 954-525-4300

### Count V

### Negligent Misrepresentation Against CSFB Mortgage

75.     BANKERS repeats and realleges each and every allegation contained in Paragraphs 1 through 37 above, with the same force and effect as if set forth fully herein.

76.     As more fully described above, CSFB Mortgage made misrepresentations of material fact and omitted material facts to the investing public, including BANKERS, in connection with the Transaction and the purchase by BANKERS of Security I-B-2 and Security I-B-3.   Specifically, CSFB Mortgage represented in the Prospectus Supplement that "no mortgage loan will be delinquent more than 30 days as of the cut-off date."

77.     BANKERS would not have purchased the Certificate Tranches if: (a) CSFB Mortgage had published any of the information referred to in the preceding paragraph; (b) the Prospectus Supplement accurately stated the status of the loans as of the Closing Date; or (c) the Prospectus Supplement had been updated ("stickered" as referred to hereinabove) after its issuance.

78.     CSFB Mortgage failed to use reasonable care when supplying the false information described above, or when omitting to publish accurate information, and knew or should have known that the information would be used by members of the investing public, including BANKERS, to purchase the Securities.

79.     CSFB Mortgage made the foregoing misrepresentations and/or omissions with the intent to influence purchases of the Securities.

80.     BANKERS reasonably and justifiably relied on misrepresentations made by CSFB Mortgage, or the misrepresentations CSFB Mortgage made by omission, in deciding to purchase Security I-B-2 and Security I-B-3.

**The Hodkin Kopelowitz Ostrow Firm, P.A.**
350 EAST LAS OLAS BLVD.• SUITE 980 • FT. LAUDERDALE, FLORIDA 33301 • TELEPHONE 954-525-4100 • FAX 954-525-4300

81.    But for CSFB Mortgage's conduct, BANKERS would not have purchased Security I-B-2 and Security I-B-3.

82.    As a direct and proximate result of CSFB Mortgage's conduct, CSFB Mortgage has caused BANKERS to incur substantial monetary damages.

83.    CSFB Mortgage's actions as more fully described above were willful, oppressive and malicious; therefore BANKERS reserves its right to bring a claim for punitive damages.

WHEREFORE, BANKERS respectfully requests that this Court enter a judgment in its favor for:

(a)    its damages caused by CSFB Mortgage's negligent misrepresentation, plus pre-judgment and post-judgment interest; and

(b)    such other and further relief as this Court considers appropriate.

## Count VI

### False Information Negligently Supplied for the Guidance of Others against CSFB Mortgage

84.    BANKERS repeats and realleges each and every allegation contained in Paragraphs 1 through 37 above, with the same force and effect as if set forth fully herein.

85.    BANKERS is one of a limited group of persons for whose benefit and guidance CSFB Mortgage intended to supply the information contained in the Prospectus and the Prospectus Supplement.

86.    CSFB Mortgage intended the information in the Prospectus and the Prospectus Supplement to influence the limited group of persons who are purchasers of the Certificates, like BANKERS, to influence BANKERS' purchase of the Certificate Tranches.

**The Hodkin Kopelowitz Ostrow Firm, P.A.**
350 EAST LAS OLAS BLVD.• SUITE 980 • FT. LAUDERDALE, FLORIDA 33301 • TELEPHONE 954-525-4100 • FAX 954-525-4300

87.    As more fully described above, CSFB Mortgage made misrepresentations of material fact and omitted material facts to the investing public, including BANKERS, in connection with the Transaction and the purchase by BANKERS of Security I-B-2 and Security I-B-3.    Specifically, CSFB Mortgage represented in the Prospectus Supplement that "no mortgage loan will be delinquent more than 30 days as of the cut-off date."

88.    BANKERS would not have purchased the Certificate Tranches if: (a) CSFB Mortgage had published any of the information referred to in the preceding paragraph; (b) the Prospectus Supplement accurately stated the status of the loans as of the Closing Date; or (c) the Prospectus Supplement had been updated ("stickered" as referred to hereinabove) after its issuance.

89.    CSFB Mortgage supplied false information for the guidance of others (in this case, the class of investors purchasing the Certificates, like BANKERS) in their business transactions.

