UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

BANKERS LIFE INSURANCE COMPANY, :
:
    Plaintiff, :
:
    vs. : Civil Action No.
:
CREDIT SUISSE FIRST BOSTON : 8:07-CV-00690-EAK-MSS
CORPORATION, also known as Credit Suisse :
Securities (USA) LLC, CREDIT SUISSE :
FIRST BOSTON MORTGAGE SECURITIES :
CORP., DLJ MORTGAGE CAPITAL, INC., :
TRIAD GUARANTY INSURANCE :
CORPORATION, SELECT PORTFOLIO :
SERVICING, INC. and BANK OF NEW :
YORK, :
:
    Defendants. :

## BANKERS LIFE INSURANCE COMPANY'S RESPONSE OPPOSING THE MOTION TO DISMISS AMENDED COMPLAINT OF CREDIT SUISSE SECURITIES (USA) LLC, CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORP., DLJ MORTGAGE CAPITAL, INC., AND SELECT PORTFOLIO SERVICING, INC.

Plaintiff Bankers Life Insurance Company ("Bankers") respectfully submits this Response Opposing the Motion of Defendants Credit Suisse Securities (USA) LLC ("Credit Suisse"), Credit Suisse First Boston Mortgage Securities Corp. ("Credit Suisse Mortgage"), DLJ Mortgage Capital, Inc. ("DLJ") and Select Portfolio Servicing, Inc. ("SPS") to Dismiss the Amended Complaint. As the authorities cited hereinbelow demonstrate, the Defendants' Motion to Dismiss is without merit and must be denied.

*Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al.*
*Bankers Life Insurance Co.'s Response Opposing Motion to Dismiss*
*Case No. 8:07-CV-00690-EAK-MSS*

## **BACKGROUND**

In a micro-sense, this case is about Credit Suisse's issuance of shoddy securities and the involvement of the other defendants in the support and cover up of Credit Suisse's efforts. In a macro-sense, this case is brought against the backdrop of Wall Street's role in the subprime mortgage crisis currently afflicting the country, and how large financial institutions have contributed to the recent weakness in the American economy.

As explained in Plaintiff's First Amended Complaint, the Defendants established a complex scheme to purchase mortgage loans and pool them together into groups which would create investment revenue for purchasers of certificates representing a piece of the mortgage pool the Defendants created. Unfortunately for the buyers of those certificates, the Defendants represented that the mortgage pools were comprised of performing mortgage loans that were backed by real property sufficient to provide collateral for the loans. This was not the case. Instead, the mortgage loans were often undercollateralized, or in default, when the certificates were sold to the investing public, including Bankers. In fact, one of the Defendants, Triad Guaranty Insurance Corporation, has stated that denied insurance coverage for some of the loans in the mortgage pool on the alleged basis (according to Triad) that the loans were procured by "fraud." Thus, the Defendants reaped the profits from the sales of those mortgage loans, but now regrettably desire to disavow responsibility for the economic consequences of their callous rush to lucre. Even worse than Defendants' packaging of suspect securities for sale is the fact that Defendants had the ability to prevent the harm to the unwitting investors duped into buying the certificates at issue in this case by accurately reporting on the state of the mortgage loans comprising the pools in question. But, like the wealthy

2

*Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al.*
*Bankers Life Insurance Co.'s Response Opposing Motion to Dismiss*
*Case No. 8:07-CV-00690-EAK-MSS*

industrialists of yore, once the Defendant financial behemoths got their money, they turned a blind eye to the quality of the mortgage pools they created and were supposed to service. As a result, rather than make statements regarding the declining quality of the collateral they created, the Defendants sat silent while investors like Bankers relied on the Defendants' original issuing statements, and the incorrect information rating agencies like Moody's published (also in reliance on Defendants' misinformation) to make decisions to purchase and hold the certificates in question.

Defendants' Motion to Dismiss repeatedly presents statements of law that are incorrect and tautological arguments, or misleadingly avers that items expressly pled in the Amended Complaint are not there (although they are). Bankers hereinafter demonstrates the fallacies underlying the Motion to Dismiss, and why it should and must be denied.

## LEGAL ARGUMENT AND CITATION OF AUTHORITY

### Point I

### THE FACTS SET FORTH IN THE AMENDED COMPLAINT MUST BE ACCEPTED AS TRUE

Certain legal axioms govern this Court's review of Defendants' Motion to Dismiss. Bankers' Amended Complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts" which would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L. Ed.2d 80 (1957). Additionally, "[i]n considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the averments of the complaint should be construed in the

*Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al.*
*Bankers Life Insurance Co.'s Response Opposing Motion to Dismiss*
*Case No. 8:07-CV-00690-EAK-MSS*

light most favorable to the plaintiff." *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

Some facts are conceded by the Defendants. Defendants admit that the Certificates they issued began to decline in value approximately one year after acquisition. While Defendants try to hide behind a statement in the offering documents that a decline in the real estate market might adversely affect the value of the certificates, the fact is that the real estate market was still sound when Defendants issued the Certificates, but some of the mortgage pool supporting the Certificates were non-performing even then. Nevertheless, Defendants never bothered to issue any information about the decline in value and nonperformance of the specific loans that were backing the certificates in question. In other words, even during one of the greatest real estate bull markets of the last century, the specific loans the Defendants selected as collateral were performing poorly even while the Defendants pretended the loans were performing adequately. The problem is that the loans were not performing adequately, but the Defendants sat silent and never let on that the loans were declining.

The issue, then, is simple: do the Defendants, who had full knowledge of the problems with the mortgage portfolio they compiled, and are the only parties in a position to know how the mortgage portfolio is performing, have a duty to make a statement to the investing public about the declining value of that portfolio? The answer is obvious: of course they do.

*Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al.*
*Bankers Life Insurance Co.'s Response Opposing Motion to Dismiss*
*Case No. 8:07-CV-00690-EAK-MSS*

## Point II

## DEFENDANTS' ARGUMENT DEMONSTRATES
## THEIR BREACH OF DUTY

Defendants go out of their way to cite the "Risk Factors" cited in the Supplemental Prospectus that they published when initially selling the certificates. The fact that they have to go back to the original document only underscores the point: they never from time to time published information about the mortgage pools that would have updated an investor like Bankers on the risk associated with the pool based on a present-sense evaluation of the mortgages' performance.

