UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BANKERS LIFE INSURANCE COMPANY,

    Plaintiff,

v.                                            CASE NO. 8:07-CV-00690-EAK-MSS

CREDIT SUISSE FIRST BOSTON
CORPORATION, also known as Credit Suisse
Securities (USA) LLC, CREDIT SUISSE
FIRST BOSTON MORTGAGE SECURITIES
CORP., DLJ MORTGAGE CAPITAL, INC.,
TRIAD GUARANTY INSURANCE
CORPORATION, SELECT PORTFOLIO
SERVICING, INC. and BANK OF NEW YORK,

    Defendant.
_____/

**ORDER ON MOTIONS TO DISMISS**

This cause is before the Court on three motions, all filed on September 28, 2007: (1) Motion of Credit Suisse Securities (USA) LLC, Credit Suisse First Boston Mortgage Securities Corp., DLJ Mortgage Capital, Inc. and Select Portfolio Servicing, Inc. to Dismiss the Amended Complaint (Doc. 58); (2) Defendant Triad Guaranty Insurance Corporation's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 57); and (3) Motion of the Bank of New York to Dismiss the Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 55).

Plaintiff, Bankers Life Insurance Company, filed three responses on November 1, 2007: (1) Bankers Life Insurance Company's Response Opposing the Motion to Dismiss Amended Complaint of Credit Suisse Securities (USA) LLC, Credit Suisse First Boston Mortgage Securities Corp., DLJ Mortgage Capital, Inc., and Select Portfolio Servicing, Inc. (Doc. 67); (2)

Bankers Life Insurance Company's Response Opposing Triad Guaranty Insurance Corporation's Motion to Dismiss (Doc. 64); and **(3)** Bankers Life Insurance Company's Response Opposing the Bank of New York's Motion to Dismiss the Amended Complaint (Doc. 65).

For the reasons set forth, (1) Motion of Credit Suisse Securities (USA) LLC, Credit Suisse First Boston Mortgage Securities Corp., DLJ Mortgage Capital, Inc. and Select Portfolio Servicing, Inc. to Dismiss the Amended Complaint (Doc. 58) is **GRANTED IN PART and DENIED IN PART**; **(2)** Defendant Triad Guaranty Insurance Corporation's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 57) is **GRANTED**; and **(3)** Motion of the Bank of New York to Dismiss the Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 55) is **GRANTED IN PART and DENIED IN PART**.

I.   **FACTUAL BACKGROUND**

Bankers Life Insurance Company ("Plaintiff") is a corporation organized and existing under Florida law, with its principal place of business in St. Petersburg, Florida. In January and February of 2004, Plaintiff purchased several tranches of Certificates (the "Certificates") on the open market. The Certificates were initially issued on or about November 29, 2001, by defendant Credit Suisse First Boston Mortgage Securities Corp. ("CS Mortgage"). They were part of a series of Mortgage-Backed Pass-Through Certificates, titled Series 2001-28, which were collateralized by pools of "sub-prime" residential real estate mortgages located in Florida and elsewhere. The Certificates had first been purchased by defendant DLJ Mortgage Capital ("DLJ"), and then sold to CS Mortgage.

On November 30, 2001, defendant Credit Suisse First Boston Corporation ("Credit Suisse") purchased the Certificates from CS Mortgage in order to sell individual pieces ("tranches") to purchasers on the open market. In order to facilitate the sale, Credit Suisse

published a Prospectus and Prospectus Supplement on October 23, 2001, and November 29, 2001, respectively. These documents were prepared and issued with the input, advice, and consent of defendants DLJ, CS Mortgage, Vesta Servicing, L.P. (predecessor in interest to defendant Select Portfolio Servicing ("SPS")), and Bank One National Association as trustee (predecessor in interest to defendant Bank of New York ("BNY")).

The Prospectus Supplement provides that "[n]o mortgage loan will be delinquent more than 30 days as of the cut-off date." It then defines the cut-off date as November 1, 2001. The document also provides that in the event of a breach of any representation or warranty relating to a mortgage loan that materially and adversely affects the interest of the certificateholders, the seller of that mortgage would be obligated to do one of the following: (i) cure that breach; (ii) repurchase that mortgage loan . . . ; or (iii) substitute a replacement mortgage loan for that mortgage loan within two years of the closing date. Additionally, it states that credit support would be provided by over-collateralization of $2,286,915.00, which would be properly administered. Fraudulent mortgage loans were to be put back to DLJ, properly serviced, and the insurance claims properly filed and pursued.

