# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

| | |
|---|---|
| BANKERS LIFE INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Civil Action No. |
| CREDIT SUISSE FIRST BOSTON ) | 8:07-CV-00690-EAK-MSS |
| CORPORATION, also known as Credit Suisse ) | Judge Elizabeth A. Kovachevich |
| Securities (USA) LLC, CREDIT SUISSE ) | Magistrate Judge Mary S. Scriven |
| FIRST BOSTON MORTGAGE SECURITIES ) | |
| CORP., DLJ MORTGAGE CAPITAL, INC., ) | |
| TRIAD GUARANTY INSURANCE ) | **DISPOSITIVE MOTION** |
| CORPORATION, SELECT PORTFOLIO ) | |
| SERVICING, INC. and BANK OF NEW ) | |
| YORK, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MOTION OF THE BANK OF NEW YORK TO DISMISS THE SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

AKERMAN SENTERFITT
Edmund S. Whitson
SunTrust Financial Centre
401 E. Jackson Street, Suite 1700
Tampa, FL 33602-5250
(813) 223-7333

THACHER PROFFITT & WOOD LLP
Richard F. Hans
John P. Doherty
Andrew B. Zinman
Two World Financial Center
New York, NY  10281
(212) 912-7400


*Attorneys for The Bank of New York*

<u>TABLE OF CONTENTS</u>

**Page(s)**

TABLE OF AUTHORITIES ....................................................................................... i

PRELIMINARY STATEMENT ...............................................................................1

SUMMARY OF ALLEGATIONS AGAINST BNY ...................................................4

ARGUMENT ................................................................................................................6

I.    Standard of Review..................................................................................................6

II.   Plaintiff Has Failed to Allege Any Basis to Impose Liability on BNY for the
      Alleged Conduct of a Twice-Removed Predecessor Trustee and So Its Claims
      Against BNY Necessarily Fail As a Matter of Law ..............................................7

      A.    The Second Amended Complaint Alleges Misconduct By Another Entity
            (Bank One) Years Before BNY Became Trustee .........................................7

      B.    Plaintiff has Failed to Allege Any Basis to Impose Liability for the Torts and
            Breaches of a Predecessor Trustee..............................................................8

      C.    Contract Claims Cloaked as Tort/Fraud Claims Should be Dismissed .......8

III.  Plaintiff Has Failed to Meet Conditions Precedent For Bringing This Action and So
      the Second Amended Complaint Must Be Dismissed .........................................9

IV.   The Second Amended Complaint Must Be Dismissed as Plaintiff Has Failed to
      Allege That BNY Breached Any Obligation under the PSA...............................11

      A.    The PSA Alone Defines the Trustee's Duties and Obligations ..................11

      B.    Plaintiff's Factual Allegations Fail to Constitute a Cognizable Claim for
            Breach of Contract and So Counts XIV-XV Must be Dismissed...............13

            (i)     The PSA Insulates BNY from Liability for Information Received
                    From Other Sources and Delivered to Third Parties........................17

            (ii)    Count XIV (Information to Rating Agencies) Fails to State a Cause
                    of Action for Breach of Contract ....................................................18

      C.    Plaintiff has Failed to Plead the Existence of any Fiduciary Duty and Thus
            Count XVI Fails as a Matter of Law...........................................................20

            (i)     The Trustee Owes No Duty to Certificateholders Other Than Those
                    Specified in the PSA .......................................................................20

      (ii)     BNY Had No Implied Duty Outside of the PSA ..............................................22

V.    The Plaintiff's Civil Conspiracy Claim Remains Untenable As Against BNY....................24

CONCLUSION.............................................................................................................................25

# **TABLE OF AUTHORITIES**

**Page(s)**

## **CASES**

AG Capital Funding Partners, L.P. v. State Street Bank and Trust Co.,
  2008 WL 2510628, __ N.E.2d __ (N.Y. Ct. App. June 25, 2008)............................ passim

Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.,
  390 F. Supp. 2d 1170 (M.D. Fla. 2005) ............................................................ 20

Bates v. Cook, Inc., 509 So. 2d 1112 (Fla. 1987) ............................................................ 6

Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007) ................................. 6, 22

Bernard v. Kee Mfg. Co., 409 So. 2d 1047 (Fla. 1982)................................................. 8

Bryant v. Avado Brands, Inc., 187 F.3d 1271 (11th Cir. 1999) ................................. 5

Casa Clara Condo. Ass'n v. Charley Toppino & Sons, 620 So. 2d 1244 (Fla. 1993).................... 9

Clark-Fitzpatrick, Inc. v. Long Island R.R., 516 N.E.2d 190 (N.Y. 1987).................................... 8

Clayton v. State Farm Mut. Auto. Ins. Co.,
  729 So. 2d 1012 (Fla. 3d Dist. Ct. App. 1999) .................................................. 9

Colon v. Multi-Pak Corp., 477 F. Supp. 2d 620 (S.D.N.Y. 2007)................................... 8

Dresner Co. Profit Sharing Plan v. First Fid. Bank, N.A.,
  1996 WL 694345 (S.D.N.Y. Dec. 4, 1996) ....................................................... 23

Elliot Assocs. v. J. Henry Schroder Bank & Trust Co., 838 F.2d 66 (2d Cir. 1988)............. passim

Fisk v. Letterman, 424 F. Supp. 2d 670 (S.D.N.Y. 2006) ............................................ 24

Fla. Mun. Power Agency v. Fla. Power & Light Co.,
  81 F. Supp. 2d 1313 (M.D. Fla. 1999) .............................................................. 16

Garcia v. Pub. Health Trust of Dade County, 841 F.2d 1062 (11th Cir. 1988).............................. 6

Glover v. Ligget Group, Inc., 459 F.3d 1304 (11th Cir. 2006)...................................... 6

Harris Trust and Sav. Bank v. E-II Holdings, Inc.,
  722 F. Supp. 429 (N.D. Ill. 1989) .................................................................... 18

In re Harrell, 351 B.R. 221 (M.D. Fla. 2006) .............................................................. 13

Interstate Sec. Corp. v. Hayes Corp., 920 F.2d 769 (11th Cir. 1991)............................. 9

Kramer v. Piper Aircraft Corp., 868 F.2d 1538 (11th Cir. 1989) .................................................. 6

Lorenz v. CSX Corp., 1 F.3d 1406 (3d Cir. 1993) ..................................................... 14-15, 21, 23

Magluta v. Samples, 256 F.3d 1282 (11th Cir. 2001) ..................................................... 7

Magten Asset Mgmt. Corp. v. The Bank of N.Y.,
    2007 WL 1326795 (Sup. Ct. N.Y. County May 8, 2007)................................................. 12

McCutcheon v. Kidder, Peabody & Co., 938 F. Supp. 820 (S.D. Fla. 1996)................................ 9

Meckel v. Cont'l Res. Co., 758 F.2d 811 (2d Cir. 1985) ........................................... 12

Metro. Life Ins. Co. v. RJR Nabisco, Inc.,
    716 F. Supp. 1504, (S.D.N.Y. 1989)................................................................... 24

Nairobi Holdings Ltd. v. Brown Bros. Harriman & Co.,
    2002 WL 31027550 (S.D.N.Y. Sept. 10, 2002)................................................... 21

N.Y. Med. Care Facilities Fin. Agency v. Bank of Tokyo Trust Co.,
    163 Misc. 2d 551 (Sup. Ct. N.Y. County 1994) ................................................... 17

Niagara Mohawk Power Corp. v. Stone & Webster Eng'g Corp.,
    725 F. Supp. 656 (N.D.N.Y. 1989).................................................................... 8

Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.,
    660 N.E.2d 415 (N.Y. 1995).......................................................................... 13

Page Mill Asset Mgmt. v. Credit Suisse First Boston Corp.,
    2000 WL 335557 (S.D.N.Y. Mar. 30, 2000) ................................................... 9

Papasan v. Allain, 478 U.S. 265 (1986).......................................................... 6

Radin v. Albert Einstein Coll. of Med. of Yeshiva Univ.,
    2005 WL 1214281 (S.D.N.Y. May 20, 2005) ................................................... 21

Raymond James & Assocs. v. The Bank of N.Y. Trust Co.,
    2008 WL 186590 (M.D. Fla. Jan. 18, 2008)................................................ passim

Renovich v. Stewardship Concepts, Inc.,
    1989 WL 56197 (N.D. Ill. May 15, 1989) ................................................... 20

Sander v. Alexander Richardson Invs., 334 F.3d 712 (8th Cir. 2003)................................ 22

Smith v. Brevard County, 461 F. Supp. 2d 1243 (M.D. Fla. 2006).............................. 17

Wagner v. First Horizon Pharm. Corp., 464 F.3d 1273 (11th Cir. 2006)........................ 8

Walters v. Blankenship, 931 So. 2d 137 (Fla. 5th Dist. Ct. App. 2006)........................ 24

Williams v. Cont'l Stock Transfer & Trust Co.,
    1 F. Supp. 2d 839 (N.D. Ill. 1998) .............................................................. 15, 21

## **STATUTES**

15 U.S.C. § 77ooo................................................................................................ 12, 22

N.Y. GEN. BUS. LAW ART. 23-A § 352 .................................................................. 20

## **RULES**

FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) ......................................................... 1, 17

## **OTHER AUTHORITIES**

American Bankers Association, Corporate Trust Committee, The Trustee's Role
    in Asset-Backed Securities (2003)................................................................. 22

RESTATEMENT (SECOND) CONFLICT OF LAWS (1971) .................................................... 6

Defendant The Bank of New York ("BNY" or "Trustee"), by its attorneys, respectfully submits this memorandum of law and the affidavit of Richard F. Hans ("Hans Aff."), dated September 28, 2007,[1] in support of its Motion to Dismiss Plaintiff's Second Amended Complaint,[2] pursuant to Federal Rule of Civil Procedure 12(b)(6), filed contemporaneously herewith.

### PRELIMINARY STATEMENT

By this motion, BNY seeks to dismiss unsupported and illogical allegations in Plaintiff's Second Amended Complaint that BNY participated in misrepresentations, omissions and other wrongdoing, all of which occurred more than *two-and-a-half years before* BNY, the successor indenture trustee, had any connection whatsoever to the matters at issue here.  As set forth below, because Plaintiff's Second Amended Complaint is filled with vague and conclusory statements, it is as flawed as its predecessors and deserves dismissal.

Plaintiff Bankers Life Insurance Company is a sophisticated insurance company that in January and February 2004 acquired high-risk, high-return securities backed by mortgage loans (the "Securities").  Three years later, Plaintiff alleged that the Securities lost substantial value.  In response to this loss, Plaintiff sued Credit Suisse First Boston Corporation and a number of its affiliates (together, "Credit Suisse"), which acquired the mortgage loans, pooled them in a trust (the "Trust"), and caused the Trust to issue the Securities.  Plaintiff also sued Triad Guaranty Insurance Corporation ("Triad"), the company that issued a mortgage guaranty insurance policy

---

[1]     In order to not burden the Court with a duplicate filing of the relevant documents, BNY respectfully refers the Court to the previous, electronically filed Hans Aff. and accompanying exhibits. See Hans Aff., Dkt. # 56.

[2]     The Second Amended Complaint, Dkt. # 85, is virtually identical to the Amended Complaint save for some additional vague and conclusory assertions that do not address any of the Court's concerns cited in the April 11, 2008 Order, which granted in part, and denied in part, Defendants' motions to dismiss the Amended Complaint.

in connection with the Securities.  Finally, Plaintiff sued BNY, which in October 2006 became successor indenture trustee for the Trust.

Plaintiff's Second Amended Complaint alleges that Credit Suisse, Triad and BNY, purportedly in violation of various common law, contractual and statutory duties, collectively made misrepresentations and omissions concerning the Securities that caused the Plaintiff to buy them.  Plaintiff's allegations must be dismissed because, among other things, they fail to state claims upon which relief can be granted.

There is no basis in law or alleged fact to assert a claim for breach of fiduciary duty against BNY or to impose any duty or obligation beyond those specified in the trust indenture. An indenture trustee owes only those duties outlined in the trust indenture -- here the Pooling and Servicing Agreement ("PSA").  On this, the law is clear.  In a strikingly similar case, <u>Raymond James & Associates v. The Bank of New York Trust Co.</u>, No. 07-CV-239-T-27TBM, 2008 WL 186590 (M.D. Fla. Jan. 18, 2008), the Honorable James D. Whittemore recently dismissed the plaintiff's complaint, finding that the indenture trustee owed no fiduciary obligation to the investors.  Judge Whittemore's decision is persuasive and entirely consistent with those rendered in every other jurisdiction that has considered the liability of an indenture trustee.  Lest there be any doubt, however, New York's highest court just this week reaffirmed New York law on this very issue: an indenture trustee owes only a duty to perform its ministerial duties with due care, but *does not* owe a fiduciary duty to the certificate holders.  <u>See</u> <u>AG Capital Funding Partners, L.P. v. State Street Bank & Trust Co.</u>, No. 114, 2008 WL 2510628, __ N.E.2d __ (N.Y. Ct. App. June 25, 2008) (page numbers unavailable).

More fundamentally, Plaintiff cannot possibly hold BNY liable for any alleged wrongdoing that caused Plaintiff to purchase the Securities in 2004:  *BNY did not become*

2

*Trustee for the Trust until October 2006* -- two-and-a-half years after Plaintiff purchased the Securities.  Indeed, Plaintiff does not even allege, nor can it, that BNY made any misrepresentations or omissions or otherwise engaged in any other wrongful conduct before Plaintiff purchased its Securities.  Likewise, Plaintiff does not assert any factual basis for holding BNY liable for the alleged acts of a predecessor trustee.  Plaintiff merely lists BNY as a defendant and then makes vague, conclusory allegations that BNY engaged in wrongdoing.  Such claims are frivolous at best.

Indeed, the *only* factual allegations made in the Complaint against BNY are that, after it became Trustee, BNY did not provide Plaintiff with information concerning claims submitted and paid under Triad's mortgage guaranty insurance policy or inform public rating agencies -- i.e., Moody's Investor Services ("Moody's") -- of same.  The PSA that governs and defines BNY's duties and obligations makes crystal clear that BNY need only report to investors the information it *receives* regarding the mortgage guaranty insurance policy claims and payments.  If no such information is received, then no such information can or may be relayed.  Here, BNY is not alleged to have received that information.  In any event, the Second Amended Complaint confirms that the information BNY disclosed to Plaintiff was correct and, therefore, cannot form the basis for any cognizable claim.

Therefore, and for the additional reasons detailed below, all claims against BNY should be dismissed with prejudice.