90.    BANKERS justifiably relied on the false information published by CSFB Mortgage when BANKERS purchased the Certificate Tranches.

91.    BANKERS suffered pecuniary loss and has been damaged by CSFB Mortgage's false information.

92.    CSFB Mortgage's actions as more fully described above were willful, oppressive and malicious; therefore BANKERS reserves its right to bring a claim for punitive damages.

WHEREFORE, BANKERS respectfully requests that this Court enter a judgment in its favor for:

(a)    its damages caused by CSFB Mortgage's false information, plus pre-judgment and post-judgment interest; and

(b)      such other and further relief as this Court considers appropriate.

## Count VII

### Common Law Fraud Against CSFB Mortgage

93.      BANKERS repeats and realleges each and every allegation contained in Paragraphs 1 through 37 above, with the same force and effect as if set forth fully herein.

94.      As more fully described above, CSFB Mortgage made misrepresentations of material fact and omitted material facts to the investing public, including BANKERS, in connection with the Transaction and the purchase by BANKERS of Security I-B-2 and Security I-B-3.

95.      Specifically, CSFB Mortgage represented in the Prospectus Supplement that "no mortgage loan will be delinquent more than 30 days as of the cut-off date." The foregoing statement was false, and CSFB Mortgage knew or should have known it was false when made.

96.      BANKERS would not have purchased the Certificate Tranches if CSFB Mortgage had disclosed that there were mortgage loans that were delinquent more than 30 days as of the cut-off date.

97.      CSFB Mortgage made the foregoing misrepresentations and/or omissions with the intent to influence purchases of the Certificates.

98.      BANKERS reasonably and justifiably relied on the information provided by CSFB Mortgage in deciding to purchase the Certificate Tranches.

99.      But for the misrepresentations of CSFB Mortgage, BANKERS would not otherwise have purchased the Certificates.

100.     As a direct and proximate result of CSFB Mortgage's conduct, CSFB Mortgage has caused BANKERS to incur substantial monetary damages.

**The Hodkin Kopelowitz Ostrow Firm, P.A.**
350 EAST LAS OLAS BLVD.• SUITE 980 • FT. LAUDERDALE, FLORIDA 33301 • TELEPHONE 954-525-4100 • FAX 954-525-4300

101. CSFB Mortgage's actions as more fully described above were willful, oppressive and malicious; therefore BANKERS reserves its right to bring a claim for punitive damages.

WHEREFORE, BANKERS respectfully requests that this Court enter a judgment in its favor for:

(a) its damages caused by CSFB Mortgage's fraud, plus pre-judgment and post-judgment interest; and

(b) such other and further relief as this Court considers appropriate.

### Count VIII

### Breach of Contract Against TRIAD

102. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 37 above, with the same force and effect as if set forth fully herein.

103. BONY and TRIAD entered into an agreement whereby TRIAD was to provide mortgage loan guaranty insurance to protect and indemnify the Securities. A true and correct copy of the TRIAD insurance policy is attached hereto as Exhibit "E."

104. The mortgage loan guaranty insurance was procured for the benefit of Certificate holders, who were specifically instructed in the Prospectus Supplement to rely on the existence of said insurance in determining whether to purchase the Certificates.

105. BANKERS is an intended third party beneficiary of the insurance policy between BoNY and TRIAD, because: (a) the insurance policy expresses an intent to primarily and directly benefit the class of persons to which BANKERS belongs; that is, Bank One, N.A. as trustee for CSFB Mortgage-Backed Pass-Through Certificates Series 2001-28; and (b) all of the parties to the insurance policy intended to benefit the class of persons to which BANKERS belongs; that is, the owners of the Certificates.

**The Hodkin Kopelowitz Ostrow Firm, P.A.**
350 EAST LAS OLAS BLVD.• SUITE 980 • FT. LAUDERDALE, FLORIDA 33301 • TELEPHONE 954-525-4100 • FAX 954-525-4300

106. The foregoing agreement to provide mortgage loan guaranty insurance was for the intended benefit of all certificateholders, including BANKERS.