Defendants point to language in the "Risk Factors" about how the value of the certificates *"may* be" affected by losses on the mortgage loans. Regrettably, the Defendants chose to hide the fact of those losses. By the time Bankers purchased the Certificates, Defendants should have updated their Supplemental Prospectus to advise potential purchasers of the losses that *were* being experienced in connection with the mortgage loans. Defendants *hid* these losses, because if they had revealed them, no one would have purchased the certificates, and the Defendants' ability to bring new issues into the marketplace would have been hampered. Of course, this would have shifted responsibility for the poorly performing securities to the Defendants (where it should have been), instead of upon their unwitting buyers (like Bankers). Notably, Defendants do not take issue with Bankers' position that the Defendants never updated the Prospectus, the Supplemental Prospectus, or the PSA.

Also, it should be pointed out here an incongruity between Defendants' arguments. Here, Defendants cherry-pick portions of the Prospectus, Prospectus

*Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al.*
*Bankers Life Insurance Co.'s Response Opposing Motion to Dismiss*
*Case No. 8:07-CV-00690-EAK-MSS*

Supplement, and PSA in support of their argument, but they later describe these documents as "stale" and unworthy of reliance (see infra, Points II and III). While Bankers finds Defendants' "risk factor" argument as without merit in any event, the stark inconsistency in Defendants' positions shows that they are willing to throw up any desperate argument they can think of.

**Point III**

**BANKERS HAS APPROPRIATELY PLED A CAUSE OF ACTION FOR NEGLIGENT MISREPRESENTATION**

Under *J.A.O. Acquisition Corp. v. Stavitsky*, 8 N.Y.3d 144, 148 (2007), "A claim for negligent misrepresentation requires the plaintiff to demonstrate (1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." A "special relationship must be one of trust or confidence, which creates a duty for one party to impart correct information to another." *Wey v. New York Stock Exchange*, 15 Misc.3d 1127(A), 841 N.Y.S.2d 222 (N.Y.Sup., 2007). Here, Bankers has alleged that it reasonably relied on CSFB's misrepresentations, as the underwriter, in deciding to purchase the securities. Moreover, Bankers has alleged that CSFB urged Bankers to rely on the representations in the Prospectus in making its purchasing decision. *See* Am. Comp., ¶ 22.

The Courts of New York have further held that "if no actual privity exists ... plaintiff must prove (1) an awareness by the maker of the statement that it is to be used for a particular purpose; (2) reliance by a known party on the statement in furtherance of that purpose; and (3) some conduct by the maker of the statement linking it to the relying

6

*Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al.*
*Bankers Life Insurance Co.'s Response Opposing Motion to Dismiss*
*Case No. 8:07-CV-00690-EAK-MSS*

party and evincing its understanding of that reliance." *Wey v. New York Stock Exchange,*
*Inc.*, 15 Misc.3d 1127(A), 841 N.Y.S.2d 222 (N.Y.Sup., 2007), citing *Parrott v. Coopers*
*& Lybrand, LLP,* 95 N.Y.2d 479 (2000). Defendants take issue with Bankers' position
that CSFB, as the underwriter, and CSFB, as the issuer, had a special or privity-like
relationship imposing a duty on them to impart correct information to purchasers of the
Certificates. Under both controlling New York and Florida law, Defendants had exactly
that duty.

Bankers has pled that CSFB Mortgage was the issuer of the certificates, and that
CSFB was the underwriter which published (with input from CSFB Mortgage) the
Prospectus and the Prospectus Supplement (Am. Comp., ¶¶ 15, 17, 18). Moreover,
Bankers has pled that the Prospectus and Prospectus Supplement were published "in
order to facilitate the sale of the Certificates on the open market ..." (Am. Comp., ¶ 16).
Bankers has pled that CSFB and CSFB Mortgage stated in the Prospectus and Prospectus
Supplement that potential purchasers of the Certificates "should rely on the information"
in the Prospectus and Prospectus Supplement (Am. Comp. ¶ 22, 40, 43). Thus, the first
element, that is, an awareness by CSFB and CSFB Mortgage that the statements in the
Prospectus and Prospectus Supplement were to be used by potential purchasers in
evaluating the certificates, is easily satisfied; in fact, CSFB and CSFB Mortgage urged
that reliance on the purchasers. Similarly, Bankers has pled that it relied on the
Prospectus and Prospectus Supplement in making its purchase (Am. Comp. ¶ 22, 36, 41,
44). The second element is thereby satisfied. Finally, CSFB and CSFB Mortgage, as the
makers of the statements in the Prospectus and Prospectus Supplement, urged purchasers,
like Bankers, to rely on the information in the Propsectus and Prospectus Supplement

*Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al.*
*Bankers Life Insurance Co.'s Response Opposing Motion to Dismiss*
*Case No. 8:07-CV-00690-EAK-MSS*

(Am. Comp. ¶ 22, 40, 43), thereby linking it to Bankers as a purchaser and evincing its understanding of Bankers' reliance.

## A.   Bankers' actual reliance on the Prospectus and Prospectus Supplement

CSFB and CSFB Mortgage state that the Amended Complaint is devoid of "any" allegations that Bankers received or reviewed the Prospectus, the Supplemental Prospectus, or any other information concerning the Subordinated Certificates, but then go on to admit that Bankers has pled that Bankers "relied" on the Prospectus and Supplemental Prospectus. Defendants have misleadingly omitted some of Bankers' allegations in this regard, and are otherwise distorting Bankers' Amended Complaint. Bankers pled in paragraphs 35, 40, 43, 44, and 54 of the Amended Complaint that:

> 35. All of the foregoing representations regarding the collateral and credit enhancements, coupled with the falsely maintained investment grade ratings of the Securities by Moody's, due to CSFB's misrepresentations and omissions, and CSFB's reputation and marketing efforts regarding the nature and minimal risk of the Securities, induced BANKERS to purchase Security I-B-2 and Security I-B-3 as set forth above.

> 40.   BANKERS would not have purchased the Certificate Tranches if: (a) CSFB had published any of the information referred to in the preceding paragraph; (b) the Prospectus Supplement accurately stated the status of the loans as of the Closing Date; or (c) the Prospectus Supplement had been updated ("stickered" as referred to hereinabove) after its issuance.

> 43. BANKERS reasonably and justifiably relied on misrepresentations made by CSFB, or the misrepresentations CSFB made by omission, in deciding to purchase Security I-B-2 and Security I-B-3.

> 44. But for CSFB's conduct, BANKERS would not have purchased Security I-B and Security I-B-3.

> 54.   BANKERS justifiably relied on the false information published by CSFB when BANKERS purchased the Certificate Tranches.

*Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al.*
*Bankers Life Insurance Co.'s Response Opposing Motion to Dismiss*
*Case No. 8:07-CV-00690-EAK-MSS*

The misrepresentations referred to in paragraphs 35, 40, 43, 44, and 54 are those set forth in the Prospectus and Supplemental Prospectus (the misrepresentations are individually identified, amongst other places, at paragraphs $19 - 23$, 35, 39 and 40 of the Amended Complaint). It is implicit that one cannot be "induced" to purchase on the basis of misrepresentations in a set of documents, or "rely" on the misrepresentations in that same set of documents, or "not purchase" on the basis of misrepresentations in that same set of documents, unless one has received and read the documents in question. Defendants' attempt to impose a requirement that the Amended Complaint additionally state in advance of the foregoing facts that Bankers received and read the Propsectus and Prospectus Supplement is a tortured attempt to twist the English language into requiring a redundancy that is not warranted or needed.[1] Taking Bankers' allegations in the light most favorable to Bankers, as the Court is obligated to do on this Motion to Dismiss, (requires that the Motion (with respect to this argument) be denied. *See Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974),

## B.    Pleading a Limited Class

Bankers has also pled, in Count II (false information negligently supplied for the benefit of others), that it is a member of a "limited class" which the Credit Suisse Defendants knew and intended to reach:

---

[1] Under the notice pleading standards in Federal court, the allegations, as pled, are sufficient. *World Religious Relief, Inc. v. Sirius Satellite Radio, Inc.*, No. 05 Civ. 8257(BSJ) 2007 WL 2261549 (S.D.N.Y. Aug. 7, 2007) ("The level of specificity necessary to state a claim for Rule 12(b)(6) purposes is governed by the Federal Rules of Civil Procedure's notice pleading principles that call for no more than 'a short and plain statement' of a plaintiff's claim"). However, if the Court finds that Defendants' argument has merit, the claimed deficiency would be easily cured by amendment, and therefore, the Defendants' request that the Amended Complaint be dismissed with prejudice is overreaching and should be denied.

9

*Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al.*
*Bankers Life Insurance Co.'s Response Opposing Motion to Dismiss*
*Case No. 8:07-CV-00690-EAK-MSS*

48. BANKERS is one of a limited group of persons for whose benefit and guidance CSFB intended to supply the information contained in the Prospectus and the Prospectus Supplement.

49. CSFB intended the information in the Prospectus and the Prospectus Supplement to influence the limited group of persons who are purchasers of the Certificates, like BANKERS, to influence BANKERS' purchase of the Certificate Tranches.

The limited class in this case has always been the same: purchasers of the Certificates. Thus, Bankers has properly pled this element.

## C.   Reasonable Reliance

CSFB's argument regarding reasonable reliance demonstrates exactly why they are liable.  CSFB argues that Bankers' reliance on the Prospectus and Prospectus Supplement is unreasonable because they were two years old at the time of Bankers' purchase of the Certificates, and CSFB even describes the Prospectus and Prospectus Supplement as "stale" (Motion to Dismiss, p. 13).  However, CSFB never updated or stickered the Prospectus or Prospectus Supplement with updated information, which Bankers will prove at trial that they had a duty to do. (See Am. Comp., ¶¶ 48 - 56).

CSFB's argument that updated information was available by virtue of alleged Trustee Statements only underscores the bankruptcy of its position. First of all, it flies in the face of paragraph 30 of the Amended Complaint, where it is made plain that CSFB did not make information available to prospective purchasers (as opposed to information Bankers obtained after its purchase), and since the allegations in the Amended Complaint have to be taken as true and correct, this is a factual determination left for later in the case. *Levy v. Verizon Info. Servs.*, 498 F.Supp.2d 586, 592 (S.D.N.Y. 2007) ("on a motion to dismiss, the allegations in the complaint are accepted as true").  Secondly,

*Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al.*
*Bankers Life Insurance Co.'s Response Opposing Motion to Dismiss*
*Case No. 8:07-CV-00690-EAK-MSS*

CSFB knew the Prospectus and Prospectus Supplement were no longer valid, but it never updated them. The Trustee Statements were not available to potential purchasers; in fact, they were not even supplied to rating agencies, like Moody's, because if CSFB had accurately reported to Moody's the state of the collateral, Moody's would have downgraded the Certificates much sooner than it eventually did. In other words, Defendants' cover-up allowed them to continue to place similar products in the marketplace instead of seeing their market for new issues dry up.

## D.    Stickering and Updating.

CSFB concedes that there is a duty and that it is common in the industry to update and sticker documents like the Prospectus Supplement to reflect material events subsequent to issuance, but then claims that the duty is limited to federal securities laws claims. *See, e.g., S.E.C. v. Electronics Warehouse*, 689 F.Supp. 53, 66, fn. 16 (D.Conn. 1988) (Ordinarily, the proper method of disclosure of a post-effective material change of circumstances is through a sticker on the prospectus ..."); *S.E.C. v. North Atlantic Airlines, Inc.*, Not Reported in F.Supp., 1988 WL 41438, *3 (S.D.N.Y. 1988) (If material changes render use of a prospectus false and misleading, the appropriate step is to sticker the prospectus, or to issue an amendment to the prospectus). The duty to update and sticker is common in the industry, and whether Bankers has alleged a violation of federal securities laws here is of no moment to the fact that CSFB did not update the Prospectus and Prospectus Supplement, and the reason for this failure was to mislead potential investors and artificially prop up the value of the Certificates.

*Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al.*
*Bankers Life Insurance Co.'s Response Opposing Motion to Dismiss*
*Case No. 8:07-CV-00690-EAK-MSS*

### Point IV

## THE COMMON LAW FRAUD CLAIMS STATE A
## CAUSE OF ACTION AS A MATTER OF LAW

### A.    Scienter

CSFB's Motion to Dismiss badly misconstrues the elements of common law fraud

to try to impose the use of the phrase "bad faith" in the pleading of common law fraud

actions under Florida law, where none in fact exists. The case cited by the CSFB

Defendants, *Parker v. State of Fla. Bd. of Regents*, 724 So.2d 163 (Fla. 1st DCA 1998)

in fact expressly explains that "bad faith" is founded upon a showing that the defendant

knew that its representation was false. The Parker court explained that:

> In Florida, legal scienter for purposes of fraud can be established in three
> ways. As stated in *Joiner v. McCullers,* 158 Fla. 562, 28 So.2d 823, 824
> (1947), (citation omited):
>
> A false representation of a material fact, made with knowledge of its
> falsity, to a person ignorant thereof, with intention that is (sic) shall be
> acted upon, followed by reliance upon and by action thereon amounting to
> substantial change of position, is a fraud of which the law will take
> cognizance.
>
> *The knowledge, by the maker of the representation, of its falsity, or, in
> technical phrase, the scienter, can be established by either one of the
> three following phases of proof: (1) That the representation was made
> with actual knowledge of its falsity; (2) without knowledge either of its
> truth or falsity; (3) under circumstances in which the person making it
> ought to have known, if he did not know, of its falsity.* Under the first
> phase the proof must show actual knowledge of the falsity of the
> representation. Under the second phase it should show that the
> representation was made in such absolute, unqualified, and positive terms
> as to imply that the party making it had knowledge of its truth, and that he
> made such absolute, unqualified, and positive assertion on a subject of
> which he was ignorant, and that he had no knowledge whether his
> assertion in reference thereto was true or false. Under the third phase, the
> proof should show that the party occupied such a special situation or
> possessed such means of knowledge as made it his duty to know as to the
> truth or falsity of the representation made. If the proof establishes either

*Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al.*
*Bankers Life Insurance Co.'s Response Opposing Motion to Dismiss*
*Case No. 8:07-CV-00690-EAK-MSS*

one of these three phases, the scienter is sufficiently made out.

... Thus, while malice or actual corrupt intent to deceive may be a central factual element in many fraud cases, under the second and third phases in *Joiner*, such intent is not always necessary to establish fraudulent misrepresentation, nor is intent to commit fraud necessarily the gravamen of every cause of action for fraudulent misrepresentation.

*Parker*, 724 So.2d at 168 (emphasis added) (citations omitted).

Paragraph 61 of the Amended Complaint provides that:

CSFB knew or should have known of the falsity of the misrepresentations, as well as the omissions, and made the foregoing misrepresentations and/or omissions with the intent to influence purchases of the Securities.

As the foregoing demonstrates, and consistent with the *Parker* opinion, Bankers has properly pled all of the elements of common law fraud. In fact, paragraphs 58 through 65 of the Amended Complaint track the elements set forth by the Florida Supreme Court in *Lance v. Wade*, 457 So.2d 1008 (Fla. 1984) that "The elements for actionable fraud are (1) a false statement concerning a material fact; (2) knowledge by the person making the statement that the representation is false; (3) the intent by the person making the statement that the representation will induce another to act on it; and (4) reliance on the representation to the injury of the other party." (cited by *First Interstate Dev. Corp. v. Ablanedo*, 511 So.2d 536, 539 (Fla.1987), which is then relied on as the basis for the *Parker* opinion).

B.      **Reliance**

Bankers has pled actual reliance in paragraphs 62 and 63 of the Amended Complaint. Defendants' arguments are as deficient here as they are with respect to the reliance demonstrated in the negligent misrepresentation and false information counts.

C.      **Bankers has pled a direct relationship between CSFB's Fraud and the Loss**

*Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al.*
*Bankers Life Insurance Co.'s Response Opposing Motion to Dismiss*
*Case No. 8:07-CV-00690-EAK-MSS*

### Bankers has Suffered

The arguments on page 15 of Defendants' Motion, that there has not been pled a direct relationship between the CSFB Defendants' fraud and the damage suffered by Bankers, again badly distort the allegations in the Amended Complaint. The Amended Complaint repeatedly explains how Defendants' fraud negatively affected the value of Bankers' investment, as detailed in the following allegations:

> 59. In addition, CSFB, after the creation and issuance of the Securities, continued to misrepresent material facts, omitted material facts and intentionally concealed the true nature of the Transaction. CSFB knew that the investing public would be relying upon the Prospectus, the Prospectus Supplement, the reputation of CSFB and the Moody's rating in deciding whether or not to purchase the Securities.

> 60. Had CSFB properly represented the true nature of the Transaction, the Moody's rating would have been substantially downgraded prior to February 2004, and had the true nature of the Transaction been revealed, BANKERS would not have purchased the Securities.

> 62. BANKERS reasonably and justifiably relied on the reputation of CSFB, the Moody's rating (controlled by CSFB) and the various misrepresentations and/or omissions made by CSFB and purchased Security I-B-2 and Security I-B-3.

> 63. But for CSFB's conduct, BANKERS would not have purchased Security I-B-2 and Security I-B-3.

> 64. As a direct and proximate result of CSFB's conduct, CSFB has caused BANKERS to incur substantial monetary damages.

As the above allegations demonstrate, the CSFB Defendants' argument misleadingly ignores the allegations in the Amended Complaint.[2]

---

[2] The CSFB Defendants bury in a footnote an argument that the Amended Complaint does not plead fraud with particularity. To the contrary, the time of the fraud, the specific misrepresentations constituting the fraud, and the mechanism the CSFB Defendants used to implement the fraud are all detailed in the Amended Complaint. *See Am. Comp.*, ¶¶ 15 – 17, 19 – 21, and 29 – 31; *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*, 376 F.Supp.2d 385 (S.D.N.Y. 2005) ("In order to satisfy fraud pleading requirements of federal procedure rule,

*Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al.*
*Bankers Life Insurance Co.'s Response Opposing Motion to Dismiss*
*Case No. 8:07-CV-00690-EAK-MSS*

## Point V

## BANKERS HAS STATED A CAUSE OF ACTION AGAINST CSFB AND SPS FOR BREACH OF FIDUCIARY DUTY

**A.     The CSFB Defendants' "Shotgun Pleadings" argument is a distortion of applicable law**

In their argument regarding the Breach of Fiduciary Duty Claims, the CSFB

Defendants demonstrate a woeful misunderstanding (on their part) of the "shotgun

pleading" doctrine. Shotgun pleadings "are those that incorporate every antecedent

allegation by reference into each subsequent claim for relief or affirmative defense."

*Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006) (Plaintiff's

incorporation of every paragraph and cause of action of the Complaint into every

subsequent count is improper).[3]  Here, Bankers did not incorporate every preceding count

into any subsequent count, not even once.  The "general facts applicable to all counts"

(paragraphs 1 through 36) are incorporated into every count, as they should be so that the

pleading affords a "short and plain statement of the claim" entitling Bankers to relief.

*See* Fed. R. Civ. P. 8. The CSFB Defendants' misrepresentation of the "shotgun pleading

doctrine" in their argument regarding Bankers' breach of fiduciary duty claim is

exacerbated by their failure to advise the Court that *Wagner* dealt with a fraud claim and

the pleading of that fraud claim, rather than pleading a breach of fiduciary duty count.

**B.     Bankers has properly pled a duty**

---

claimants must allege fraud with particularity, including specification of fraudulent statements, identification of speaker and time and place of statements, and explanation of why statement was fraudulent, and when allegations are made on information and belief, must set forth facts on which belief is based).