On November 1, 2001, CS Mortgage entered into a Pooling and Servicing Agreement (the "PSA") to facilitate the sale. Parties included in the agreement, inter alios, were Vesta Servicing, L.P. (predecessor in interest to SPS), DLJ, and Bank One National Association as trustee (predecessor in interest to BNY). In the agreement, DLJ warranted: (a) that all payments due prior to the Cut-Off Date (November 1, 2001) for such Mortgage Loans have been made as of the Closing Date (November 30, 2001); (b) the Mortgage Loan is not delinquent in payment more than 30 days; and (c) there are no material defaults under the terms of the Mortgage Loan. Additionally, the PSA stated that "[n]o fraud, error, omission, misrepresentation, negligence, or

similar occurrence with respect to a Mortgage Loan has taken place on the part of Seller or the Mortgager, or to the best of the Seller's knowledge, on the part of any other party involved in the origination of the Mortgage Loan." Upon discovery of any breach of a representation or warranty that materially and adversely affects the interest of the Certificateholder, the PSA required the Seller (DLJ) to cure the breach. However, if the breach occurred prior to the second anniversary of the Closing Date, the Seller (DLJ) would have the option of supplying a substitute mortgage loan for the loan that caused the breach or repurchase the subject mortgage loan.

Plaintiff alleges that the aforementioned Prospectus, Prospectus Supplement, and PSA contained information that several defendants knew or should have known was materially false. Prior to acquiring the Certificates, Plaintiff relied heavily upon those documents in deciding whether or not to make the purchase and was, therefore, materially mislead. Additionally, Plaintiff contends that several defendants failed to fulfill obligations required of them by these documents. Plaintiff's Amended Complaint was filed with the Court on August 27, 2007. Motions to Dismiss the Amended Complaint were timely filed with the Court by all Defendants on September 28, 2007, and will now be addressed.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to test the legal sufficiency of a plaintiff's complaint. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-66 (2007); *Fowler v. Southern Bell Telephone & Telegraph Co.*, 343 F.2d 150, 153 (5th Cir. 1965). During the analysis of a motion to dismiss, the Court must take plaintiff's factual allegation as true. *See Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007). Although the complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions . . . ." *Bell Atl. Corp.*, 127 S. Ct. at 1964-65

(citing *Conley v. Gibson*, 355 U.S. 41, 47, 78 (1957); *Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (C.A.7 1994); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (holding that on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation")). Therefore, to avoid dismissal, a plaintiff must allege sufficient facts to support the allegations in the complaint and state a plausible claim. *Id.* at 1965. Even under the liberal pleading standard in federal courts, conclusory statements standing alone will not suffice. *Perry v. Thompson*, 786 F.2d 1093, 1094 (11th Cir. 1986). Dismissal is, therefore, permitted "when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Glover v. Ligget Group, Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006) (citing *Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993)).

### III. DISCUSSION

As a preliminary matter, the Court must first address whether the laws of Florida or New York should apply to this matter. Recognizing that both states apply similar laws to the claims at bar, the Court does not necessarily have to make a choice of law on each issue. *See Fioretti v. Mass. Gen. Life Ins. Co.*, 53 F.3d 1228, 1234 (11th Cir. 1995). As this Court has previously recognized, "when the laws of the competing states are substantially similar, the court should avoid the conflicts question and simply decide the issue under the law of each of the interested states." *Id.* Accordingly, the Court will address the conflict-of-law issue as it becomes necessary.

Plaintiff's Amended Complaint contains seventeen total counts against the six Defendants. Where legally practical and appropriate, the Court will address the counts together.

A.  **Counts I & V: Negligent Misrepresentation Against Credit Suisse and CS Mortgage**

Plaintiff alleges that Credit Suisse and CS Mortgage committed negligent misrepresentation by stating in the Prospectus Supplement that "[n]o mortgage loan will be delinquent more than 30 days as of the cut-off date." (Doc. 50, ¶¶ 38, 76). To bring this claim under New York law, Plaintiff must have "a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff." *J.A.O. Acquisition Corp. v. Stavitsky*, 8 N.Y.3d 144, 148 (2007). When no such privity exists, Plaintiff must prove "(1) an awareness by the maker of the statement that it is to be used for a particular purpose; (2) reliance by a known party on the statement in furtherance of that purpose; and (3) some conduct by the maker of the statement linking it to the relying party and evincing its understanding of that reliance." *Wey v. New York Stock Exchange, Inc.*, 2007 WL 1238596, *7 (N.Y. Sup. Ct. April 10, 2007) (quoting *Parrott v. Coopers & Lybrand, LLP*, 95 N.Y.2d 479, 484 (2000)).