<u>S<small>UMMARY OF</small> A<small>LLEGATIONS</small> A<small>GAINST</small> BNY</u>[3]

Beginning in 2001, the Trust issued for sale several classes of securities entitled "Mortgage-Backed Pass-Through Certificates, titled Series 2001-28" (the "Certificates"). (Second Amended Complaint ("SAC") ¶ 14.)  These Certificates were backed by pools of mortgage loans. (<u>Id</u>.)  Pursuant to the PSA, a Credit Suisse affiliate established the Trust, into which it and another affiliate deposited a pool of mortgage loans. (SAC ¶ 18.)  Bank One, N.A. ("Bank One") was the original named trustee.  On July 1, 2004, Bank One merged into J.P. Morgan Chase & Co. ("Chase"), and Chase assumed the trustee's role.  (Hans Aff., Ex. B, J.P. Morgan Chase & Co., Current Report (Form 8-K), at 1 (Item 2) (July 1, 2004).)  Thereafter, on October 1, 2006, pursuant to an asset-purchase agreement, Chase sold its corporate trust business to BNY, and BNY assumed the trustee's role.  (Hans Aff., Ex. C, The Bank of New York Company, Inc., Current Report (Form 8-K), at 2-3 (Item 8.01) (October 1, 2006).)

Credit Suisse published a Prospectus and Prospectus Supplement ("ProSupp," and together with Prospectus, the "Offering Documents") in 2001, more than two years before Plaintiff purchased the securities at issue.  (SAC ¶¶ 16; 28.)  Plaintiff contends the Offering Documents were issued with the "input, advice and consent" of the Credit Suisse Defendants and Bank One as trustee.  Bank One, Plaintiff contends, was the "predecessor in interest to defendant [BNY]."  (SAC ¶ 17.)

Plaintiff maintains that the Offering Documents contained false information regarding the delinquency of loans included in the Trust. (SAC ¶ 20.)  Plaintiff alleges Bank One "knew or should have known" the information was "false" and "materially misleading," and that "third

---

[3]    BNY respectfully refers the Court to the Memorandum of Law in Support of The Motion of Credit Suisse Securities (USA) LLC, Credit Suisse First Boston Mortgage Securities Corp., DLJ Mortgage Capital, Inc. and Select Portfolio Servicing, Inc. previously submitted in support of its Motion to Dismiss the Amended Complaint (hereinafter referred to as the "Credit Suisse Br."), Dkt. # 58, for a more complete statement of the background and relevant facts of this action.

party purchasers of the Certificates would rely on the information in the [ProSupp] when purchasing the Certificates" (SAC ¶¶ 20-22.)  Plaintiff proffers no facts or allegations to support its contention that BNY -- the successor indenture trustee to JPMorgan Chase, which was the successor indenture trustee to Bank One -- knew or should have known of the false information.

Plaintiff further maintains that "Bank One (predecessor in interest to defendant [BNY])" had an "obligation" to do, among other things, the following: (1) make amendments or corrections to the ProSupp; (2) inform potential third party purchasers that the insurer (Triad) declined to cover those mortgage loans procured by fraud; (3) pursue remedies available to the Trustee under the PSA "to prevent the impairment of the collateral and its concomitant diminution in value"; and (4) inform Moody's of, or generally "publish[] information" regarding, inter alia, the delinquent loans and the insurer's refusal to cover certain mortgage loans.  (SAC ¶¶ 27-30; 33.)

Plaintiff does not explain the line of succession from Bank One, an unrelated entity, to BNY or otherwise set forth how or when BNY became Trustee.  It alleges only that Bank One, an entity unrelated to BNY, was the original trustee and that it is the "predecessor in interest to defendant [BNY]."  (See, e.g., SAC ¶ 17.)  The original trustee, Bank One, merged with JP Morgan in July 2004.  (See Hans Aff., Ex. B.)  BNY only became Trustee in October 2006, nearly three years after Plaintiff purchased its Certificates, when it acquired JP Morgan's corporate trust business through an asset-purchase agreement.  (See Hans Aff., Ex. C.)[4]

---

[4]     When considering a motion to dismiss, it is proper for a court to take judicial notice of documents publicly filed with the SEC that are central or integral to the Complaint.  Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1276-77 (11th Cir. 1999)  (citing Cortec Industries Inc., v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991)).  Plaintiff has made these documents central to the pleading by alleging broadly that Bank One, the original trustee, was a "predecessor" to BNY.  It is appropriate, therefore, to consider on a motion to dismiss the fact and nature of that succession, to the extent revealed in publicly filed documents.

<u>ARGUMENT</u>

## I.

### STANDARD OF REVIEW

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions. . . ." <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted); <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").  Dismissal is therefore permitted "when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action."  <u>Glover v. Ligget Group, Inc.</u>, 459 F.3d 1304, 1308 (11th Cir. 2006) (quoting <u>Marshall County Bd. of Educ. v. Marshall County Gas Dist.</u>, 992 F.2d 1171, 1174 (11th Cir. 1993)).[5]

---

[5]    Plaintiff's claims against BNY arise under a contract, the PSA, governed by New York law.  The PSA provides that it "shall be construed in accordance with and governed by the substantive laws of . . . New York . . . and the obligations, rights and remedies of the parties hereto and the certificateholders shall be determined in accordance with [New York] laws" with respect to the conflict of laws issue. (Hans Aff., Ex. D, § 11.03.)

As to the extra-contractual claims, controlling authority from Florida and New York is similar if not identical.  Florida employs the "most significant relationship test" defined in Restatement (Second) Conflict of Laws § 145 (1971), as the guide for use in choice-of-law analysis.  <u>Bates v. Cook, Inc.</u>, 509 So. 2d 1112, 1114 (Fla. 1987) (citing RESTATEMENT (SECOND) CONFLICT OF LAWS §§ 145-46 (1971) to determine choice of law analysis); <u>Kramer v. Piper Aircraft Corp.</u>, 868 F.2d 1538, 1540 (11th Cir. 1989); <u>Garcia v. Pub. Health Trust of Dade County</u>, 841 F.2d 1062, 1064-65 (11th Cir. 1988).  Here, with the exception of Plaintiff's status as a Florida domiciliary, the operative facts and circumstances occurred in New York.  The contract at issue was executed in New York and contains a governing law clause selecting New York law.  Moreover, BNY is a New York domiciliary and the alleged wrongdoing by BNY arose in New York.  Accordingly, New York law should apply to this action.  To the extent the Court determines that Florida law applies to any or all of the causes of action alleged in the SAC, BNY has provided case law and standards for Florida law in this memorandum where appropriate.  In nearly all instances, the law of New York and Florida are indistinguishable with respect to the allegations herein.

## II.

### PLAINTIFF HAS FAILED TO ALLEGE ANY BASIS TO IMPOSE LIABILITY ON BNY FOR THE ALLEGED CONDUCT OF A TWICE-REMOVED PREDECESSOR TRUSTEE AND SO ITS CLAIMS AGAINST BNY NECESSARILY FAIL AS A MATTER OF LAW

**A.    The Second Amended Complaint Alleges Misconduct By Another Entity (Bank One) Years Before BNY Became Trustee**

The Second Amended Complaint, Plaintiff's third bite at the apple, alleges misconduct only by the Credit Suisse Defendants and Bank One.  The Second Amended Complaint does not allege a single act by BNY relative to its acquisition of the Certificates during that period, nor could it: BNY did not become Trustee until 2006, nearly three years after Plaintiff purchased the last of its certificates.

BNY did not author -- and *could not* have authored or otherwise prepared -- the Offering Documents, all of which were issued in 2001 (Credit Suisse Br., at p. 2 n.1), nearly *five* years before BNY became Trustee.  (Hans Aff., Exs. B and C.)   Plaintiff alleges that it purchased the Securities in January and February 2004 -- nearly *three* years before BNY became Trustee.  (SAC ¶ 28.)   Therefore, BNY could not possibly have been involved in any wrongdoing or uttered any misrepresentation that allegedly caused Plaintiff to purchase the Securities.