107. The foregoing agreement to provide mortgage loan guaranty insurance was breached by TRIAD as more fully set forth above.

108. As a direct and proximate result of TRIAD's breach of the agreement to provide mortgage loan guaranty insurance, BANKERS has suffered damage.

WHEREFORE, BANKERS respectfully requests that this Court enter a judgment in its favor for:

(a) its damages caused by Triad's breach of contract, plus pre-judgment and post-judgment interest; and

(b) such other and further relief as this Court considers appropriate.

## Count IX

## Breach of Contract Against DLJ

109. BANKERS repeats and realleges each and every allegation contained in Paragraphs 1 through 37 above, with the same force and effect as if set forth fully herein.

110. BANKERS is an intended third party beneficiary of the Pooling and Servicing Agreement, because: (a) the Pooling and Servicing Agreement clearly expresses an intent to primarily and directly benefit the class of persons to which BANKERS belongs; that is, owners of the Certificates or of any part thereof; and (b) all of the parties to the Pooling and Servicing Agreement intended to benefit the class of persons to which BANKERS belongs.

111. Under § 2.03 of the Pooling and Servicing Agreement, DLJ was obligated to cure any breaches of the representations and warranties referred to thereunder and in Schedules IIA, IIB, IIC, IIIA, and IIIB.

**The Hodkin Kopelowitz Ostrow Firm, P.A.**
350 EAST LAS OLAS BLVD.• SUITE 980 • FT. LAUDERDALE, FLORIDA 33301 • TELEPHONE 954-525-4100 • FAX 954-525-4300

112.   DLJ has breached the Pooling and Servicing Agreement, because DLJ has not cured the breaches of its representations and warranties as set forth within § 2.03(c) of the Pooling and Servicing Agreement.

113.   As a direct and proximate result of DLJ's conduct, DLJ has caused BANKERS to incur substantial monetary damages.

WHEREFORE, BANKERS respectfully requests that this Court enter a judgment in its favor for:

(a)   its damages caused by DLJ's breach of contract, plus pre-judgment and post-judgment interest; and

(b)   such other and further relief as this Court considers appropriate.

## Count X

### Breach of Fiduciary Duty Against SPS

114.   BANKERS repeats and realleges each and every allegation contained in Paragraphs 1 through 37 above, with the same force and effect as if set forth fully herein.

115.   SPS is the servicer of the mortgage pool constituting the collateral for the Certificates.

116.   SPS, their officers, agents and employees, held themselves out to the certificateholders, including BANKERS, as having knowledge and expertise in the area of ABS Securities and sought to obtain BANKERS' trust, confidence and reliance, and thus, owed BANKERS a fiduciary duty of full disclosure, honesty and complete candor and loyalty in their dealings.

117.   SPS knew, or reasonably should have known, that BANKERS would be relying on the information being disseminated regarding the Securities.

118. SPS owed BANKERS the duty to make full disclosure of all material facts necessary for BANKERS to make informed investment decisions.

119. SPS owed BANKERS a fiduciary duty to act in a fair, honest, just, trustworthy and equitable manner.

120. SPS breached its fiduciary duties to BANKERS in a willful, reckless and negligent manner by undertaking to harm BANKERS, by making misrepresentations of material fact and omitting material facts that caused substantial losses to BANKERS.

121. As a direct and proximate result of the foregoing, BANKERS has been substantially damaged in an amount to be subsequently determined.

122. Defendants' actions were willful, oppressive and malicious, therefore BANKERS reserves its right to bring a claim for punitive damages.

WHEREFORE, BANKERS respectfully requests that this Court enter a judgment in its favor for:

(a)     its damages caused by SPS's breach of fiduciary duty, plus pre-judgment and post-judgment interest; and

(b)     such other and further relief as this Court considers appropriate.

## Count XI

### Breach of Contract against SPS (affirmative actions)

123. BANKERS repeats and realleges each and every allegation contained in Paragraphs 1 through 37 above, with the same force and effect as if set forth fully herein.