[3] The Florida state court equivalent is set forth in *Frugoli v. Winn-Dixie Stores, Inc.*, 464 So.2d 1292 (Fla. 1st DCA 1985) (incorporation of every antecedent count into every subsequent count improper).

*Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al.*
*Bankers Life Insurance Co.'s Response Opposing Motion to Dismiss*
*Case No. 8:07-CV-00690-EAK-MSS*

In trying to shirk their duties to purchasers of the Certificates, the CSFB Defendants misleadingly ignore the following salient facts: (a) they instructed all potential purchasers of the Certificates to rely on the statements in the Prospectus and the Prospectus Supplement ("should rely on the information" in the Prospectus and Prospectus Supplement (Am. Comp. ¶ 22); and (b) the CSFB Defendants, and their agents like SPS, were the sole repositories of the information about the Certificates that was published to prospective purchasers and purchasers like Bankers, and Bankers relied on them to accurately publish the information about the Certificates.

This case is similar to *Cowan Liebowitz & Latman, P.C. v. Kaplan*, 902 So.2d 755 (Fla. 2005). There, the Florida Supreme Court held that attorneys who issued an inaccurate private placement memoranda owed a fiduciary duty to investors beyond those owed to clients. Here, the CSFB Defendants fulfilled the same role of the publishers of information regarding the Certificates, and they knew that investors in the Certificates would be relying on them to publish accurate information about the Certificates. Nevertheless, the CSFB Defendants and SPS chose to hide from the purchasers of the Certificates information pertinent to the performance of the Certificates in order to artificially prop up the value of the Certificates to the detriment of the purchasers, like Bankers.

Additionally, the CSFB Defendants have failed to advise the Court of relevant case law regarding the creation of a fiduciary duty. "To establish a fiduciary relationship, a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party." *Bankest Imports, Inc. v. Isca Corp.*, 717 F.Supp. 1537, 1541 (S.D.Fla.1989). Here, Bankers has

16

*Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al.*
*Bankers Life Insurance Co.'s Response Opposing Motion to Dismiss*
*Case No. 8:07-CV-00690-EAK-MSS*

alleged a dependency on the information published by the CSFB Defendants and SPS, and that those Defendants undertook to instruct Certificate purchasers like Bankers to rely on their publications regarding the Certificates. (See Am. Compl., ¶¶ 67 – 74). Therefore, the Motion to Dismiss should be denied.

## C.     SPS' Post Offering Conduct Gives Rise to a Breach of Duty

The breach of fiduciary duty claim against SPS arises from its role as the servicer, with the concomitant obligation to publish accurate information to the Certificate holders and Bankers' dependency on SPS to release its stranglehold on the relevant information regarding the performance of the Certificates. SPS' argument that claims arising out of post-offering conduct can only arise out of specific breaches of the PSA is without merit. To the contrary, investors in mortgage pool certificates can state a claim for breach of fiduciary duty against servicers of the mortgage pool notwithstanding the servicer's claim that its obligations were limited and fixed under the terms of the pooling and servicing agreement. *In re National Mortgage Equity Corp. Mortgage Pool Certificates Securities Litigation*, 682 F.Supp. 1073 (C.D.Cal. 1987). In *National Mortgage*, the plaintiffs, Riverhead Savings Bank, Missouri Savings Association, First Federal Savings and Loan Association, were certificate holders of securities, for which a servicer was appointed by the Trustee of the pooling and serving agreement. *Id.* at 1083-4. The plaintiffs asserted a claim for breach of fiduciary duty against the servicer (and its successor in interest). *Id.* at 1083. The servicer argued that it owed no fiduciary duty to the plaintiffs because their obligations were limited and fixed under the terms of the pooling and servicing agreement. *Id.* The plaintiffs argued that a fiduciary relationship arose because the servicer had a large degree of control over the plaintiffs' money. *Id.* Additionally, the

*Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al.*
*Bankers Life Insurance Co.'s Response Opposing Motion to Dismiss*
*Case No. 8:07-CV-00690-EAK-MSS*

servicer became a "common law trustee" when it agreed to service the pools. *Id.* The court denied the defendants' motion to dismiss the claim reasoning that although the issue required factual development, for pleading purposes, the plaintiffs had stated a claim for breach of fiduciary duty sufficient to survive a motion to dismiss. *Id.*[4]

### Point VI

### THE CONSPIRACY ALLEGATIONS INCLUDE OVERT ACTS AND UNDERLYING TORTS

The three arguments the CSFB Defendants weakly make against the conspiracy count are all unpersuasive. First, the CSFB Defendants repeat their misunderstanding of the shotgun pleading doctrine, which as explained above, is wildly inaccurate. Second, there are overt torts pled in the Complaint, including fraud, negligent misrepresentation, and breach of fiduciary duty. Finally, an agreement and an overt act are specifically pled in paragraph 163 to 166 of the Amended Complaint, and in the general facts, in paragraphs 17, 18, 21 – 23, 29 – 31. The Motion to Dismiss the Conspiracy count should accordingly be denied.

---

[4] Although the court explained in a footnote that it appeared that the trustee appointed the servicer and as such, the servicer *may* have acted as an agent of the trustee and as a result, the trustee *may* not have owed a fiduciary duty to the servicer and not to the certificateholders, the court reasoned that such a theory would need additional factual development and did not disturb its determination that the plaintiffs had properly stated a claim for breach of fiduciary duty against the servicer. *In re National Mortgage Equity Corp. Mortgage Pool Certificates Securities Litigation*, 682 F.Supp. at 1084, FN17.

*Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al.*
*Bankers Life Insurance Co.'s Response Opposing Motion to Dismiss*
*Case No. 8:07-CV-00690-EAK-MSS*

### Point VII

## DEFENDANTS HAVE MADE COMPLIANCE WITH THE "NO ACTION" CLAUSE IMPOSSIBLE, AND THEREFORE, IT DOES NOT APPLY IN THIS CASE AS FUTILE

The provision in the Pooling and Service Agreement on which Defendants rely for the argument that Bankers Life cannot bring this action because it failed to have 25% of the certificate holders request that the Trustee institute this action is generally referred to as a "no action" clause. Bankers has alleged in the Amended Complaint that "in light of BoNY's prior refusals to respond to any of Bankers' requests [for information], coupled with the fraud committed by all Defendants and the fact that BoNY would be required to sue itself, any demand by Bankers [under the "no action clause"] would be futile" (paragraph 159) and "Bankers has attempted on several occasions to obtain information from BoNY has refused to provide the requested information." (paragraph 160).[5] In other words, Bankers has alleged that it would have complied with the "no action" clause, but that (a) BoNY has refused to provide Bankers with the information necessary to do so; and (b) BoNY cannot be expected to sue itself even if such a demand for it to do so is made by the certificateholders whose identity BoNY has previously withheld from Bankers.