The first requirement under this analysis is clearly met, as the Prospectus Supplement expressly stated that it was intended to be relied on by potential Certificateholders. (Doc. 50, Ex. B at S-2). For the second requirement, there must be reliance by a known party. *Wey*, 2007 WL 1238596 at *7. Although there is no evidence Plaintiff was a known party to Credit Suisse or CS Mortgage, Plaintiff was a party on the open market relying on the Prospectus Supplement; therefore, Plaintiff was a party the Defendants knew would exist. The third element of the analysis was met when Defendants stated in the Prospectus Supplement that no mortgage loan would be delinquent more than 30 days. By doing so, they linked it to any intended viewers, including Plaintiff. Therefore, Plaintiff has standing to bring this claim under New York law.

Under Florida law, Plaintiff must be a member of a limited class which Credit Suisse and CS Mortgage knew and intended to reach. Restatement (Second) of Torts § 522 (1977); *see also*

*Gilchrist Timber Co. v. ITT Rayonier, Inc.*, 696 So. 2d 334, 339 (Fla. 1997). As Plaintiff points out in its Response, "[t]he limited class in this case has always been the same: purchasers of the Certificates." (Doc. 67, p. 10). The requisite relationship to bring this claim, therefore, exists under Florida law as well.

Credit Suisse and CS Mortgage contend that Plaintiff's claims fail under both New York and Florida law because there are no factual allegations which, if true, would demonstrate reliance on their alleged misrepresentation. (Doc. 58, p. 12) (citing *FSP, Inc. v. Societe Generale*, 2005 WL 475986, *13 (S.D.N.Y. Feb. 28, 2005); *Tambourine Comerico Int'l, S.A. v. Solowsky*, 2007 WL 689466, *6 (M.D. Fla. Mar. 4, 2007)). Plaintiff stresses that the Defendants are merely attempting "to twist the English language into requiring a redundancy that is not warranted or needed." (Doc. 67, p. 9). Plaintiff pled reliance in its Amendment Complaint in several places and correctly points out that "[t]he level of specificity necessary to state a claim for Rule 12(b)(6) purposes is governed by the Federal Rule of Civil Procedure's notice pleading principles that call for no more than 'a short and plain statement' of a plaintiff's claim." (Doc. 50, ¶¶ 35, 40, 43, 44, 54); *World Religious Relief, Inc. v. Sirius Satellite Radio, Inc.*, 2007 WL 2261549, *1 (S.D.N.Y. Aug. 7, 2007) (quoting *Gregory v. Daly*, 243 F.3d 687, 692 (2d Cir. 2001)). The Court agrees and, therefore, the Motion to Dismiss is denied on this basis.

Lastly, Credit Suisse and CS Mortgage argue that Plaintiff's reliance on the Prospectus Supplement was not reasonable. (Doc. 58, p. 13). They state that as a matter of law, it is unreasonable for a sophisticated party to rely on such stale information. (Doc. 50, p. 13) (citing *United Teacher Assocs. Ins. Co. v. Union Labor Life Ins. Co.*, 311 F. Supp 2d 587, 598 (W.D. Tex. 2004), *vacated on other grounds*, 414 F.3d 558 (5th Cir. 2005); *In re Price*, 48 B.R. 211, 214-15 (Bankr. S.D. Fla. 1985)). They further assert that they had no legal duty to update the

Prospectus Supplement. (Doc. 58, p. 14). The Court is conflicted on this argument, primarily because the Prospectus Supplement states that it was to be relied upon by prospective Certificateholders. (Doc. 50, Ex. B at S-2). To include this statement within the document, and then deny liability when a potential investor follows it, seems questionable at best. Plaintiff not only avers that its reliance was reasonable, but also that it will prove the Defendants' duty to update the document at trial. (Doc. 67, p. 10). At this stage, Plaintiff should be permitted to pursue that opportunity; therefore, the Motion to Dismiss is denied on Counts I and V of the Amended Complaint.

    **B.    Counts II & VI: False Information Negligently Supplied for the Guidance of Others Against Credit Suisse and CS Mortgage**

Credit Suisse and CS Mortgage correctly assert the legally impropriety of Plaintiff's attempt to allege claims of both "Negligent Misrepresentation" and "False Information Negligently Supplied for the Guidance of Others." (Doc. 58, p. 11). The claim of "False Information Negligently Supplied for the Guidance of Others" is essentially the Restatement (Second) of Torts' codification of "Negligent Misrepresentation." Restatement (Second) of Torts § 522 (1977). Florida has adopted the Restatements and, therefore, the two claims are the same under Florida law. *See, e.g., Gilchrist*, 696 So. 2d at 337. New York, on the other hand, has not adopted the Restatements; therefore, no such claim of "False Information Negligently Supplied for the Guidance of Others" exists under New York law. *See, e.g., Williams and Sons Erectors, Inc. v. S.C. Steel Corp.*, 983 F.2d 1176, 1181 (2d Cir. 1993). Accordingly, the Motion to Dismiss is granted on the two claims of "False Information Negligently Supplied for the Guidance of Others," which are Counts II and VI of the Amended Complaint.