Similarly, Plaintiff cannot credibly allege that it relied on misrepresentations by BNY or that BNY participated in a civil conspiracy because BNY had no involvement during the relevant times alleged in the Second Amended Complaint.   This temporal impossibility necessarily eviscerates Plaintiff's direct claims of breach of fiduciary duty and civil conspiracy against BNY.  See, e.g., Magluta v. Samples, 256 F.3d 1282, 1284 (11th Cir. 2001) (condemning complaints that are "replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the [] defendants [and] geographic and temporal realities make plain that all of

the defendants could not have participated in every act complained of."); <u>see</u> <u>also</u> <u>Wagner v.</u> <u>First Horizon Pharm. Corp.,</u> 464 F.3d 1273, 1279 (11th Cir. 2006).

**B.    <u>Plaintiff has Failed to Allege Any Basis to Impose</u>**
**<u>Liability for the Torts and Breaches of a Predecessor Trustee</u>**

Plaintiff fails to allege any basis, nor can it, to impose successor liability on BNY.  As set forth (at page 4) above, Bank One merged with JP Morgan Chase in 2004.  It was not until BNY purchased the assets of JP Morgan's trust business in the fall of 2006 that BNY became Trustee. (Hans Aff., Ex. B.)  In an asset purchase, where one company sells or otherwise transfers its assets to another, the latter does not, as a matter of law, assume the liabilities of the prior business.  <u>See</u>, <u>e.g.</u>, <u>Colon v. Multi-Pak Corp.,</u> 477 F. Supp. 2d 620, 626 (S.D.N.Y. 2007) (citation omitted) ("In general, under New York law, a corporation that acquires the assets is not liable for the torts of its predecessor"); <u>Bernard v. Kee Mfg. Co.,</u> 409 So. 2d 1047, 1049 (Fla. 1982) (restating the "traditional corporate law rule" that courts will not impose the liabilities of the selling predecessor upon the buying successor company unless the successor expressly or impliedly assumes obligations of the predecessor).  Plaintiff does not allege any cognizable basis to impose on BNY liability springing from the purported conduct of a predecessor trustee.

**C.    <u>Contract Claims Cloaked as Tort/Fraud Claims Should be Dismissed</u>**

Under New York law, claims sounding in tort and fraud -- here, breach of fiduciary duty and civil conspiracy -- should be dismissed when they do not state an independent basis for the tort or fraud outside of the parties' contractual relationship.  "It is well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated.  This legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract."  <u>Clark-Fitzpatrick, Inc. v. Long Island R.R.,</u> 516 N.E.2d 190 (N.Y. 1987) (citations omitted); <u>Niagara Mohawk Power Corp. v. Stone & Webster</u>

Eng'g Corp., 725 F. Supp. 656, 662-63 n.3, 666 (N.D.N.Y. 1989) (citations omitted) (dismissing plaintiff's tort claims where parties' relationship largely governed by contract on the grounds that "[t]he mere fact that the alleged breach involved a contract that encompassed the performance of services does not suffice as special additional allegations of wrongdoing which amount to 'a breach of a duty distinct from, or in addition to, the breach of a contract.'"); Page Mill Asset Mgmt. v. Credit Suisse First Boston, No. 98 Civ. 6907 (MBM), 2000 WL 335557, at *9 (S.D.N.Y. Mar. 30, 2000) (dismissing claim of unjust enrichment where events forming basis "arise out of the same subject matter as the indenture").[6]

### III.

#### PLAINTIFF HAS FAILED TO MEET CONDITIONS PRECEDENT FOR BRINGING THIS ACTION AND SO THE SECOND AMENDED COMPLAINT MUST BE DISMISSED

As with Plaintiff's earlier pleadings, the Second Amended Complaint fails to establish that the Plaintiff has met the conditions precedent for commencing this action. As a threshold, the PSA bars Certificateholders, such as Plaintiff, from instituting a lawsuit or bringing any action in law or equity with respect to the PSA unless all of the following conditions precedent are met:

- "[S]uch Holder previously shall have given to the Trustee a written notice of an Event of Default and of the continuance thereof" and

---

[6]     Akin to New York's requirement for showing an independent duty, Florida follows the "economic loss rule." The economic loss rule is "grounded on the basic difference between contract law -- which protects expectations -- and tort law -- which is determined by the duty owed by all persons to others in society." Casa Clara Condo. Ass'n v. Charley Toppino & Sons, 620 So. 2d 1244, 1246 (Fla. 1993) (noting that "economic losses are 'disappointed economic expectations,' which are protected by contract, rather than tort law"). In order for a plaintiff to recover in tort, "there must be a showing of harm above and beyond disappointed expectations" related to the existing contractual relationship of the parties. Id. Consequently, when the alleged duty breached is derived from the contractual relationship, it cannot form the basis for a separate and distinct tort. Interstate Sec. Corp. v. Hayes Corp., 920 F.2d 769, 775 (11th Cir. 1991); see also McCutcheon v. Kidder, Peabody & Co., Inc., 938 F. Supp. 820, 824 (S.D. Fla. 1996); Clayton v. State Farm Mut. Auto. Ins. Co., 729 So. 2d 1012, 1014 (Fla. 3d Dist. Ct. App. 1999).

- "[T]he Holders of Certificates evidencing not less than 25% of the Voting Rights evidenced by the Certificates shall also have made written request upon the Trustee to institute such action, suit or proceeding in its own name as Trustee hereunder and shall have offered the Trustee such reasonable indemnity as it may require against the costs, expenses, and liabilities to be incurred therein or thereby" and

- "[T]he Trustee, for 60 days after its receipt of such notice, request or offer of indemnity, shall have neglected or refused to institute any such action, suit or proceeding" and

- "[I]t being expressly covenanted by each Certificateholder with every other Certificateholder and the Trustee, that no one or more Holders of Certificates shall have any right in any manner whatever by virtue or by availing itself or themselves of any provisions of this Agreement to . . . enforce any right under this Agreement, except in the manner herein provided and for the common benefit of all Certificateholders . . . ."

(Hans Aff., Ex. D, at § 11.07.)

Plaintiff once again has failed to plead that it has given the Trustee written notice of any Event of Default. Indeed, no Event of Default is even alleged to have occurred. Importantly, Plaintiff also fails to plead that Certificateholders holding 25% of the Voting Rights have made any request upon the Trustee or given the Trustee 60 days to commence an action or otherwise offered to hold the Trustee harmless. No such demand has been made and indeed Plaintiff *admits* that it has not done so and that it does not represent 25% of the Voting Rights. (SAC ¶ 150.) Absent such notice and absent an unsuccessful demand coming from those holding 25% of the Certificate Voting Rights, Plaintiff may not commence this action. This is not and cannot be satisfied by a conclusory allegation of impossibility, because even if Plaintiff could demonstrate that it would have been "impossible" or "futile" to demand BNY assert a claim against itself, this does not excuse Plaintiff's failure to gather Certificateholders representing 25% of the outstanding notes to assert its claims. Indeed, Plaintiff has not even alleged that it attempted to garner such support. This Court should not permit individual Certificateholders, like the Plaintiff, to commence litigation in direct contravention of the PSA.

10

The Plaintiff has therefore failed even to meet the conditions precedent for bringing an action, and accordingly, the Second Amended Complaint must be dismissed in its entirety.

### IV.

### THE SECOND AMENDED COMPLAINT MUST BE DISMISSED AS PLAINTIFF HAS FAILED TO ALLEGE THAT BNY BREACHED ANY OBLIGATION UNDER THE PSA

Counts XIV, XV and XVI necessarily fail to state a cause of action for breach of contract or breach of fiduciary duty as against BNY.