124. BANKERS is an intended third party beneficiary of the Pooling and Servicing Agreement, because: (a) the Pooling and Servicing Agreement clearly expresses an intent to primarily and directly benefit the class of persons to which BANKERS belongs; that is, owners

27

of the Certificates or of any part thereof; and (b) all of the parties to the Pooling and Servicing Agreement intended to benefit the class of persons to which BANKERS belongs.

125.    Under the Pooling and Servicing Agreement, SPS was obligated to (a) pursue claims for insurance coverage regarding the loans in the pool (see Exhibit "C," § 3.09); and (b) foreclose on delinquent loans (see Exhibit "C," § 3.11);

126.    SPS breached the Pooling and Servicing Agreement by failing to enforce its rights and carry out its duties under §§ 3.09 and 3.11 of the Pooling and Servicing Agreement.

127.    BANKERS has been damaged by SPS's breach of the Pooling and Servicing Agreement.

WHEREFORE, BANKERS respectfully requests that this Court enter a judgment in its favor for:

(a)    its damages caused by SPS's breach of contract, plus pre-judgment and post-judgment interest; and

(b)    such other and further relief as this Court considers appropriate.

## Count XII

### Breach of Contract against SPS (reporting)

128.    BANKERS repeats and realleges each and every allegation contained in Paragraphs 1 through 37 above, with the same force and effect as if set forth fully herein.

129.    BANKERS is an intended third party beneficiary of the Pooling and Servicing Agreement, because: (a) the Pooling and Servicing Agreement clearly expresses an intent to primarily and directly benefit the class of persons to which BANKERS belongs; that is, owners of the Certificates or of any part thereof; and (b) all of the parties to the Pooling and Servicing Agreement intended to benefit the class of persons to which BANKERS belongs.

**The Hodkin Kopelowitz Ostrow Firm, P.A.**
350 EAST LAS OLAS BLVD.• SUITE 980 • FT. LAUDERDALE, FLORIDA 33301 • TELEPHONE 954-525-4100 • FAX 954-525-4300

130.   Under the Pooling and Servicing Agreement, SPS was obligated to provide loan information to the Trustee (See Exhibit "C," §§ 2.07(m) and 3.07(a)).

131.   SPS breached the Pooling and Servicing Agreement by failing to supply the Trustee with complete and accurate information regarding the mortgage loans constituting the pool collateralizing the Certificates.

132.   BANKERS has been damaged by SPS's breach of the Pooling and Servicing Agreement.

WHEREFORE, BANKERS respectfully requests that this Court enter a judgment in its favor for:

(a)   its damages caused by SPS's breach of contract, plus pre-judgment and post-judgment interest; and

(b)   such other and further relief as this Court considers appropriate.

## Count XIII

### Breach of Contract against SPS
### Enforcement of Rights against DLJ as Seller to Cure Defaults

133.   Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 37 above, with the same force and effect as if set forth fully herein.

134.   BANKERS is an intended third party beneficiary of the Pooling and Servicing Agreement, because: (a) the Pooling and Servicing Agreement clearly expresses an intent to primarily and directly benefit the class of persons to which BANKERS belongs; that is, owners of the Certificates or of any part thereof; and (b) all of the parties to the Pooling and Servicing Agreement intended to benefit the class of persons to which BANKERS belongs.

**The Hodkin Kopelowitz Ostrow Firm, P.A.**
350 EAST LAS OLAS BLVD.• SUITE 980 • FT. LAUDERDALE, FLORIDA 33301 • TELEPHONE 954-525-4100 • FAX 954-525-4300

135. SPS knew or should have known that DLJ as Seller has not satisfied its obligations under § 2.03 of the Pooling and Servicing Agreement to cure breaches of the representations and warranties set forth in Schedules IIA, IIB, IIC, IIIA, and IIIB.

136. In addition to its other duties under the Pooling and Servicing Agreement, under Section 3.01 of the Pooling and Servicing Agreement, SPS as servicer was obligated to "represent and protect the interests of the Trust Fund in the same manner as it protects its own interests in mortgage loans in its own portfolio in any claim, proceeding or litigation regarding a Mortgage Loan ..."

137. Under Section 3.11 of the Pooling and Servicing Agreement, SPS was obligated to "use reasonable efforts to foreclose upon or otherwise comparably convert the ownership of properties securing such of the related Mortgage Loans as come into and continue in default ..."