Although courts have held that "no action" clauses should be strictly construed, courts have excused the requirement for compliance with them when doing so would be futile. In this regard, *Feldbaum v. McCrory Corp.*, Nos. 11866, 11920, 12006, 1992 WL 119095 at *7 (Del. Ch. 1992) explained that:

---

[5] Bankers asserts in paragraph 36 of the Amended Complaint that "[a]ll conditions precedent to the institution of this action have occurred, have been excused, are futile or impossible, are satisfied, or have been otherwise waived."

19

*Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al.*
*Bankers Life Insurance Co.'s Response Opposing Motion to Dismiss*
*Case No. 8:07-CV-00690-EAK-MSS*

> **I do not mean to imply that courts will apply no-action clauses to bar claims where misconduct by the trustee is alleged.** For the same reason that equity has long recognized that, in some circumstances, corporate shareholders will be excused from making a demand to sue upon corporate directors, but will be permitted to sue in the corporation's name themselves, **bondholders will be excused from compliance with a no-action provision where they allege specific facts which if true establish that the trustee itself has breached its duty under the indenture or is incapable of disinterestedly performing that duty.**

*Id.* at \*7 (emphasis added). This conclusion is logical because it would be absurd to require a certificate holder to ask a Trustee to sue himself. *See Cruden v. Bank of N.Y.,* 957 F.2d 961, 968 (S.D.N.Y. 1992).

Moreover, in *Metropolitan West Asset Mgmt. v. Magnus Funding, LLC,* No. 03 Civ. 5539(NRB), 2004 WL 1444868 (S.D.N.Y. June 25, 2004), the court explicitly held that "no action provisions apply according to their terms and are not broadly construed." 2004 WL 1444868 at \*5, *citing Jackson Nat'l Life Ins. Co. v. Ladish Co., Inc.,* No. 92 Civ. 9358, 1993 WL 43373 at \*5 (S.D.N.Y. Feb. 18, 1993). Therefore, where a "no action" provision by its terms applies only to claims relating to an "event of default" seeking payment of the notes themselves, such clauses do not prevent note holders from bringing extra-contractual tort claims or breach of contract claims that are not of the type to which the "no action" provision, by its terms, applies. 2004 WL 1444868 at \*5 *citing Cruden,* 957 F.2d at 961. In *Metropolitan West,* one defendant, against whom a claim for gross negligence in fulfilling his duties under the indenture was alleged, claimed that the plaintiff could not bring any claims against any of the defendants because the plaintiff had not complied with the indenture. *Id.* at \*3. The trust indenture in that action provided, inter alia, that a certificate holder could not file suit unless the certificate holder notified the trustee of a continuing event of default and 25% of the noteholders make a

*Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al.*
*Bankers Life Insurance Co.'s Response Opposing Motion to Dismiss*
*Case No. 8:07-CV-00690-EAK-MSS*

written request to the Trustee to institute proceedings with respect to the event of default, but the Trustee fails to do so. *Id.* at *4. The plaintiff countered arguing that it was not seeking damages due to an uncured event of default. *Id.* Instead, it was seeking damages due to mismanagement of the trust collateral and failure to safeguard the plaintiff's rights. *Id.* Ultimately, the court held that the "no action" clause did not bar all the claims merely because the plaintiff did not comply with the "no action" clause. *Id.* The court also reasoned based on the holding in *Feldbaum* in coming to its ruling, concluding that the fact there was wrongdoing on the part of the trustee that was a central issue to the case, was one of the reasons the plaintiff's claims were not barred by its failure to comply with the "no action" clause. *Id.* at *5, F4.

Applying the above legal premises here, there has been misconduct on the part of not just BoNY, the trustee, but a conspiracy involving SPS (the servicer) and CSFB (the underwriter), as well as DLJ, the seller of the mortgages to CSFB. It would be unreasonable to expect the trustee to sue itself, or its co-conspirators, because it is a part of the conspiracy that caused financial damage to the certificate holders that it was to protect. Therefore, the impossibility of complying with the "no action" clause in the PSA should be recognized under the present set of facts, and compliance with the clause excused. The motion to dismiss on the basis of the "no action" clause should be denied.

## Point VIII

### BANKERS HAS STATED A CLAIM AGAINST DLJ

DLJ asserts that Bankers should have to identify every mortgage loan that DLJ sold to CSFB Mortgage as part of the mortgage pool in question. This argument is without merit for several reasons. First, DLJ attempts to graft a pleading requirement of

*Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al.*
*Bankers Life Insurance Co.'s Response Opposing Motion to Dismiss*
*Case No. 8:07-CV-00690-EAK-MSS*

"particularly" under Fed. R. Civ. P. 9 (pleading special matters) into a breach of contract

action under Fed. R. Civ. P. 8. *The Alpine Group, Inc. v. Johnson*, No. 01 Civ. 5532,

2002 WL 10495 (S.D.N.Y. 2002) ("Breach of contract claims need not be pled with the

same level of particularity as fraud claims"). Bankers does not in its pleading have to

prove questions of fact; those facts are taken as true at this stage of the lawsuit. *Levy*, 498

F.Supp.2d at 592. Moreover, DLJ as the seller of the mortgage loans in question, and its

co-conspirators, have the very information they claim they are uncertain of.[6] In fact,

paragraphs 130, 131, 145, and 146 of the Amended Complaint allege that SPS has failed

to report loan information to the trustee, and BoNY as the trustee has failed to provide

monthly statements to the Certificate holders. So, DLJ is essentially taking Bankers to

task for not supplying information that Bankers has expressly alleged that SPS and BoNY

have not provided to it, in breach of their contractual obligations to do so. This is a prime

example of how the Defendants are conspiring with one another to do all they can to

breach their obligations, and then argue that certificate holders are without a remedy.

Further, DLJ's reliance on the limitation of remedies set forth in Section 2.03(c)

of the PSA is non-sensical. The very point of the breach of contract action against DLJ is

that it has ***not*** "cure[d], repurchase[d], or substitute[d] any Mortgage Loan as to which

breach has occurred and is continuing ..." (Paragraph 26 of the Amended Complaint

provides that "... DLJ did not cure the breaches of the foregoing representations and

warranties, or repurchase the Mortgage Loans subject to the breach of the representations

or warranties or (within two years of the Closing Date) supply substitute collateral for the

---

[6] DLJ makes reference to Washington Mutual having been a seller of the loans; however, page S-17 of the Prospectus Supplement provides that DLJ was the seller of all of the laons and purchased 3.45% of the Group I loans from Washington Mutual.

*Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al.*
*Bankers Life Insurance Co.'s Response Opposing Motion to Dismiss*
*Case No. 8:07-CV-00690-EAK-MSS*

breach of the representation or warranty."). In other words, DLJ is claiming that it cannot be liable for breaching the contract by failing to provide the very remedy the contract requires DLJ to provide. See Am. Complaint, ¶¶ 111, 112. DLJ's Motion to Dismiss on this ground should accordingly be denied.

## Point IX

## BANKERS' CLAIMS AGAINST SPS ALL ALLEGE A CAUSE OF ACTION

### A.    Count XI – Affirmative Actions

SPS' argument on page 21 of the Motion to Dismiss suffers the same infirmities as DLJ's argument. SPS first attempts to graft a particularity requirement on Fed. R. Civ. P. 8(a) where none exists. Then, SPS argues that Bankers has failed to plead information (an identification of exactly which mortgage loans are in default, as opposed to the summary fashion cumulative number of loans in default that SPS in fact publishes) that SPS as the servicer does not provide to Certificateholders, but which SPS itself undoubtedly has possession of. It is illogical to argue that Bankers has not identified each mortgage loan in default in its Amended Complaint (nor does the law impose such a requirement) when only SPS and its co-conspirators have that level of detailed information and they have refused to provide that detailed information to Bankers. (See, e.g., Paragraphs 130 and 131 of the Amended Complaint, where it is alleged that SPS has failed to supply loan information to the trustee, and paragraphs 145 and 146, where is alleged that BoNY has not even provided the monthly statements to Certificateholders it is required to provide). Further, to the contrary of SPS' Motion to Dismiss, the Amended Complaint expressly alleges that SPS:

*Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al.*
*Bankers Life Insurance Co.'s Response Opposing Motion to Dismiss*
*Case No. 8:07-CV-00690-EAK-MSS*

> 27.   ... SPS as servicer [has not] ... protected the Certificateholders,
> including Bankers, by pursuing the remedies available under ... the
> Pooling and Servicing Agreement to force DLJ to cure the breaches
> relating to the subject Mortgage Loans, or caused DLJ to provide
> substitute collateral for the Mortgage Loans, or caused DLJ to repurchase
> the Mortgage Loans. ...
>
> 125. ."... was obligated to (a) pursue claims for insurance coverage
> regarding the loans in the pool ... and (b) foreclose on delinquent loans."
>
> 126. "... breached the Pooling and Servicing Agreement by failing to
> enforce its rights and carry out its duties under §§ 3.09 and 3.11 of the
> Pooling and Servicing Agreement."

At this stage of the case, these allegations must be construed in the light most favorable

to Bankers.  *Scheuer*, 416 U.S. at 232. SPS' argument for ultimate proof, before

discovery and before trial, regarding how it failed with respect to each of the mortgage

loans in question, is premature and not a basis for dismissal on a Motion to Dismiss. *See*

*Levy*, 498 F.Supp.2d at 592.

## B.   Count XII – Reporting

SPS' argument that "[t]he Amended Complaint does not allege that any request

for information was ever made [to it by the Trustee] or denied [to the Trustee by SPS]"

misleadingly ignores the relevant portions of the Amended Complaint.

In paragraph 36 of the Amended Complaint, Bankers asserts that "[a]ll conditions

precedent to the institution of this action have occurred, have been excused, are futile or

impossible, are satisfied, or have been otherwise waived." This averment alone rebuts

SPS' Motion to Dismiss. Moreover, as the servicer, SPS was obligated to report to the

Trustee, not to Bankers itself.   In paragraph 130 of the Amended Complaint, Bankers

avers that "Under the Pooling and Servicing Agreement, SPS *was obligated* to provide

loan information to the Trustee ..." (emphasis added).     Taken in conjunction,

*Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al.*
*Bankers Life Insurance Co.'s Response Opposing Motion to Dismiss*
*Case No. 8:07-CV-00690-EAK-MSS*

paragraphs 36 and 130 of the Amended Complaint allege (and must be taken as true), that any condition precedent to the provision of information has been satisfied. SPS' position to the contrary (which necessarily would require discovery regarding communications between SPS and its co-conspirators) is accordingly unfounded, and therefore its motion to dismiss on this basis must be denied.

## C.    Count XIII – "Enforcement of Rights against DLJ"

Given that SPS relies on the same flawed argument in this portion of the Motion to Dismiss as DLJ argued, Bankers relies in response on its position as set forth in Point VIII above. Moreover, SPS' misleading averment that Bankers has not identified any provision of the PSA supporting this claim misleadingly ignores paragraphs 136 and 137 of the Amended Complaint. Paragraph 136 expressly identifies SPS' obligations under Section 3.01 of the Pooling and Servicing Agreement to "represent and protect the interests of the Trust Fund in the same manner as it protects its own interest in mortgage loans in its own portfolio in any claim, proceeding or litigation regarding a Mortgage Loan ..." Paragraph 137 alleges that "[u]nder section 3.11 of the Pooling and Servicing Agreement, SPS was obligated to 'use reasonable efforts to foreclose upon or otherwise comparably convert the ownership of properties securing such of the related Mortgage Loans as come into and continue in default." Because SPS' argument to the contrary is without merit, its motion to dismiss on this basis must be denied.

## D.    Section 7.03 of the PSA

Point "D" on page 24 of the Motion to Dismiss is incorrect and misleading, because Defendants fail to bring to the Court's attention the *entire* sentence upon which they rely. Section 7.03 of the Pooling and Servicing Agreement contains the following

*Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al.*
*Bankers Life Insurance Co.'s Response Opposing Motion to Dismiss*
*Case No. 8:07-CV-00690-EAK-MSS*

'carve out' from its limited exculpatory clause (requiring allegations similar to bad faith

or recklessness) insulating them from liability for good faith actions:

> *provided however*, that this provision shall not protect the Depositor, the
> Special Servicer, any Servicer or any Seller against breach of
> representations or warranties made by it herein ... or from any liability
> which would otherwise be imposed by reasons of willful misfeasance, bad
> faith or gross negligence in the performance of duties or by reason of
> reckless disregard of obligations and duties hereunder.

Pooling and Servicing Agreement, Section 7.03, p. 98 (emphasis in original).