### C. Counts III & VII: Common Law Fraud Against Credit Suisse and CS Mortgage

Credit Suisse and CS Mortgage move to dismiss Plaintiff's common law fraud claims based on the conclusory pleadings regarding the necessary scienter element. (Doc. 58, pp. 14-16). Both parties have recognized the proper authority on this issue; however, they disagree as to whether Plaintiff has effectively relied upon it. This authority states:

> A false representation of a material fact, made with knowledge of its falsity, to a person ignorant thereof, with intention that it (sic) shall be acted upon, followed by reliance upon and by action thereon amounting to substantial change of position, is a fraud of which the law will take cognizance.
>
> The knowledge, by the maker of the representation, of its falsity, or, in technical phrase, the scienter, can be established by either one of the three following phases of proof: (1) That the representation was made with actual knowledge of its falsity; (2) without knowledge either of its truth or falsity; (3) under circumstances in which the person making it ought to have known, if he did not know, of its falsity.

*Parker v. State of Fla. Bd. of Regents*, 724 So. 2d 163, 168 (Fla. 1st Dist. Ct. App. 1998) (citing *Joiner v. McCullers*, 28 So. 2d 823, 824 (1947). Plaintiff specifically relies on the *Parker* court's third alternative for proving the necessary scienter. As stated in the Amended Complaint, "CSFB (Credit Suisse) knew or should have known of the falsity of the misrepresentations, as well as the omissions...." (Doc. 50, ¶ 61).

Whether or not Plaintiff's argument is correct, it has failed to provide factual support explaining *why* Credit Suisse knew or should have known of the misrepresentations' falsity. As this Court has previously recognized, conclusory statements alone will not withstand a 12(b)(6) motion to dismiss. *Perry*, 786 F.2d at 1094. Actual facts must be pled to support a party's allegations. *Bell Atl. Corp.*, 127 S. Ct. at 1965. Additionally, Federal Rule 9(b) requires that fraud claims be pled with a heightened level of particularity. *E.g., Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001). Plaintiff has undoubtedly failed to meet

9

that standard; therefore, the Motion to Dismiss is granted, with leave to amend, on Counts III and VII of the Amended Complaint.[1]

### D.     Counts IV & X: Breach of Fiduciary Duty Against Credit Suisse and SPS

Credit Suisse and SPS argue that Plaintiff's breach of fiduciary duty claims should be dismissed, first, under the Shotgun Pleading Doctrine. *See Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006). The Court, however, disagrees. As Plaintiff points out in its Response, it merely made repetitive reference to the "general facts applicable to all counts" in the Amended Complaint in an effort to create a "short and plain statement of the claim." (Doc. 67, p. 15) (quoting Fed. R. Civ. P. 8). Thereby, Counts IV and X of the Amended Complaint will not be dismissed on this basis.

Credit Suisse and SPS also argue that Plaintiff has failed to properly allege a fiduciary duty. (Doc. 58, p. 16). They stress that "there must be a relationship of trust and confidence," but Plaintiff lacked any relationship whatsoever with either Credit Suisse or SPS. (Doc. 58, p. 16) (citing *In re Mid-Island Hosp., Inc.*, 276 F.3d 123, 130 (2d Cir. 2002); *Taylor Woodrow Homes Fla., Inc. v. 4/46-A Corp.*, 850 So. 2d 536, 540 (Fla. Dist. Ct. App. 2003)). But as Plaintiff stated it its Amendment Complaint, "the Prospectus Supplement specifically provides, that '[y]ou should rely on the information contained in this document or to which we have referred you in this prospectus supplement. We have not authorized anyone to provide you with information that is different.'" (Doc. 50, ¶ 22) (quoting Doc. 50, Ex. B at S-2).

Defendants provide supportive case law holding that a fiduciary duty is generally not created in an arms length commercial transaction. (Doc. 58, p. 17) (citing *In re Mid-Island Hosp., Inc.*, 276 F.3d at 130). However, that case did not address a scenario in which the

---

[1] Fed. R. Civ. P. 15(a)(2); *See also, e.g., Foman v. Davis*, 83 S. Ct. 227 (1962) (holding that leave to amend shall be given freely when justice so requires).

investor was specifically advised to rely solely on the information provided by the other party. In fact, the *In re Mid-Island Hosp., Inc.* court specifically stated there was "no allegation of anything other than an ordinary commercial relationship." 276 F.3d at 130. Here, Plaintiff alleged its reliance on the Prospectus Supplement and properly emphasized that the document specifically instructed potential investors not to look elsewhere for information. (Doc. 50, ¶ 22) (quoting Doc. 50, Ex. B at S-2). This scenario does not fit the "ordinary commercial relationship" that Defendants attempt to categorize it under. *In re Mid-Island Hosp., Inc.,* 276 F.3d at 130. Therefore, taking the factual allegations in the light most favorable to Plaintiff, the Motion to Dismiss is denied on Counts IV and X of the Amended Complaint.