### A.    The PSA Alone Defines the Trustee's Duties and Obligations

The PSA represents what is commonly known as a trust indenture, creating a trust to hold the assets that back or act as collateral for certain certificates sold to investors. The Trustee, also known as an indenture trustee, is charged under the PSA with specific and limited *contractual* duties prior to an Event of Default. An indenture trustee's limited duties prior to an Event of Default are well-established in a long line of case law, the most recent being the aforementioned Raymond James & Associates v. The Bank of New York Trust Co., No. 07-CV-239-T-27TBM, 2008 WL 186590 (M.D. Fla. Jan 18, 2008).

In Raymond James & Associates, the plaintiff purchased from the corporate debtor "pass-through" debt securities secured by certain assets (corporate debt) held in trust. 2008 WL 186590 at *1. The defendant had, through mergers and acquisitions, succeeded to the position of indenture trustee. Id.

Judge Whittemore dismissed the claim that the defendant successor trustee had breached its fiduciary duty by noting that the indenture "explicitly" defined the parameters of defendant's duty to provide notice, which did not include the plaintiff, who was not a "registered holder" entitled to notice under the indenture. Id. at *4. As here, the indenture at issue in Raymond James & Associates contained a provision dictating that "'the Trustee undertakes to perform

11

such duties and only such duties as are specifically set forth in this Indenture, and no implied covenant or obligation shall be read into this Indenture against the Trustee . . . .'" <u>Id.</u> at *3 (quoting the indenture).[7]

Consequently, Judge Whittemore concluded that the defendant could not be held to any duty outside the four corners of the indenture document. "An indenture trustee," he determined, "is not subject to the ordinary trustee's duty of undivided loyalty. Unlike the ordinary trustee, who has historic common-law duties imposed beyond those in the trust agreement, *an indenture trustee is more like a stakeholder whose duties and obligations are exclusively defined by the terms of the indenture agreement*." <u>Id.</u> at *3. (emphasis added); <u>Elliot Assocs. v. J. Henry Schroder Bank & Trust Co.</u>, 838 F.2d 66, 71 (2d Cir. 1988) (finding that "under state common law [] the duties of an indenture trustee are strictly defined and limited to the terms of the indenture"); <u>see</u> <u>also</u> <u>Meckel v. Cont'l Res. Co.</u>, 758 F.2d 811, 816 (2d Cir. 1985) (citing  15 U.S.C. § 77ooo(a)(1), an "indenture…may provide that… the indenture trustee shall not be liable except for the performance of such duties as are specifically set out in such indenture"); <u>Magten Asset Mgmt. Corp. v. The Bank of N.Y.</u>, No. 600410/10, 2007 WL 1326795, at *6 (Sup. Ct. N.Y. County May 8, 2007) (the indenture trustee's obligations are defined by the indenture rather than the common law of trusts).

New York's highest court just this week reaffirmed these limitations of an indenture trustee's liability.  In <u>AG Capital Funding Partners, L.P. v. State Street Bank and Trust Co.</u>, the Court confirmed the distinction between an ordinary trustee and the indenture trustee, the latter's status being "'more that of a stakeholder than one of a trustee.'"  2008 WL 2510628 (quoting

---

[7]     Notably, in <u>Raymond James & Associates</u>, the Court agreed with the defendant that the indenture was central to the plaintiff's claims and should be considered in assessing whether the complaint stated a cause of action, without converting the motion to dismiss into a summary judgment motion.  2008 WL 186590, at * 3.

<u>Hazzard v. Chase Nat'l Bank of City of N.Y.</u>, 159 Misc. 57, 83-84, (1936), <u>aff'd</u>, 257 A.D. 950 (1st Dep't 1939), <u>aff'd</u> 282 N.Y. 652 (1940)).  While the indenture trustee owes a duty to perform its ministerial duties with due care, the Court held this does <u>not</u> imply or otherwise "give[] rise to <u>fiduciary</u> duties"  in advance of an Event of Default.  <u>AG Capital Funding Partners</u>, 2008 WL 2510628 (emphasis in original).

The language of the PSA mirrors that found in <u>Raymond James & Associates</u>, providing that "prior to the occurrence of an Event of Default . . . the duties and obligations of the Trustee shall be determined *solely* by the express provisions of this Agreement, the Trustee shall not be liable except for the performance of such duties and obligations as are *specifically* set forth in this Agreement, no implied covenants or obligations shall be read into this Agreement against the Trustee . . . ."  (Hans Aff., Ex. D, PSA, at § 9.01(a) (emphasis added).)  As such, one may look only to the provisions of the PSA to determine what the Trustee is and was required to do, how it was to act and what liabilities it may incur.

**B.    <u>Plaintiff's Factual Allegations Fail to Constitute a Cognizable Claim<br/>for Breach of Contract and so Counts XIV-XV Must be Dismissed</u>**

It is well-settled that where an agreement sets forth "an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises," that event is a condition precedent that must be strictly enforced before any associated obligation may arise.  <u>Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.</u>, 660 N.E.2d 415 (N.Y. 1995) (citing RESTATEMENT [SECOND] OF CONTRACTS § 224 (1981)); <u>In re Harrell</u>, 351 B.R. 221, 242 (M.D. Fla. 2006) ("Under Florida law, if a contract contains a condition precedent, obligations under the contract do not mature until after the condition precedent has occurred.").  Nowhere is that maxim more binding than in the indenture trustee context, where absent such strict compliance with the terms of the indenture, there can be no

13

duty to perform, and an action premised on the failure to perform will be dismissed. <u>See</u>, <u>e.g.</u>, <u>Elliot Assocs.</u>, 838 F.2d at 71 ("[S]o long as the [indenture] trustee fulfills its obligations under the express terms of the indenture, it owes the debenture holders no additional, implicit pre-default duties or obligations except to avoid conflict of interest.").

Here, the obligation of the Trustee is set forth in Section 4.04 of the PSA, entitled "Monthly Statement to the Certificateholders," as follows:

> Trustee shall prepare and cause to be made available to each Certificateholder . . . a statement setting forth . . . the number and principal amount of claims submitted and claims paid under the TGIC Policy during the proceeding month and the number and principal amounts of claims submitted and claims paid under the TGIC Policy. . . .
>
> *The Trustee's responsibility for disbursing the above information to the Certificateholders is limited to the availability, timeliness and accuracy of the information derived from each Servicer ...*
>
> *The Trustee may fully rely upon and shall have no liability with respect to information provided by any Servicer.*

(Hans Aff., Ex. D, at § 4.04(a)(xiv)) (emphasis added).

Section 4.04 *explicitly limits* the Trustee's duty to acquire and report only that information it *receives*. (Hans Aff., Ex. D, at § 4.04(a).) "The Trustee's responsibility for disbursing the above information to the Certificateholders is limited to . . . the information derived from each Servicer . . . ." (Hans Aff., Ex. D, PSA at § 4.04(a)(xiv).) Section 4.04 further provides that the Trustee has no duty to recompute, recalculate or verify the accuracy of any resolution, certificate, statement, opinion, report, document, order or other instrument so furnished to the Trustee." (<u>Id</u>.) Indeed, the Trustee's sole duty upon the receipt of a report is to examine the report and determine whether it conforms to the requirements of the PSA. (Hans Aff., Ex. D, at § 9.01.)