138. SPS did not enforce DLJ's obligations under the Pooling and Servicing Agreement to cure breaches, as more fully set forth in § 2.03 of the Pooling and Servicing Agreement, and SPS has consequently breached the Pooling and Servicing Agreement.

139. BANKERS has been damaged by SPS's breach of the Pooling and Servicing Agreement.

WHEREFORE, BANKERS respectfully requests that this Court enter a judgment in its favor for:

(a)     its damages caused by SPS' breach of contract, plus pre-judgment and post-judgment interest; and

(b)     such other and further relief as this Court considers appropriate.

## Count XIV

### Breach of Contract Against BONY (Information to Rating Agencies)

140. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 37 above, with the same force and effect as if set forth fully herein.

141. BANKERS is an intended third party beneficiary of the Pooling and Servicing Agreement, because: (a) the Pooling and Servicing Agreement clearly expresses an intent to primarily and directly benefit the class of persons to which BANKERS belongs; that is, owners of the Certificates or of any part thereof; and (b) all of the parties to the Pooling and Servicing Agreement intended to benefit the class of persons to which BANKERS belongs.

142. Under § 11.05 of the Pooling and Servicing Agreement, BoNY was required to provide to Rating Agencies, in writing, notice of (a) any substitution of any Mortgage Loan; (b) any payment or draw on any insurance policy applicable to the Mortgage Loans; (c) of the final payment of any amount owing to a Class of Certificates; (d) any Event of Default under this Agreement; and (e) any Mortgage Loan repurchased in accordance with the Pooling and Servicing Agreement.

WHEREFORE, BANKERS respectfully requests that this Court enter a judgment in its favor for:

(c) its damages caused by BoNY's breach of contract, plus pre-judgment and post-judgment interest; and

(d) such other and further relief as this Court considers appropriate.

**The Hodkin Kopelowitz Ostrow Firm, P.A.**
350 EAST LAS OLAS BLVD.• SUITE 980 • FT. LAUDERDALE, FLORIDA 33301 • TELEPHONE 954-525-4100 • FAX 954-525-4300

## Count XV

### Breach of Contract Against BONY (Information to Certificateholders)

143.     Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 37 above, with the same force and effect as if set forth fully herein.

144.     BANKERS is an intended third party beneficiary of the Pooling and Servicing Agreement, because: (a) the Pooling and Servicing Agreement clearly expresses an intent to primarily and directly benefit the class of persons to which BANKERS belongs; that is, owners of the Certificates or of any part thereof; and (b) all of the parties to the Pooling and Servicing Agreement intended to benefit the class of persons to which BANKERS belongs.

145.     Under § 4.04 of the Pooling and Servicing Agreement, BoNY was required to provide monthly statement to Certificateholders, including BANKERS, regarding various aspects of the Mortgage Loans and the Certificates, including, but not limited to, (a) the number and aggregate principal amounts of the foreclosure loans that were in foreclosure or delinquent (§ 4.4(ix)); (b) the number and principal amount of claims submitted under the insurance policy (§ 4.4(xiv)).

146.     BoNY breached § 4.04 of the Pooling and Servicing Agreement by failing to provide full and accurate information to BANKERS as a Certificateholder, in accordance with the Pooling and Servicing Agreement.

147.     BANKERS has been damaged by BoNY's breach of the Pooling and Servicing Agreement.

WHEREFORE, BANKERS respectfully requests that this Court enter a judgment in its favor for:

**The Hodkin Kopelowitz Ostrow Firm, P.A.**
350 EAST LAS OLAS BLVD.• SUITE 980 • FT. LAUDERDALE, FLORIDA 33301 • TELEPHONE 954-525-4100 • FAX 954-525-4300

(e)     its damages caused by BoNY's breach of contract, plus pre-judgment and post-judgment interest; and

(f)     such other and further relief as this Court considers appropriate.

## Count XVI

### Breach of Fiduciary Duty by BoNY

148.    Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 37 above, with the same force and effect as if set forth fully herein.

149.    As Trustee, BoNY had a duty to act on behalf of BANKERS and other certificateholders without regard to the interests of any other party.