Whether Defendants acted in good faith, or their conduct falls within the question

of the above 'carve out' that Defendants omitted from their Motion to Dismiss, is a

question of fact. *Pantelidis v. N.Y. Bd. of Standards and Appeals*, 841 N.Y.2d 41

(N.Y.A.D. 1 Dept., 2007) (the issue of good faith is a "triable issue of fact"); *Wageworks*

*v. Metro. Transp. Auth.*, No. 602714/06, 2007 WL 1113053 (N.Y.Sup. 2007) (a good

faith determination is a question of fact for the jury). Defendants' assertion that the

partial exculpatory clause here may apply is an affirmative defense, not a basis for

dismissal. *S.H. and Helen R. Scheuer Family Foundation, Inc., By and Through Scheuer*

*v. 61* ··· 179 A.D.2d 65, 582 N.Y.S.2d 662 (N.Y.A.D. 1 Dept.,1992).

Moreover, Bankers' contract claim against DLJ expressly states that it is brought

in connection with DLJ's failure to cure breaches of representations and warranties (one

of the carve outs) (see paragraphs 111 and 112 of the Amended Complaint). As to SPS,

Bankers' alleges that SPS breached section 3.11 of the Pooling and Servicing Agreement.

Section 3.11 provides that "[e]ach Servicer shall use reasonable efforts to foreclose upon

or otherwise comparably convert the ownership of properties securing such of the related

Mortgage Loans as come into and continue in default ..."

*Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al.*
*Bankers Life Insurance Co. 's Response Opposing Motion to Dismiss*
*Case No. 8:07-CV-00690-EAK-MSS*

Second, Defendants' argument that "[n]owhere does the Amended Complaint allege that either DLJ or SPS breached the provisions of the PSA with willful misfeasance, bad faith, gross negligence of reckless disregard of their respective obligations." is misleading and inaccurate. Indeed, as to SPS, the following allegations all fall within the scope of what SPS and DLJ misleadingly and incorrectly argue are never alleged:

> Paragraph 120: "SPS breached its fiduciary duties ... in a willful, reckless, and negligent manner by undertaking to harm Bankers, by making misrepresentations of material fact, and omitting material facts ..."

> Paragraph 122: "Defendants' actions were willful, oppressive and malicious ..."

As to DLJ, the following allegations all fall within the scope of what SPS and DLJ misleadingly and incorrectly argue are never alleged:

> Paragraph 25: "DLJ knew or should have known that the following representations and warranties that it made ... were false or recklessly made ..."

In short, Defendants' attempt to apply the limited exculpatory clause at issue in this case (while failing to advise the Court of the limitation) is simply misplaced. The Motion to Dismiss on this basis should be denied.

## CONCLUSION

For all the foregoing reasons, Defendants' Motion to Dismiss should be denied. To the extent the Court considers any of the Defendants' arguments to have merit, Bankers should be given leave to amend its Complaint. *See, e.g., G.K. Alan Assoc., Inc. v. Lazzari*, 44 A.D.3d 95, 840 N.Y.S.2d 378, 383 (N.Y.A.D. 2 Dept., 2007).

Respectfully submitted,

ADAM HODKIN
Florida Bar No. 962597

*Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al.*
*Bankers Life Insurance Co. 's Response Opposing Motion to Dismiss*
*Case No. 8:07-CV-00690-EAK-MSS*

e-mail – Hodkin@thkolaw.com
The Hodkin Kopelowitz Ostrow Firm, P.A.
350 East Las Olas Boulevard, Suite 980
Fort Lauderdale, FL 33301
Telephone:     (954) 525-4100
Facsimile:     (954) 525-4300
Co-Counsel for Plaintiff

Dated: November 1, 2007

___ s/ Adam Hodkin_____

DALE LEDBETTER
Florida Bar No.: 0948411
e-mail – dledbetter@dlsecuritieslaw.com
Ledbetter & Associates, LLP
350 East Las Olas Boulevard
Suite 1700
Fort Lauderdale, Florida 33301
Telephone:     (954) 766-7875
Facsimile:     (954) 766-7800
Co-Counsel for Plaintiff

## CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that a true and correct copy of the foregoing was served by e-mail on November 1, 2007 on all counsel or parties of record on the attached service list.

/s/Adam Hodkin_____

## SERVICE LIST
Case No.. 8:07-CV-00690-EAK-MSS

John M. Murray, Esq.
jmurray@mmhlaw.com
Christopher Doran, Esaq.
cdoran@mmhlaw.com
Murray, Mariani & Herman, P.A.
Bank of America Plaza
101 E. Kennedy Blvd., Suite 1810
Telephone:     813 222 1800
Facsimile:     813 222 1801
Attorney for Triad Guaranty Insurance

*Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al.*
*Bankers Life Insurance Co.'s Response Opposing Motion to Dismiss*
*Case No. 8:07-CV-00690-EAK-MSS*

Simon A. Fleischmann, Esq.
sfleichmann@lordbissell.com
Thomas J. Cunningham, Esq.
tcunningham@lordbissell.com
Lord Bissell & Brook, LLP
111 South Wacker Drive
Chicago, IL 60606
Telephone:    312 443 0452
Facsimile:    312 896 6471
Attorney for Triad Guaranty Insurance

Richard F. Hans, Esq.
rhans@tpw.com
Thacher Proffitt & Wood, LLP
Two World Financial Center
New York, NY 10281
Attorney for Bank of New York

Edmund S. Whitson, Esq.
Edmund.whitson@akerman.com
Akerman Senterfitt
401 Jackson Street, Stuite 1700
Tampa, FL 33601
Telephone:    813 223 7333
Attorney for Bank of New York

Colleen J. O'Loughlin, Esq.
colouglin@mckeenelson.com
Scott Eckas, Esq
seckas@mckeenelson.com
McKee Nelson, LLP
One Battery Park Plaza, 34th Floor
New York, NY 10004
Telephone:    917 777 4466
Facsimile     917 777 4299
Attorney for Select Portfolio Servicing, Inc.
Credit Suisse First Boston Corp.
Credit Suisse First Boston Mortgage Securities Corp.
DLJ Mortgage Capital, Inc.

John F Mariani, Esaq.
jmariani@gunster.com
Gunster Yoakley & Stewart
777 S. Flagler Drive

*Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al.*
*Bankers Life Insurance Co. 's Response Opposing Motion to Dismiss*
*Case No. 8:07-CV-00690-EAK-MSS*

West Palm Beach, FL 33401
Telephone:     561 650 0600
Facsimile:     561 655 5677
Attorney for Select Portfolio Servicing, Inc.
Credit Suisse First Boston Corp.
Credit Suisse First Boston Mortgage Securities Corp.
DLJ Mortgage Capital, Inc.