E.   **Count VIII: Breach of Contract Against Triad**

Plaintiff's claim against Triad is based on the insurance agreement that Triad entered into with BNY, in which Triad was to provide mortgage loan guaranty insurance to protect and indemnify the Securities. (Doc. 50, ¶ 103). Plaintiff asserts that the insurance was procured for the benefit of all Certificateholders, who were specifically instructed in the Prospectus Supplement to rely on the interest of said insurance. (Doc. 50, ¶ 104). As a Certificateholder, Plaintiff alleges that it was a third-party beneficiary of the insurance policy and, therefore, by breaching the insurance agreement, Triad was a direct and proximate cause of Plaintiff's damages. (Doc. 50, ¶¶ 105, 107, 108).

As Triad avers it its Motion to Dismiss, the critical question is whether the benefit to Plaintiff, as a third-party to the agreement, is direct or incidental. *Blu-J, Inc. v. Kemper C.P.A. Group*, 916 F.2d 637, 640 (11th Cir. 1990). "Where the contract is designed solely for the benefit of the formal parties thereto, a third person cannot maintain an action thereon, even though such third person might derive some incidental or consequential benefit from its

enforcement." *Id.* Triad argues that Plaintiff is not a direct third-party beneficiary to the insurance agreement and, therefore, may not sue to enforce it. (Doc. 57, p. 4).

In determining the intended benefit to Plaintiff, the Court will look directly to the terms of the policy. *See Dyal v. Union Bag-Camp. Paper Corp.*, 236 F.2d 387 (5th Cir. 1959). However, if the policy's terms contradict Plaintiff's Amended Complaint, the Court must rely on the policy. *Id.* at 393. The insurance policy states:

> N. Insured means: (1) The Person designated on the face of the Policy; or (2) any Person to whom coverage has been assigned with the written approval of the Company as provided in Section II. J. resulting in a change in the Insured names on a Certificate in accordance with this Policy.

(Doc. 50, Ex. E at § I.N.) (emphasis added). The face of the policy states, "The Insured: Bank One, N.A. as trustee for CSFB Mortgage-Backed Pass-Through Certificates Series 2001-28." (Doc. 50, Ex. E). Those terms make clear that Bank One was the party Triad intended to insure. The Court then looks to evidence of another "Insured" assigned with the written approval of Triad. *Dyal*, 236 F.2d at 393. No such evidence has been presented, nor has Plaintiff alleged that such evidence exists.

In its Response, Plaintiff cites case law holding that "it is not necessary that third-party beneficiaries be identified or identifiable at the time of the making of the contract." (Doc. 64, p. 3) (citing *981 Third Avenue Corp. v. Beltramini*, 485 N.Y.S.2d 535 (N.Y. 1985); *Pilot Air Freight Corp. v. City of Buffalo*, 1991 WL 275051 (W.D.N.Y. Dec. 16, 1991)). While this holding may be significant, it fails to differentiate between direct and incidental third-party beneficiaries, which is at the root of Plaintiff's standing to bring this action. At this juncture, the Court finds that Plaintiff has failed to establish that the benefit was not incidental or consequential. As a result, Plaintiff lacks standing to bring this claim. Accordingly, the Motion to Dismiss is granted, with leave to amend, on Count VIII of the Amendment Complaint.

F.  **Count IX: Breach of Contract against DLJ**

Defendant DLJ argues that Plaintiff's breach of contract claim against fails as a matter of law. First, DLJ states that Plaintiff's "vague pleading fails to give DLJ fair notice and falls far short of demonstrating a 'plausible entitlement to relief' under Federal Rule 8(a)(2)." (Doc. 58, p. 20) (quoting *Bell Atl. Corp.*, 127 S. Ct. at 1967). However, as Plaintiff correctly asserts in response, DLJ is essentially grafting an improper heightened pleading requirement. (Doc. 67, p. 22) (citing *The Alpine Group, Inc. v. Johnson*, 2002 WL 10495, *2 (S.D.N.Y. Jan. 3, 2002)). "Breach of contract claims need not be pled with the same level of particularity as fraud claims." *Id.* at *2 (citing *Tagare v. NYNEX Network Sys. Co.*, 921 F.Supp. 1146, 1150-51 (S.D.N.Y. 1996)). The Motion to Dismiss on Count IX is, therefore, denied on these grounds.