Courts have uniformly dismissed actions that allege facts analogous to those at bar. For example, in <u>Lorenz v. CSX Corp.</u>, 1 F.3d 1406 (3d Cir. 1993) (applying New York law),

plaintiff-debentureholders brought an action against an indenture trustee for breach of the implied covenant of good faith and fair dealing, arising from the indenture trustee's failure to inform them of, among other things, letter agreements between the trustee and a third party. Id. at 1414. The Lorenz court conceded that it would have been advantageous for the debentureholders to have been informed of the letter agreements, as it would have informed them of potential violations of securities laws that directly impacted their investment. Nevertheless, the Third Circuit upheld the district court's dismissal of the plaintiff's claims, holding that "so long as an indenture trustee fulfills its obligations under the express terms of the indenture, it owes the debentureholders no additional, implicit duties or obligations, except to avoid conflicts of interest." Id. at 1416 (citing Elliot Assocs., 838 F.2d at 71.)

Similarly, in Williams v. Continental Stock Transfer & Trust Co., 1 F. Supp. 2d 839 (N.D. Ill. 1998), the purchaser of collateralized mortgage debentures brought suit against the indenture trustee for breach of contract and breach of fiduciary duty. The plaintiff alleged that the trustee breached its duties by failing to inspect certain documents prior to the closing of the bond sale and to ensure that valid title to the mortgage loans was transferred at the closing. Id. at 840. As here, the plaintiff attempted to rely on a provision of the indenture that, in relevant part, provided:

> [o]n or before the Start-Up Date and as a condition to the obligations of the Servicer and the Trustee under this Agreement, the [issuer] shall deliver documents … to the Trustee, which shall be in form and substance satisfactory to the Trustee.

Id. Dismissing the claims for breach of contract and breach of fiduciary duty, the Court rejected plaintiff's attempt to "impose liability on the [indenture trustee] for failing to obtain documents whose delivery was a precondition to the [trustee] having any obligation . . . ." Id. at 841. The Court added that the indenture trustee had no obligations until the issuer delivered the

documents, and it "turns the language completely around to argue, as the [plaintiff] does, that the section imposes obligations on [the indenture trustee] as opposed to the [issuer]." Id. at 840-41. Critical to the Court's decision was its determination that the plaintiff's effort to impute liability to the indenture trustee was simply "an attempt to evade well-settled New York law concerning the limited nature of an indenture trustee's fiduciary duties." Id. at 841 (citing Elliot Assocs., 838 F.2d at 71).

It is important to note that this District subscribes to the "plain meaning" rule of contract interpretation. Fla. Mun. Power Agency v. Fla. Power & Light Co., 81 F. Supp. 2d 1313, 1329 (M.D. Fla. 1999). Under this rule, where "the terms are clear and unambiguous, the court should interpret the agreement in accordance with its plain meaning." Id. The plain and unambiguous meaning of the provision is that the Trustee must disburse that information it receives or obtains from the Servicer -- no more, no less.[8] To read any additional obligation into that provision finds no home in its plain language or in any other language of the PSA.

The Second Amended Complaint fails to acknowledge this limitation on the Trustee's liability and baldly maintains that BNY breached Section 4.04 of the PSA. But where, as here, "the express language of the Indenture forecloses recovery as a matter of law, dismissal is appropriate." Raymond James & Assocs., 2008 WL 186590, at *4-5. The Raymond James & Associates court, taking note of several provisions nearly identical to those found in the present PSA, dismissed the complaint, remarking that plaintiff's "conclusory allegations . . . are contradicted by the plain language of the Indenture.")

---

[8]     Importantly, contrary to Plaintiff's assertion, the Trustee is under no obligation to question whether the information received from the Servicer is complete or accurate. See Hans Aff., Ex. D, PSA at §§ 4.04(a), 9.01 & 9.01(a).

In sum, the Trustee may rely on the information it has received from the Servicer and need not independently confirm the information it has received.  With that in mind, claims of breach of contract necessarily fail. The Second Amended Complaint itself alleges that the Servicer "fail[ed] to supply the Trustee with complete and accurate information regarding the mortgage loans constituting the pool . . ." (SAC ¶ 121.)  So too, in its original complaint filed in this action, Plaintiff maintained that BNY informed the Certificateholders in its Monthly Report that it never received the insurance claim information.[9]   (Complaint ¶ 52.)   If the information presented to the Trustee is in the proper form, and there is no allegation that it was not, Plaintiff may not be heard to complain that the Trustee presented the information as received and in accordance with its obligations under the PSA.

> (i)      The PSA Insulates BNY from Liability for Information
>          Received From Other Sources and Delivered to Third Parties

In this same vein, the indenture may expressly limit the obligations and liability of the indenture trustee for information produced to bondholders (or any third party), and courts uniformly have upheld such limitations.   See, e.g., N.Y. Med. Care Facilities Fin. Agency v. Bank of Tokyo Trust Co., 163 Misc. 2d 551, 557 (Sup. Ct. N.Y. County 1994) (citing Dubovsky & Sons, Inc. v. Honeywell, Inc., 89 A.D.2d 993, 994-95 (2d Dep't 1982) (noting that with respect to an indenture "it has been consistently held that exculpatory clauses . . . intended to insulate                                                                                     one

---

[9]      Tellingly, the Plaintiff removed any reference to the "Monthly Reports" in its Amended and Second Amended Complaints.  Nevertheless, the Court may take judicial notice of information that has been publicly filed, including prior court pleadings, without converting the Rule 12(b)(6) motion into a motion for summary judgment.  See, e.g., Smith v. Brevard County, 461 F. Supp. 2d 1243, 1248 (M.D. Fla. 2006) (finding that with respect to a motion to dismiss "the Court is permitted to take judicial notice of the allegations made in Plaintiff's earlier Complaint, and need not accept internally inconsistent factual allegations") (citing Cash Inn of Dade, Inc. v. Metro. Dade County, 938 F.2d 1239, 1243 (11th Cir. 1991)).

. . . from liability . . . will be enforced . . . .")); <u>see</u> <u>also</u> <u>Harris Trust and Sav. Bank v. E-II</u>

<u>Holdings, Inc.</u>, 722 F. Supp. 429, 443 (N.D. Ill. 1989), <u>aff'd</u>, 926 F.2d 636 (7th Cir. 1991).

 Here, the PSA provides that "[t]he Trustee makes no representations as to the validity or

sufficiency of this Agreement, the Certificates or of any Mortgage Loan or related document."

(Hans Aff., Ex. D, at § 9.03.)  Moreover, the PSA limits the Trustee's obligations and liability as

to that information which it has received and must deliver to any party.  Specifically, Section

9.02 of the PSA ("Certain Matters Affecting the Trustee") provides that:

> i. the Trustee may request and rely upon and shall be protected in acting or refraining from acting upon any resolution, Officer's certificate, certificate of auditors, Servicing Officers or any other certificate, statement, instrument, opinion, report, notice, request, consent, order, appraisal, bond or other paper or document believed by it to be genuine and to have been signed or presented by the proper party or parties . . . believed by it to be genuine . . . ;
>
> ii. prior to the occurrence of an Event of Default . . . , the Trustee shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, approval, bond or other paper or document . . . .

(Hans Aff., Ex. D, at § 9.02.)

 Accordingly, there is no obligation on the Trustee to conduct an independent investi-

gation or verification of the information it receives from any source, including the Seller,

Servicer, or Depositor.  As a result, Count XV of the Second Amended Complaint as and against

BNY should be dismissed in its entirety.