150.    BoNY, as trustee, was in a unique position to enforce the Pooling and Servicing Agreement and to prevent harm to the certificateholders.

151.    BoNY, as trustee, had a duty to make full disclosure and to act fairly and honestly to and toward the certificateholders.

152.    BoNY was responsible for, and obligated to disclose to BANKERS and other certificateholders, the number and principal amount of claims submitted and claims paid under the TRIAD policy during the preceding calendar month and the aggregate number and principal amount of claims paid under the TRIAD policy.

153.    BoNY had a duty to ask SPS as to why the insurance claims information was not being provided, especially in light of BANKERS' repeated requests to BoNY to provide this information.

154.    BoNY had a duty to certificateholders, including BANKERS, to request SPS to provide requested data regarding TRIAD claims and to insist that SPS and TRIAD process appropriate mortgage insurance claims.

**The Hodkin Kopelowitz Ostrow Firm, P.A.**
350 EAST LAS OLAS BLVD.• SUITE 980 • FT. LAUDERDALE, FLORIDA 33301 • TELEPHONE 954-525-4100 • FAX 954-525-4300

155.   BoNY, failed to act in the interests of its beneficiaries and instead stood idly by, which contributed materially to the losses suffered by BANKERS.

156.   BoNY has conspired with the other Defendants to cover up their collective misdeeds, fraudulent activity, negligence and other violations discussed above.

157.   Had BANKERS known that BoNY would not properly perform its obligations as Trustee, BANKERS would not have agreed to purchase the Securities.  BoNY's failure to act also prevented BANKERS from taking action to mitigate its damages.

158.   BoNY knew or should have known that BANKERS would rely on BoNY's misrepresentations and omissions of material fact in both purchasing the Certificate Tranches and in deciding when to sell or not to sell the Certificate Tranches.

159.   BANKERS is aware of Section 11.07 of the Pooling and Servicing Agreement; however, in light of BoNY's prior refusals to respond to any of BANKERS' requests, coupled with the fraud committed by all Defendants and the fact that BoNY would be required to sue itself, any demand by BANKERS would be futile.

160.   Additionally, and notwithstanding the foregoing, BANKERS has attempted on several occasions to obtain information from BoNY regarding the other certificateholders involved in the Transaction; however, BoNY has refused to provide the requested information.

161.   BANKERS has been damaged as a result of BoNY's breach of fiduciary duty.

WHEREFORE, BANKERS respectfully requests that this Court enter a judgment in its favor for:

(g)   its damages caused by BoNY's breach of fiduciary duty, plus pre-judgment and post-judgment interest; and

(h)   such other and further relief as this Court considers appropriate.

**The Hodkin Kopelowitz Ostrow Firm, P.A.**
350 EAST LAS OLAS BLVD.• SUITE 980 • FT. LAUDERDALE, FLORIDA 33301 • TELEPHONE 954-525-4100 • FAX 954-525-4300

## Count XVII

### Civil Conspiracy Against CSFB, CSFB Mortgage, BoNY, DLJ, and SPS

162.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 37 above, with the same force and effect as if set forth fully herein.

163.    All of the Defendants, acting in concert with one another, conspired and agreed to (i) develop and implement the foregoing scheme to defraud; and (ii) make the material misrepresentations set forth above; and (iii) breach the Pooling and Servicing Agreement.

164.    Defendants each made overt acts in furtherance of the conspiracy as specifically set forth in greater detail above.

165.    As a result, Defendants obtained the power to accomplish the unlawful purpose which they could not accomplish individually.

166.    As a direct and proximate result of the foregoing, BANKERS has suffered substantial damages.

WHEREFORE, BANKERS respectfully requests that this Court enter a judgment in its favor for:

(a)    its damages caused by defendants' conspiracy, plus pre-judgment and post-judgment interest; and

(b)    such other and further relief as this Court considers appropriate.

**The Hodkin Kopelowitz Ostrow Firm, P.A.**
350 EAST LAS OLAS BLVD.• SUITE 980 • FT. LAUDERDALE, FLORIDA 33301 • TELEPHONE 954-525-4100 • FAX 954-525-4300

## DEMAND FOR JURY TRIAL

As to all Causes of Action, where applicable, Plaintiff demands a trial by jury.