DLJ's second argument for the dismissal of Count IX is significantly stronger. DLJ makes reference to Section 2.03(c) of the PSA, which specifically limits the remedy for a breach of that provision to specific performance:

> It is understood and agreed that the obligation under this Agreement of any Person to cure, repurchase or substitute any Mortgage Loan as to which a breach has occurred and is continuing <u>shall constitute the sole remedy against such Persons respecting such breach available to Certificateholders</u>, the Depositor or the Trustee on their behalf. (emphasis added).

(Doc. 58, p. 20.) (quoting Doc. 50, Ex. B at § 2.03(c)). Plaintiff has failed to allege its entitlement to remedial damages, rather than specific performance. In other words, Plaintiff has not properly pled its entitlement to the relief requested on this claim. Accordingly, the Motion to Dismiss is granted, with leave to amend, on Count IX of the Amended Complaint.

G.  **Counts XI: Breach of Contract (Affirmative Actions) Against SPS**

SPS first argues that Plaintiff's Breach of Contract (Affirmative Actions) claim must be dismissed because it fails "to provide adequate notice and demonstrate a plausible entitlement to

13

relief under Federal Rule 8(a)(2)." (Doc. 58, p. 21). The Court disagrees with this argument. As Plaintiff asserts in its Response, SPS is essentially arguing that Plaintiff failed by not pleading specific details of information to which Plaintiff lacked access. (Doc. 67, p. 23). The Motion to Dismiss is denied on this basis.

Next, SPS argues that Plaintiff's claim fails "to allege a breach under the plain terms of the relevant provisions." (Doc. 58, p. 21). The Court disagrees with this argument as well. SPS quotes two specific provisions that Plaintiff claims were violated and provides limited underlining for emphasis. (Doc. 58, p. 21). While SPS' specificity is appreciated, Plaintiff is not required to provide ultimate proof of the breach at this time. *See Levy v. Verizon Info. Serv., Inc.*, 498 F.Supp.2d 586, 592 (E.D.N.Y. 2007). As Plaintiff reiterates in its Response, the Amended Complaint referenced specific duties (affirmative actions) on the part of SPS and contained allegations of a failure to fulfill them. (Doc. 67, p. 24) (citing (Doc. 50, ¶¶ 27, 125, 126)). Once again, accepting "as true all of the factual allegations contained in the complaint," the Court finds that Plaintiff has sufficiently plead this claim. *Erickson*, 127 S. Ct. at 2200. Accordingly, the Motion to Dismiss is denied on Count XI of the Amended Complaint.

## H.    Count XII: Breach of Contract (Reporting) Against SPS

SPS argues that the Breach of Contract (Reporting) claim should be dismissed because SPS' duty to report was only activated upon request and Plaintiff failed to allege that such a request was ever made. (Doc. 58, p. 23). Although this argument is logical, it is not necessary correct. As Plaintiff avows in its Response, the required request did not necessarily have to come from Plaintiff; it could have come from one of the co-defendants. (Doc. 67, pp. 24-25). Therefore, recovery of such a written request would "require discovery regarding communications between SPS and its [alleged] co-conspirators." (Doc. 67, pp. 24-25).

Furthermore, Plaintiff did allege in the Amended Complaint that "[a]ll conditions precedent to the institution of this action have occurred, have been excused, are futile or impossible, are satisfied, or have been otherwise waived." (Doc. 50, ¶ 36). The Court shall construe all of Plaintiff's allegations liberally, as required by the "notice" pleading standard. *See Harris v. Proctor Gamble Cellulose Co.*, 73 F.3d 321, 324 (11th Cir. 1996). In doing so, the Motion to Dismiss is denied on Count XII of the Amended Complaint.

I.   **Count XIII: Breach of Contract (Enforcement of Rights Against DLJ as Seller to Cure Defaults) Against SPS**

In support of this claim's dismissal, SPS first mimics the argument DLJ initially set forth for the dismissal of Count IX (Breach of Contract Against DLJ), essentially labeling Plaintiff's allegations as vague. (Doc. 58, p. 23). Unsurprisingly, the Court still disagrees with this argument. As previously stated, "[b]reach of contract claims need not be pled with the same level of particularity as fraud claims." *The Alpine Group, Inc.*, 2002 WL 10495 at *2. Accordingly, the Motion to Dismiss is denied on these grounds.