 (ii) Count XIV (Information to Rating Agencies) Fails
   <u>to State a Cause of Action for Breach of Contract</u>

 Count XIV, entitled "Breach of Contract Against [BNY] (Information to Ratings

Agencies)" utterly fails to state a claim.  Citing Section 11.05 of the PSA and referring to those

allegations found in paragraphs 1-36 of the Second Amended Complaint, the Plaintiff contends

that BNY breached its obligation under the PSA to notify the Ratings Agencies of certain information. Specifically, the Plaintiff contends that BNY failed to notify the rating agency, Moody's, and the Certificateholders that there were numerous loan deficiencies and defaults in the pool, that SPS had not enforced the rights against the Seller and that the insurer had declined to cover many of the mortgages.   Had this information been provided, Plaintiff maintains, Moody's would have downgraded its rating on the certificates earlier.  (SAC ¶¶ 27-30; 33.) Plaintiff alleges that, but for BNY's failure to act in the interests of the Certificateholders and properly perform its obligations as Trustee, Plaintiff would not have purchased the Securities. (SAC ¶¶ 147-49.)

But Section 11.05 of the PSA provides only that BNY must notify the rating agencies in writing "(a) of any substitution of any Mortgage Loan; (b) any payment or draw on any insurance policy applicable to the Mortgage Loans; (c) of the final payment of any amount owing to a Class of Certificates; (d) any Event of Default under this Agreement; and (e) in the event any Mortgage Loan is repurchased in accordance with this Agreement."  (Hans Aff., Ex. D, at § 11.05.)  The Second Amended Complaint, as with the prior complaints, is utterly devoid of any specific allegation that BNY failed to notify the rating agencies of any such occurrence. Indeed, no such incident is even alleged to have occurred.  Instead, again Plaintiff merely sets forth a conclusory statement that "[BNY] breached its obligation to provide Rating Agencies, in writing, notice of the required events under § 11.05 of the Pooling and Service Agreement." (SAC ¶ 133.)  Plaintiff suggests in earlier paragraphs of the Second Amended Complaint that BNY failed to notify the Ratings Agencies of loan delinquencies or alleged failures to enforce rights under the loans or insurance policies.  (SAC ¶¶ 27-30.)  But, once again, the Trustee is not

obligated under the PSA to inform ratings agencies of such and no such obligation may be implied.

Central to Plaintiff's claim is its contention that the Ratings Agencies would have downgraded the bonds earlier had they known of the purported delinquencies in the pool; and, had the Ratings Agencies downgraded sooner, Plaintiff would not have purchased the Certificates in the first instance or would have sold sooner.  (See SAC ¶¶ 32-35.)  Curiously, by Plaintiff's own admission, Moody's began to downgrade the bonds as early as January 2005. By October 2006, at or about the time BNY became Trustee, Moody's had downgraded the I-B-2 Certificates no less than *six* times to what then was a "Caa1" rating.  Likewise, the I-B-3 Certificates were downgraded three times by September 2005 (a full year before BNY became Trustee) down to a "Ca" rating.  The very downgrades which Plaintiff claims would have protected its interests, therefore, had occurred *well before* BNY ever became Trustee.  (SAC ¶ 32 n.6.)  With the precipitous fall in the ratings of the Certificates over an eighteen month period, Plaintiff may not now complain that BNY did not do enough to inform Moody's of the state of the pool.

**C.     Plaintiff has Failed to Plead the Existence of any Fiduciary Duty and Thus Count XVI Fails as a Matter of Law**

    (i)     The Trustee Owes No Duty to Certificateholders
           Other Than Those Specified in the PSA

In order to sustain its claim for breach of fiduciary duty, a plaintiff must first show that a fiduciary duty exists between him and the defendant.[10]  Am. Honda Motor Co. v. Motorcycle

---

[10]     As an initial matter, Plaintiff's claim for breach of fiduciary duty is barred by New York's Martin Act (the "Martin Act").  N.Y. GEN. BUS. LAW Art. 23-A § 352 *et seq.*  Federal courts in diverse jurisdictions have held that the Martin Act bars private claims of breach of fiduciary duty arising out of the sale of securities.  See Renovich v. Stewardship Concepts, Inc., No. 84-C-7727, 1989 WL 56197, at *5 (N.D. Ill. May 15, 1989) (citations omitted) ("[S]ince 1987 New York courts have held that the Martin Act does not provide a private cause of action for securities fraud … [a]ccordingly, summary judgment …

Info. Network, Inc., 390 F. Supp. 2d 1170, 1179 (M.D. Fla. 2005) (citations omitted) ("To state a claim for breach of fiduciary or confidential relationship, 'a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party.'"); see also Radin v. Albert Einstein Coll. of Med. of Yeshiva Univ., No. 04 CV 704 (RPP), 2005 WL 1214281, at *14, nn.24-25 (S.D.N.Y. May 20, 2005) (applying New York law).  But the Trustee under the PSA owes no duty, fiduciary or otherwise, beyond that which it is contractually bound to perform under the PSA.  This is precisely what Judge Whittemore held in Raymond James & Associates, 2008 WL 18590, at *4, and what New York's highest court held this week in AG Capital Funding Partners.

Judge Whittemore's ruling in dismissing plaintiff's breach of fiduciary duty claim in Raymond James & Associates is entirely consistent with law both in and out of New York.  The Second Circuit Court of Appeals, cited by Judge Whittemore in his decision, found that under New York law the duties of indenture trustees "are exclusively defined by the terms of the indenture agreement."  Elliot Assocs., 838 F.2d at 71.  The New York Court of Appeals echoed and cited the Second Circuit's holding in Elliott Associates in its decision this week in the AG Capital Funding Partners case.  2008 WL 2510628.

Jurisdictions outside of New York have followed the same rationale, among them Pennsylvania, see Lorenz, 1 F.3d at 1415 ("The courts of New York consistently have held that the duties of an indenture trustee, unlike those of a typical trustee, are defined exclusively by the terms of the indenture.") and Illinois, see Williams, 1 F. Supp. 2d at 841 (citations omitted) ("Although an informal fiduciary relationship can arise under New York law by the repose of

is granted on the Martin Act claims); see also Nairobi Holdings Ltd. v. Brown Bros. Harriman & Co., No. 02 Civ. 1230 (LMM), 2002 WL 31027550, at *10 (S.D.N.Y. Sept. 10, 2002) (citations omitted) ("Plaintiff's . . . breach of fiduciary duty claims are precluded by New York's version of the blue sky laws, the Martin Act . . . and should be dismissed.")

trust and confidence in another party, to allow such an informal fiduciary relationship in the indenture trustee context would swallow the limitation on an indenture trustee's fiduciary duties prior to default.").

An indenture trustee such as BNY cannot be held to a standard or duty not otherwise imposed or implied by law – indeed, in this case, one which the law has flatly dismissed -- without unbalancing the "significant economic considerations" recognized by every other court, state legislature and Congress when limiting the role and liabilities of indenture trustees. Raymond James & Assocs. at *3 (citing 15 U.S.C. § 77ooo(a)(1)).[11]

      (ii)      BNY Had No Implied Duty Outside of the PSA

Failing to allege that BNY breached any pre-default obligation, the Plaintiff proposes, incredibly, that the Trustee had a duty to warn and thereby prevent Plaintiff from investing in the Certificates. In other words, according to Plaintiff, the Trustee -- because it allegedly "knew or should have known" of alleged delinquencies or misrepresentations regarding the mortgage loans included in the trust -- had an implied fiduciary obligation to an unidentified future third-party purchaser in the secondary market to obstruct the original sale of the Certificates. Plaintiff's claims are unsustainable. [12]

---

[11]     Importantly, where, as here, the standard of potential liability for a vast industry is at stake, a court must exercise greater scrutiny of the complaint in order to avoid the risk of abusive litigation. See Twombly, 127 S. Ct. at 1973 n.14 ("[o]n certain subjects understood to raise a high risk of abusive litigation, a plaintiff must state factual allegations with greater particularity than Rule 8 requires"). Indenture trustees operate on the understanding that their roles and obligations are limited and they price that role and the associated risks accordingly. See Sander v. Alexander Richardson Invs., 334 F.3d 712, 717 (8th Cir. 2003) (citations omitted) ("businessmen can bargain over which party is to bear the risk of damage and set the price accordingly . . . ."); The American Bankers Association, Corporate Trust Committee, The Trustee's Role in Asset-Backed Securities 4 (2003), http://www.aba.com/NR/rdonlyres/B1449D99-DEC6-4A5D-AFA5-3DDF8C9CC179/29968/TRUSTEES999997.doc ("Trustees are usually named late in the preparation of a transaction . . . and are paid relatively small fees to act as trustees in transactions involving large sums of money.")