Dated: August 27, 2007                                  Respectfully submitted,

      Fort Lauderdale, FL 33301

                                               BY: /s/ Adam Hodkin

DALE LEDBETTER                                          ADAM HODKIN
Florida Bar No. 094811                                  Florida Bar No. 962597
Email – dledbetter@dlsecuritieslaw.com                  e-mail – Hodkin@thkolaw.com
Ledbetter & Associates, P.A.                            The Hodkin Kopelowitz
350 E. Las Olas Boulevard                               Ostrow Firm, P.A.
Suite 1220                                              350 East Las Olas Boulevard, St. 980
Fort Lauderdale, FL  33301                              Fort Lauderdale, FL  33301
Telephone: (954) 766 7875                               Telephone:    (954) 525 4100
Facsimile: (954) 766 7800                               Facsimile:    (954) 525 4300
Co-Counsel for Plaintiff                                Co-Counsel for Plaintiff

## CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that a true and correct copy of the foregoing was served by e-mail on August 22, 2007 on all counsel or parties of record on the attached service list.

               /s/Adam Hodkin

**The Hodkin Kopelowitz Ostrow Firm, P.A.**
350 EAST LAS OLAS BLVD.• SUITE 980 • FT. LAUDERDALE, FLORIDA 33301 • TELEPHONE 954-525-4100 • FAX 954-525-4300

SERVICE LIST

Case No.. 8:07-CV-00690-EAK-MSS

John M. Murray, Esq.
jmurray@mmhlaw.com
Christopher Doran, Esq.
cdoran@mmhlaw.com
Murray, Mariani & Herman, P.A.
Bank of America Plaza
101 E. Kennedy Blvd., Suite 1810
Telephone:     813 222 1800
Facsimile:     813 222 1801
Attorney for Triad Guaranty Insurance

Simon A. Fleischmann, Esq.
sfleichmann@lordbissell.com
Thomas J. Cunningham, Esq.
tcunningham@lordbissell.com
Lord Bissell & Brook, LLP
111 South Wacker Drive
Chicago, IL 60606
Telephone:     312 443 0452
Facsimile:     312 896 6471
Attorney for Triad Guaranty Insurance

Richard F. Hans, Esq.
rhans@tpw.com
Thacher Proffitt & Wood, LLP
Two World Financial Center
New York, NY 10281
Attorney for Bank of New York

Edmund S. Whitson, Esq.
Edmund.whitson@akerman.com
Akerman Senterfitt
401 Jackson Street, Stuite 1700
Tampa, FL 33601
Telephone:     813 223 7333
Attorney for Bank of New York

Colleen J. O'Loughlin, Esq.
colouglin@mckeenelson.com
Scott Eckas, Esq
seckas@mckeenelson.com
McKee Nelson, LLP
One Battery Park Plaza, 34th Floor
New York, NY 10004
Telephone:     917 777 4466
Facsimile      917 777 4299
Attorney for Select Portfolio Servicing, Inc.
Credit Suisse First Boston Corp.
Credit Suisse First Boston Mortgage
Securities Corp.
DLJ Mortgage Capital, Inc.

John F Mariani, Esaq.
jmariani@gunster.com
Gunster Yoakley & Stewart
777 S. Flagler Drive
West Palm Beach, FL 33401
Telephone:     561 650 0600
Facsimile:     561 655 5677
Attorney for Select Portfolio Servicing, Inc.
Credit Suisse First Boston Corp.
Credit Suisse First Boston Mortgage
Securities Corp.
DLJ Mortgage Capital, Inc.

37

# EXHIBITS
# "A," "B," "C," "D," and "E"
# will be filed with the
# Clerk of this Court
# under separate cover
# by overnight FEDEX

**The Hodkin Kopelowitz Ostrow Firm, P.A.**
350 EAST LAS OLAS BLVD.• SUITE 980 • FT. LAUDERDALE, FLORIDA 33301 • TELEPHONE 954-525-4100 • FAX 954-525-4300