SPS next argues that Plaintiff has failed to identify any obligation required of SPS by the PSA and, therefore, the Court should not impose one. (Doc. 58, p. 23-24) (citing *Teddy Bear Co., Inc. v. Madison Realty Co.*, 1 N.Y.3d 470, 475 (2004)). Contrarily, in its Response, Plaintiff points out several obligations specifically identified in the Amended Complaint:

> Paragraph 136 expressly identifies SPS' obligations under Section 3.01 of the Pooling and Servicing Agreement to "represent and protect the interests of the Trust Fund in the same manner as it protects its own interest in mortgage loans in its own portfolio in any claim, proceeding or litigation regarding a Mortgage Loan ..." Paragraph 137 alleges that "[u]nder section 3.11 of the Pooling and Servicing Agreement, SPS was obligation to 'use reasonable efforts to foreclose upon or otherwise comparably convert the ownership of properties securing such of the related Mortgage Loans as come into and continue in default.'"

(Doc. 67, p. 25) (quoting (Doc. 50, ¶¶ 136-37)). Even if the factual allegations were not "taken in the light most favorable to the Plaintiff" as the law requires, it would take a conscious effort on the Court's part to overlook the strength of Plaintiff's argument on this issue. *See Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Consequently, the Motion to Dismiss is denied on Count XIII of the Amended Complaint.

As a last resort, DLJ and SPS argue that all of Plaintiff's contract claims are barred by Section 7.03 of the PSA, which was included to limit liability. (Doc. 58, p. 24). Defendants assert that "[n]owhere does the Amended Complaint allege that either DLJ or SPS breached the provisions of the PSA with willful misfeasance, bad faith, gross negligence or reckless disregard of their respective obligations." (Doc. 58, p. 24). What the Defendants are seemingly overlooking by raising this argument are the conspiracy claims unsparingly scattered throughout the Amended Complaint. The crux of Plaintiff's theory is that the Defendants "conspired and agreed to . . . develop and implement" a scheme to defraud. (Doc. 50, ¶ 163). For anyone, let alone the Court, to conclude that such a bold claim does not naturally include an allegation of bad faith, would be outlandish. With that said, the Court disagrees with Defendants' argument and the Motion to Dismiss is, therefore, denied on this basis.

J. **Count XIV: Breach of Contract (Information to Rating Agencies) Against BNY**

As a preliminary matter, BNY argues that "Plaintiff has failed to allege any basis to impose liability on BNY for the alleged conduct of a twice-removed predecessor trustee." (Doc. 55, p. 6). Although BNY's argument appears rational, Plaintiff provides a compelling response. As the United States District Court for the Southern District of New York has previously held, the "determination of the successor liability . . . depends at least in part on the content of the agreements subject to discovery . . . ." *Pollack v. Laidlaw*, 1995 WL 261518, *19 (S.D.N.Y.

May 3, 1995). At this stage in litigation, to absolve BNY of all liability would be improper. The Motion to Dismiss is, therefore, denied on this basis.

Next, BNY argues that the "no action" clause of the PSA precludes Plaintiff from bringing claims against BNY. (Doc. 55, p. 9). BNY asserts that Plaintiff did not meet the strict conditions within Section 11.07 of the PSA and, therefore, is barred from pursuing legal action. (Doc. 55, p. 9). But, as Plaintiff alleged it the Amended Complaint and its Response, the conditions necessary under Section 11.07 were made impossible. (Doc. 50, ¶ 36); (Doc. 65, pp. 11-14). Accepting this factual allegation as true, as the Court is required to do, this claim must survive BNY's Motion to Dismiss. *See Erickson*, 127 S. Ct. at 2200. Accordingly, the Motion to Dismiss is denied on these grounds.

For Count XIV only, BNY correctly argues that Plaintiff has failed to allege the breach of any express obligation under the PSA. (Doc. 55, p. 10). Although Plaintiff recognizes BNY's duties to provide information to rating agencies, Plaintiff fails to allege that BNY breached this duty. (Doc. 50, ¶ 142). The Amended Complaint simply states the duties and requests relief, without any indication of a breach. (Doc. 50, p. 31). Even when drawing all reasonable inferences in Plaintiff's favor, the Court is not in the position to rewrite Plaintiff's pleadings. *See Fuller v. Johannessen*, 76 F.3d 347, 349-50 (11th Cir. 1996); *Peterson v. Atlanta Hous. Auth.*, 998 F.2d 904, 912 (11th Cir. 1993). For that reason, the Motion to Dismiss is granted, with leave to amend, on Count XIV of the Amended Complaint.

K.   **Count XV: Breach of Contract (Information to Certificateholders) Against BNY**

BNY's argument for the dismissal of Count XV is, in essence, a attempted shift of blame. BNY concedes its duty under the PSA to report information to the Certificateholders; however, it asserts that the information was limited to that which it received from the Servicers. (Doc. 55,

pp. 11-17). Therefore, BNY feels it cannot be held accountable for inaccurate or omitted information. (Doc. 55, pp. 11-17).