[12]     This claim fails also because, as has already been established, BNY was not the trustee at the time the loans were included in the pool and the certificates were first offered, nor was it the trustee when the

Plaintiff may not impose an implied obligation on BNY to ensure the sufficiency, or non-delinquency, of each and every loan included in the pool. Courts have universally rejected implied pre-default duties or, for that matter, any implied duty to warn future purchasers. <u>See</u> <u>Dresner Co. Profit Sharing Plan v. First Fid. Bank, N.A.</u>, No. 95-CV-1924, 1996 WL 694345 (S.D.N.Y. Dec. 4, 1996). <u>Dresner</u> is on all fours. There, the plaintiff-bondholders alleged that the indenture trustees "knew or should have known that the [issuer's] financial condition was deteriorating rapidly and that the value of the collateral was likewise declining." <u>Id</u>. at *4. The indenture provided that the indenture trustees were required "to examine certain evidence, reports and documents." <u>Id</u>. at *5. Given the trustee's alleged knowledge of the issuer's financial condition and the express requirement to examine certain evidence, the bondholders argued that the trustees should have taken further "steps either to inquire as to the location and condition of the Collateral or to take advantage of their rights to inspect [the issuer's] books and records relating to the Collateral." <u>Id</u>. at *5 (citations omitted). In short, as here, the plaintiffs were alleging the indenture trustees had an implied duty to protect the bondholders' investment above and beyond the express terms of the indenture.

The <u>Dresner</u> court rejected the bondholders' argument out of hand, and granted the trustees' motion to dismiss. There, as here, the plaintiff did not "cite any express, non-discretionary duty under the indenture which the trustees failed to satisfy," and thus the Court flatly refused to find an implied pre-default obligation on the indenture trustees to act on information that was arguably just as accessible to the bondholders. <u>Id</u>. at *5; <u>see also</u> <u>Lorenz</u>, 1 F.3d at 1415 ("Unless the indenture trustee has deprived debentureholders of a right or benefit specifically provided to them in the indenture, there is no implied covenant of good faith and fair

---

Plaintiff purchased its Certificates. Plaintiff's claim is no less deficient for its failure to specify what loans it claims to have been delinquent at the time of its purchase.

dealing") (citing <u>Broad v. Rockwell Int'l Corp.</u>, 642 F.2d 929, 957-58 (5th Cir.) (en banc) (applying New York law)); <u>Metro. Life Ins. Co. v. RJR Nabisco, Inc.</u>, 716 F. Supp. 1504, 1517-22 (S.D.N.Y. 1989) (finding no breach of implied covenant under New York law where corporation's incurrence of debt to fund leveraged buyout depleted the value of its debentures, as the indenture lacked any terms prohibiting the transaction).

## V.

### <u>THE PLAINTIFF'S CIVIL CONSPIRACY CLAIM REMAINS UNTENABLE AS AGAINST BNY</u>

As with its earlier iterations, Plaintiff's civil conspiracy claim is untenable against BNY, as BNY would have had to have participated in the alleged conspiracy prior to Plaintiff's purchase of the Securities, years before BNY had any connection with the Securities.  To establish a claim of civil conspiracy, Plaintiff must demonstrate the following four elements: "(1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury." <u>Fisk v. Letterman</u>, 424 F. Supp. 2d 670, 677 (S.D.N.Y. 2006) (citation omitted).[13]

In support of its civil conspiracy claim against BNY, Plaintiff asserts that "[BNY], as Trustee, intentionally withheld crucial information from purchasers, such as BANKERS, which would have disclosed the true risks associated with ownership of the Certificates and the actions of the co-defendants." (SAC ¶ 159.)  This lone assertion fails to assert a claim for civil conspiracy against BNY on three fronts:  (1) as set forth <u>supra</u>, BNY was not the Trustee at the

---

[13]    The elements for civil conspiracy are similar under Florida law.  <u>See</u> <u>Walters v. Blankenship</u>, 931 So. 2d 137, 140 (Fla. 5th Dist. Ct. App. 2006)  (noting that the elements to sustain a cause of action for civil conspiracy are:  (i) a conspiracy between two or more parties, (ii) to do an unlawful act or to do some overt act in pursuance of the conspiracy, (iii) the doing of some overt act in pursuance of the conspiracy, and (iv) damage to plaintiff as a result of the acts performed pursuant to the conspiracy) (citations omitted).  The overt act or acts must be tortious or unlawful acts.  <u>Id</u>.

time that the Certificates were purchased, so it was impossible for BNY to act at all, let alone unlawfully or tortiously; (2) Plaintiff fails to allege what information was withheld, and mere conclusory statements standing alone will not suffice; and (3) Plaintiff fails to plead facts in support of any form of conspiracy between BNY and another defendant.

As a result, the claim for civil conspiracy against BNY fails as a matter of law and Count XVII as and against BNY should be dismissed.

## CONCLUSION

For all the foregoing reasons, BNY respectfully requests that the Court grant its motion to dismiss the Second Amended Complaint as against BNY in its entirety and with prejudice.

Dated: New York, New York
      June 27, 2008

THE BANK OF NEW YORK

By:  s/ Richard F. Hans

Edmund S. Whitson
    E-mail:  edmund.whitson@akerman.com

Richard F. Hans (admitted *pro hac vice*)
    E-mail:  rhans@tpw.com
John P. Doherty (admitted *pro hac vice*)
    E-mail:  jdoherty@tpw.com
Andrew B. Zinman (admitted *pro hac vice*)
    E-mail:  azinman@tpw.com

AKERMAN SENTERFITT
SunTrust Financial Centre
401 E. Jackson Street, Suite 1700
Tampa, FL 33602-5250
Telephone:  (813) 223-7333
Fax: (813) 223-2837

THACHER PROFFITT & WOOD LLP
Two World Financial Center
New York, NY  10281
Telephone:  (212) 912-7400
Fax:  (212) 912-7751

*Attorneys for The Bank of New York*

25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 27, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

**<u>The Hodkin Kopelowitz Ostrow Firm, P.A.</u>:**

hodkin@thkolaw.com
kopelowitz@tkolaw.com
jones@thkolaw.com
streisfeld@tkolaw.com

**<u>Ledbetter & Associates, PA</u>:**

dledbetter@dlsecuritieslaw.com

**<u>Murray, Marin & Herman, P.A.</u>:**

jmurray@mmhlaw.com
cdoran@mmhlaw.com

**<u>Gunster Yoakley & Stewart, P.A.</u>:**

jmariani@gunster.com

**<u>McKee Nelson LLP</u>:**

coloughlin@mckeenelson.com
jqsmith@mckeenelson.com
seckas@mckeenelson.com

**<u>Locke Lord Bissell & Liddell, LLP</u>:**

sfleischmann@lordbissell.com
tcunningham@lordbissell.com
docket@lordbissell.com,

/s/ Richard F. Hans
Richard F. Hans