The primary flaw is BNY's argument comes from within the very language it chose to emphasize in its Motion to Dismiss. In defining BNY's duty, Section 4.04 of the PSA states that "[t]he Trustee's responsibility for disbursing the above information to the Certificateholders is limited to the availability, timeliness and accuracy of the information derived from each Servicer . . . ." (Doc. 50, Ex. B at §4.04(a)(xiv)) (emphasis added). This language clearly imposes a duty on BNY, of which Plaintiff has alleged a breach. Once again, considering Plaintiff's factual allegations as true, the Court finds that Plaintiff has sufficiently pled this claim. *See Erickson,* 127 S. Ct. at 2200. Therefore, the Motion to Dismiss is denied on Count XV on the Amended Complaint.

L.   **Count XVI: Breach of Fiduciary Duty Against BNY**

The first step in bringing a breach of fiduciary duty claim is for Plaintiff to "show that a fiduciary duty exists between him and the defendant." *Radin v. Albert Einstein Coll. of Med. of Yeshiva,* 2005 WL 1214281, *1 (S.D.N.Y. May 20, 2005); *see also Am. Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc.,* 390 F.Supp.2d 1170 (M.D. Fla. 2005) (noting that "[t]o state a claim for breach of fiduciary or confidential relationship, 'a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party.'" (quoting *Watkins v. NCNB Nat. Bank of FLA., N.A.,* 622 So.2d 1063, 1065 (Fla. 3d Dist. Ct. App. 1993))). BNY asserts that it had no such fiduciary relationship with Plaintiff and, therefore, Count XVI must be dismissed. (Doc. 55, pp. 18-21). Plaintiff, however, did allege that BNY, as trustee, "was in a unique position to enforce the Pooling and Servicing Agreement and to prevent harm to the certificateholders." (Doc. 50, ¶ 150). Additionally,

Plaintiff alleged that BNY had a duty "to act fairly and honestly to and toward the certificateholders." (Doc. 50, ¶ 151). The critical question then becomes whether these allegations explain a fiduciary duty or whether they are merely a summary of BNY's contractual obligations under the PSA. The Court finds for the former and, thereby, concludes that Plaintiff has sufficiently alleged its claim. Whether or not Plaintiff will ultimately prevail on this claim, however, is a matter to be determined at a later stage. *E.g., Brandt v. Basset*, 69 F.3d 1539, 1550 (11th Cir. 1995). Accordingly, the Motion to Dismiss is denied on Count XVI of the Amended Complaint.

### M.  Count XVII: Civil Conspiracy Against Credit Suisse, CS Mortgage, BNY, DLJ, and SPS

Defendants Credit Suisse, CS Mortgage, BNY, DLJ, and SPS all move to dismiss Plaintiff's claim that they conspired and agreed to develop and implement a scheme to defraud, make material misrepresentations, and breach the PSA. (Doc. 58, p. 17); (Doc. 55, p. 21); (Doc. 50, ¶ 163). Under Florida law, "[t]he elements of a civil conspiracy are: (a) a conspiracy between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts performed pursuant to the conspiracy." *Walters v. Blankenship*, 931 So.2d 137, 140 (Fla. 5th Dist. Ct. App. 2006) (citing *Florida Fern Growers Ass'n, Inc. v. Concerned Citizens of Putnam County*, 616 So.2d 562 (Fla. 5th Dist. Ct. App. 1993)). Regardless of whether Plaintiff has sufficiently pled the Defendants' overt acts, the Court finds that Plaintiff has failed to plead facts in support of any form of conspiracy between any two Defendants. Even under the liberal "notice" pleading standard in federal courts, conclusory statements standing alone will not suffice. *Perry*, 786 F.2d at 1094. Accordingly, the Motion to Dismiss is granted, with leave to amend, on Count XVII on the Amended Complaint.

IV.  CONCLUSION

The Court has thoroughly reviewed all documents submitted for consideration on this matter, and for the reasons set forth above, it is

**ORDERED** that Defendants' Motions to Dismiss are **GRANTED** on Counts II and VI of the Amended Complaint; Defendants' Motions to Dismiss are **GRANTED, WITH LEAVE TO AMEND**, on Counts III, VII, VIII, IX, XIV, and XVII of the Amended Complaint; and Defendants' Motions to Dismiss are **DENIED** on Counts I, IV, V, X, XI, XII, XIII, XV, and XVI of the Amended Complaint.  Plaintiff has ten (10) days from this date to file a second amended complaint to correct the noted deficiencies.

**DONE and ORDERED** in Chambers, in Tampa, Florida, this 22 day of April, 2008.



ELIZABETH A. KOVACHEVICH
United States District Judge

Copies to: All parties and counsel of record.