UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

BANKERS LIFE INSURANCE COMPANY,

    Plaintiff,

vs.

CREDIT SUISSE FIRST BOSTON CORPORATION, also known as Credit Suisse Securities (USA) LLC, CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORP., DLJ MORTGAGE CAPITAL, INC., TRIAD GUARANTY INSURANCE CORPORATION, SELECT PORTFOLIO SERVICING, INC. and BANK OF NEW YORK,

    Defendants.

Civil Action No.

8:07-CV-00690-EAK-MSS

## BANKERS LIFE INSURANCE COMPANY'S RESPONSE OPPOSING THE BANK OF NEW YORK'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

Plaintiff Bankers Life Insurance Company ("Bankers") respectfully submits this Response Opposing the Motion of Bank of New York ("BNY") to Dismiss the Second Amended Complaint. As the authorities cited hereinbelow demonstrate, the Defendant's Motion to Dismiss is without merit and must be denied.

### Response to BNY'S Preliminary Statement

This is the third Motion to Dismiss BNY has filed in this action in an effort to convince this Court that it is not liable for the damages Bankers has suffered. As explained in the Second Amended Complaint, BNY participated as a trustee in a complex scheme to purchase mortgage loans and pool them together into groups to create investment revenue for purchasers of certificates representing a piece of the mortgage pool the Defendants created. Unfortunately for the buyers of those certificates, the Defendants represented that the mortgage pools were

Case 8:07-cv-00690-EAK-MAP   Document 111   Filed 07/28/2008   Page 2 of 18

*Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al.*
*Bankers Life Insurance Co.'s Response to Bank of New York's*
*Motion to Dismiss Second Amended Complaint*
*Case No. 8:07-CV-00690-EAK-MSS*

equipped with credit enhancement and comprised of performing mortgage loans that were backed by real property sufficient to provide collateral for the loans. The defendants knew at the time that this was untrue. In fact, the mortgage loans were often undercollateralized, or in default, when the certificates were sold to the investing public, including Bankers. One of the Defendants, Triad Guaranty Insurance Corporation, actually denied insurance coverage for some of the loans in the mortgage pool on the alleged basis (according to Triad) that the loans were procured by "fraud."

Even worse than the packaging of suspect securities for sale is the fact that the Defendants, including BNY, had the ability to prevent the harm to the unwitting investors duped into buying the certificates at issue in this case by accurately reporting on the state of the mortgage loans comprising the pools in question. However, rather than disclosing the declining quality of the collateral they created, the defendants, including BNY, knowingly and intentionally, sat silent while investors like Bankers relied on the Defendants' original issuing statements, and the incorrect information rating agencies like Moody's Rating Service ("Moody's") (also in reliance on the defendants' misinformation) to make decisions to purchase and hold the certificates in question.

BNY again attempts to avoid liability for failing to amend or correct the Prospectus Supplement, on which the certificateholders relied to purchase the certificates, that its predecessor, Bank One, had input in preparing and issuing. Bankers alleges that Bank One should have amended the Prospectus Supplement to reflect that there were delinquent mortgage loans making up the pool collateralizing the certificates. BNY's predecessor was aware that delinquent mortgages were in the pool. These delinquent mortgage loans were present in the

Case 8:07-cv-00690-EAK-MAP   Document 111   Filed 07/28/2008   Page 3 of 18

*Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al.*
*Bankers Life Insurance Co.'s Response to Bank of New York's*
*Motion to Dismiss Second Amended Complaint*
*Case No. 8:07-CV-00690-EAK-MSS*

pool despite a representation in the Prospectus Supplement which provided that there were no mortgage loans that were delinquent more than 30 days. Bank One knew or should have known this representation was false when it was made. Even with this knowledge, Bank One did not issue an amendment to the Prospectus Supplement. Additionally, Bank One failed to pursue remedies available under the PSA to protect Bankers against the adverse effects of the delinquent loans by either providing substitute collateral for the delinquent loans or having the loans repurchased by their original issuer DLJ Mortgage Capital, Inc. ("DLJ").

Before Bankers purchased its certificates, Bank One did not notify Moody's, a source commonly relied on in the industry by investors in making the decision to purchase or not purchase particular securities based on ratings assigned to them, that, among other things, there were numerous loan delinquencies in the pool and that the insurer of the mortgage loans declined to cover many of the mortgage loans in the pool because they had been procured through fraud. Certainly, this would have resulted in a lower Moody's rating than the one Banker's relied on in purchasing the certificates, and Bankers would not have purchased the certificates with that lower rating. Instead, the Moody's downgrade took place <u>after</u> Bankers purchased the certificates in reliance on the false and inaccurate representations in the Prospectus Supplement.

In this, its third Motion to Dismiss, BNY once again attempts to shirk the duties it expressly and impliedly undertook as trustee for the subject certificateholders although it had a special relationship with Bankers that it should have protected, but failed to do so. As this Court has done before, it should deny this Motion to Dismiss because BNY is bound by the terms of the trust indenture as well as legally imposed implied and expressed duties.

Case 8:07-cv-00690-EAK-MAP Document 111 Filed 07/28/2008 Page 4 of 18

*Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al.*
*Bankers Life Insurance Co.'s Response to Bank of New York's*
*Motion to Dismiss Second Amended Complaint*
Case No. 8:07-CV-00690-EAK-MSS

## LEGAL ARGUMENT AND CITATION OF AUTHORITY

### Point I

### STANDARD FOR MOTION TO DISMISS

In reviewing a motion to dismiss, all well-pleaded facts in a plaintiff's complaint and all reasonable inferences drawn from those facts must be taken as true. *Baker v. Carnival Corp.*, No. 06-21527-CIV, 2006 WL 3519093, at *1 (S.D. Fla. December 6, 2006). The federal rules do not require a claimant to set out in detail all the facts upon which the claim is based. *Id.* at *2. All that is required is a short and plain statement of the claim. *Id.* Under the federal notice pleading standard, a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts that support a claim. *See Id.* Additionally, "[i]n considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the averments of the complaint should be construed in the light most favorable to the plaintiff." *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). "Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment." *Crouch v. Mulvihill*, No. 07-0054, 2007 WL 1657187 (D.N.J. June 4, 2007) (*citing Denton v. Hernandez*, 504 U.S. 25 (1992)).

### Point II

### BNY CAN BE HELD LIABLE AS A SUCCESSOR TO BANK ONE FOR BANK ONE'S MISCONDUCT

BNY attempts to avoid liability by claiming that it is impossible for it to be liable to Bankers because BNY was not the trustee at the time the acts alleged in the complaint were committed. This argument is evidently based on the general premise that a corporation that acquires the assets of another corporation is not liable for the torts of its predecessor. Therefore,

Case 8:07-cv-00690-EAK-MAP    Document 111    Filed 07/28/2008    Page 5 of 18

*Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al.*
*Bankers Life Insurance Co.'s Response to Bank of New York's*
*Motion to Dismiss Second Amended Complaint*
Case No. 8:07-CV-00690-EAK-MSS

BNY contends that this action must be dismissed because it should not be held liable for the actions of its predecessor, Bank One, and there is no basis for it to be held liable for Bank One's actions. However, there are exceptions to this premise in four circumstances: (a) the successor expressly or impliedly assumed the predecessor's tort liability; (b) there was a consolidation or merger of the seller and the purchaser; (c) the purchasing corporation was a mere continuation of the selling corporation; or (d) the transaction is entered into fraudulently to escape such obligations. *Heights v. U.S. Elect. Tool Co.*, 525 N.Y.S.2d 653 (N.Y.A.D., 2 Dept. 1998).

Here, BNY makes this argument, but by its attachments to its Motion, it provides no basis demonstrating that under any of the *Heights* factors it should not be held liable as the successor in interest to Bank One. In fact, the exhibits to BNY's motion indicate that there was a merger between Bank One and its successor, JP Morgan Chase & Co., and subsequently between J.P. Morgan Chase & Co. and BNY. Indeed, page 2 of "Exhibit B" specifically states that "effective July 1, 2004, Bank One Corporation . . . merged with and into J.P. Morgan Chase & Co...." Additionally, page 2 of Exhibit C states that "J.P. Morgan sold its corporate trust business to the Bank [of New York] for the net asset value . . .." These documents demonstrate that the Bank One-J.P. Morgan transaction was clearly a merger, and the J.P. Morgan-BNY transaction was continuation of the J.P. Morgan's business. To the extent that this was not the case, BNY has failed to meet its burden to demonstrate that it should not be liable for Bank One's conduct. *See In re: Carver*, 144 B.R. at 643. By purchasing the asset in question (that is, the right to act as trustee for this particular loan portfolio), BNY is responsible for its predecessor trustee's actions for the same portfolio.

Case 8:07-cv-00690-EAK-MAP   Document 111   Filed 07/28/2008   Page 6 of 18

*Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al.*
*Bankers Life Insurance Co.'s Response to Bank of New York's*
*Motion to Dismiss Second Amended Complaint*
*Case No. 8:07-CV-00690-EAK-MSS*

Further, the general premise that a corporation that acquires the assets of another is not liable for the torts of its predecessor is not a basis to dismiss a properly pled action. *Pollack v. Laidlaw*, No. 90 Civ. 5788 (DLC) 1995 WL 261518 at *19 (S.D.N.Y., May 3, 1995). In *Laidlaw*, the defendants sought to dismiss the action against them on the basis that the plaintiffs failed to identify how they succeeded to the liabilities of the predecessor corporations or persons at those corporations. *Id.* However, the court held that the "determination of the successor liability of the *Laidlaw* defendants depends at least in part on the content of the agreements subject to discovery, the motion to dismiss on this ground is denied." *Id.*; *see also Heights*, 525 N.Y.S.2d at 653 (allowing the plaintiff to conduct discovery to show that exceptions applied).

Here, if there are any other documents that provide a basis for relieving BNY of liability for the actions of its predecessors, those documents will have to be provided in discovery. Bankers should not be placed in a position in which it has to go out and seek that information to oppose BNY's motion to dismiss. *FSP, Inc. v. Societe Generale*, No. 02CV4786GBD 2005 WL 475986 (S.D.N.Y. Feb. 28, 2005) (Where a determination as to the veracity of representations is dependent upon information particularly within the possession of the other party, the complaining party is not required to undertake an independent investigation). At this stage in the litigation, BNY may raise its non-liability as an affirmative defense and a decision can be more appropriately made on summary judgment. *See Roll v. Tracor*, 26 F.Supp.2d 482 (W.D.N.Y. 1998).[1]

Therefore, BNY's motion to dismiss on this basis must be denied.

---

[1] If the Court finds that Defendants' argument has merit, the claimed deficiency would be easily cured by amendment.

Case 8:07-cv-00690-EAK-MAP    Document 111    Filed 07/28/2008    Page 7 of 18

*Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al.*
*Bankers Life Insurance Co.'s Response to Bank of New York's*
*Motion to Dismiss Second Amended Complaint*
*Case No. 8:07-CV-00690-EAK-MSS*

### Point III

### BNY BREACHED ITS DUTIES TO BANKERS BECAUSE ITS PRE-DEFAULT CONDUCT CONSTITUTED A CONFLICT OF INTEREST AND WAS IMPROPER CONDUCT ON ITS PART AS TRUSTEE

In its effort to avoid liability for its breach of its fiduciary duty to Bankers, BNY has improperly argued that the only duties it has to the certificateholders are those expressly stated in the PSA. This is incorrect. In New York, a cause of action for breach of fiduciary duty has three elements: (1) breach by a fiduciary of a duty owed to the plaintiff; (2) defendant's knowing participation in the breach; and (3) damages. *Green, et. al. v. Beer, et. al*, No 06- Civ. 4156(KMW) 2007 WL 576089 at *3 (S.D.N.Y. Feb. 22, 2007). The test for whether a fiduciary relationship exists is fact-specific, but the main question is whether a party reposed confidence in another and reasonably relied on the other's superior expertise or knowledge. *Id.* The requisite high degree of dominance and reliance must have existed prior to the transaction giving rise to the alleged wrong, and not as a result of it. *Id.*

Further, although the duties of an indenture trustee are defined and limited by terms of the indenture, the trustee has additional duties beyond those stated in the trust indenture. *Elliott Assoc's v. J. Henry Schroder Bank & Trust Co.*, 838 F.2d 66 (2d Cir. 1988) (emphasis added). One New York court has explained these pre-default obligations as (a) avoiding conflicts of interest and discharging its obligations with absolute singleness of purpose, because of the inability of dispersed investors to enforce their rights; and (b) an indenture trustee may be liable in tort for failure to perform basic non-discretionary, ministerial tasks. *LNC Inv., Inc. v. First Fidelity Bank, Nat'l Ass'n*, 935 F.Supp.2d 1333 (S.D.N.Y. 1996); *see also AMBAC Indem. Corp. v. Bankers Trust Co.*, 573 N.Y.S.2d 204 (N.Y. 1991) ("the trustee is at all times obligated

Case 8:07-cv-00690-EAK-MAP   Document 111   Filed 07/28/2008   Page 8 of 18
*Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al.*
*Bankers Life Insurance Co.'s Response to Bank of New York's*
*Motion to Dismiss Second Amended Complaint*
*Case No. 8:07-CV-00690-EAK-MSS*

to avoid conflicts of interest with beneficiaries"; "prior to an event of default, the trustee has a fiduciary duty not to advance its own interests at the expense of bondholders.").

The fiduciary duties are activated when a conflict arises where it is evident that the indenture trustee may be sacrificing the interests of the beneficiaries in favor of its own financial position. *In re E.F. Hutton Southwest Properties II, Ltd.*, 953 F.2d 963 (5th Cir. 1992). There must be a clear possibility of this evident from the facts of the case. *Id.; See also AMBAC Indem. Corp.*, 573 N.Y.S.2d at 340 (holding that where trustee invaded trust accounts and wrongfully appropriated to its own use funds from an account designated for bond redemption and charged excessive fees and paid them to itself in advance of payment of superior obligations, the plaintiffs properly raised claims for breach of fiduciary duty on those bases by the trustee in advance of a default).

That is the case here. Bank One (as predecessor to BNY) was in a position to prevent financial injury to the certificateholders, including Bankers, which included acting fairly and honestly toward the certificateholders. As alleged, Bank One (as predecessor of BNY) had an obligation to do so because it was placed in a position of trust in which was required to manage the securities for the benefit of the certificate holders. However, Bank One's participation in the misconduct and the conspiracy to reap a continued financial benefit for itself and the other Defendants created a conflict of interest because Bank One's participation in the conspiracy meant a financial gain to Bank One and its co-defendants and financial losses to the certificateholders, including Bankers. Bankers can state this claim in addition to the breach of contract claim because the fiduciary duties stated in this Count are not duties that arise solely

Case 8:07-cv-00690-EAK-MAP   Document 111   Filed 07/28/2008   Page 9 of 18

*Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al.*
*Bankers Life Insurance Co.'s Response to Bank of New York's*
*Motion to Dismiss Second Amended Complaint*
Case No. 8:07-CV-00690-EAK-MSS

under the PSA; instead they are extra-contractual duties that the law imposes on indenture trustees.

BNY's reliance on the *Raymond James & Associates v. The Bank of New York Trust Co.*, and *AG Capital Funding Partners, L.P. v. State Street Bank and Trust Co.* is misplaced because neither case supports BNY's position. Specifically, neither *Raymond James* nor *AG Capital* hold that even when there is a conflict of interest, as alleged here, a plaintiff like Bankers, cannot assert a claim for breach of fiduciary duty. To the contrary, *AG Capital* actually cites to a case on which Bankers relies, *Elliott Associates*, for the position that BNY had a pre-default duty to avoid conflicts of interest, which in this case, it obviously did not. So even with the "plain meaning" of the PSA, the defendant still had a legal, pre-default obligation to avoid conflicts of interest with which it did not comply.

As such, Bankers has stated a claim for breach of fiduciary duty and the motion as to this count must be denied.

### Point IV

### BANKERS PROPERLY ALLEGED BNY BREACHED THE PSA

BNY attempts to avoid liability for breaching the PSA by claiming that it relied in good faith on information from co-defendants or it never received information from co-defendants, so there was no duty to report information to Bankers. However, such a position would condone a trustee's intentional ignorance or willful blindness. The fact that the trustee was not receiving needed information should have made BNY and its predecessor more proactive, not more complacent.

In count XIV, Bankers alleges that BNY breached the PSA by failing to provide notice to

Case 8:07-cv-00690-EAK-MAP   Document 111   Filed 07/28/2008   Page 10 of 18

Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al.
Bankers Life Insurance Co.'s Response to Bank of New York's
Motion to Dismiss Second Amended Complaint
Case No. 8:07-CV-00690-EAK-MSS

the rating agencies in writing of: (a) any substitution of any Mortgage Loan; (b) any payment or draw on any insurance policy applicable to the Mortgage Loans; (c) the final payment of any amount owing to a Class of Certificates; (d) any Event of Default under this Agreement; and (e) any Mortgage Loan repurchased in accordance with the Pooling and Servicing Agreement. Second Am. Compl. at ¶ 134. Additionally, in count XV, Bankers claims that under § 4.04 of the Pooling and Servicing Agreement, BNY was required to provide a monthly statement to certificate holders, including Bankers, regarding various aspects of the Mortgage Loans and the Certificates, including, but not limited to, (a) the number and aggregate principal amounts of the foreclosure loans that were in foreclosure or delinquent (§ 4.4(ix)); (b) the number and principal amount of claims submitted under the insurance policy (§ 4.4(xiv)). Second Am. Compl. at ¶¶ 137-8. In its defense of these claims, BNY essentially admitted that the Servicer never provided information on the loans that were delinquent or in foreclosure, and BNY informed Bankers in its monthly report that no insurance claim information was ever received. This finger-pointing response by BNY further evidences BNY's failure to comply with the PSA.

As Bankers alleged in paragraph 20 of the Second Amended Complaint, there were multiple delinquent loans in the pool of which Bank One (as predecessor in interest to BNY) had knowledge, but which were hidden from Bankers. See Second Am. Compl. at ¶ 20. This is a fact that Bank One (as predecessor to BNY) knew, but failed to report. See Id. BNY (as successor to Bank One) attempts to avoid liability by claiming that it never obtained this information from the servicer. However, BNY cannot fail to obtain information it was required to report, sit idly by without the information, and then claim that it is not liable for doing nothing. As a result of BNY's decision to knowingly turn a blind eye to the delinquent loans and

Case 8:07-cv-00690-EAK-MAP   Document 111   Filed 07/28/2008   Page 11 of 18

*Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al.*
*Bankers Life Insurance Co.'s Response to Bank of New York's*
*Motion to Dismiss Second Amended Complaint*
*Case No. 8:07-CV-00690-EAK-MSS*

to hide that information from the certificate holders, no insurance claims were made with regard to these delinquent loans, which in turn ensured that the monthly reports did not reflect insurance claim information. Therefore, even if BNY is being truthful that it did not receive information from its co-defendants to report to the certificate holders (which BNY claims is its excuse for not properly reporting, which is a breach of the PSA), BNY is liable for not taking action to obtain the information. BNY may have a cross-claim for indemnification against its co-defendants who failed to timely provide information to BNY, but their failure does not absolve BNY from its obligation to fulfill is obligations to Certificate holders, which is the basis of the Breach of Contract claims against BNY.

### Point V

### BNY AND THE OTHER DEFENDANTS HAVE MADE COMPLIANCE WITH THE "NO ACTION" CLAUSE IMPOSSIBLE, AND THEREFORE, <u>IT DOES NOT APPLY IN THIS CASE AS FUTILE</u>

The provision in the PSA on which defendants rely for the argument that Bankers cannot bring this action because it failed to have 25% of the certificate holders request that the Trustee institute this action is generally referred to as a "no action" clause. Bankers has alleged in the Second Amended Complaint that "in light of BoNY's prior refusals to respond to any of Bankers' requests [for information], coupled with the fraud committed by all Defendants and the fact that BoNY would be required to sue itself, any demand by Bankers [under the "no action clause"] would be futile" (paragraph 159) and "Bankers has attempted on several occasions to obtain information from BoNY has refused to provide the requested information." (paragraph

11

Case 8:07-cv-00690-EAK-MAP   Document 111   Filed 07/28/2008   Page 12 of 18

*Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al.*
*Bankers Life Insurance Co.'s Response to Bank of New York's*
*Motion to Dismiss Second Amended Complaint*
*Case No. 8:07-CV-00690-EAK-MSS*

160).[2] In other words, Bankers has alleged that it would have complied with the "no action" clause, but that (a) BoNY has refused to provide Bankers with the information necessary to do so; and (b) BoNY cannot be expected to sue itself even if such a demand for it to do so is made by the certificate holders whose identity BoNY has previously withheld from Bankers.

Although courts have held that "no action" clauses should be strictly construed, courts have excused the requirement for compliance with them when doing so would be futile. In this regard, *Feldbaum v. McCrory Corp.*, Nos. 11866, 11920, 12006, 1992 WL 119095 at *7 (Del. Ch. 1992) explained that:

> **I do not mean to imply that courts will apply no-action clauses to bar claims where misconduct by the trustee is alleged.** For the same reason that equity has long recognized that, in some circumstances, corporate shareholders will be excused from making a demand to sue upon corporate directors, but will be permitted to sue in the corporation's name themselves, **bondholders will be excused from compliance with a no-action provision where they allege specific facts which if true establish that the trustee itself has breached its duty under the indenture or is incapable of disinterestedly performing that duty.**

*Id.* at *7 (emphasis added). This conclusion is logical because it would be absurd to require a certificate holder to ask a Trustee to sue himself. *See Cruden v. Bank of N.Y.*, 957 F.2d 961, 968 (S.D.N.Y. 1992). *See also In re: N.Y. City Housing Dev. Corp.*, No. 86-CV-3274 RJW 1987 WL 494921 (S.D.N.Y. May 11, 1987) ("once it becomes clear that one party will not live up to the contract, the aggrieved party is relieved from the performance of futile acts, such as conditions precedent").

Moreover, in *Metropolitan West Asset Mgmt. v. Magnus Funding, LLC*, No. 03 Civ. 5539(NRB), 2004 WL 1444868 (S.D.N.Y. June 25, 2004), the court explicitly held that "no

---

[2] Bankers asserts in paragraph 36 of the Amended Complaint that "[a]ll conditions precedent to the institution of this action have occurred, have been excused, are futile or impossible, are satisfied, or have been otherwise waived."

Case 8:07-cv-00690-EAK-MAP   Document 111   Filed 07/28/2008   Page 13 of 18

*Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al.*
*Bankers Life Insurance Co.'s Response to Bank of New York's*
*Motion to Dismiss Second Amended Complaint*
Case No. 8:07-CV-00690-EAK-MSS

action provisions apply according to their terms and are not broadly construed." 2004 WL 1444868 at *5 (*citing Jackson Nat'l Life Ins. Co. v. Ladish Co., Inc.*, No. 92 Civ. 9358, 1993 WL 43373 at *5 (S.D.N.Y. Feb. 18, 1993)). Therefore, where a "no action" provision by its terms applies only to claims relating to an "event of default" seeking payment of the notes themselves, such clauses do not prevent note holders from bringing extra-contractual tort claims or breach of contract claims that are not of the type to which the "no action" provision, by its terms, applies. 2004 WL 1444868 at *5 (*citing Cruden*, 957 F.2d at 961). In *Metropolitan West*, one defendant, against whom a claim for gross negligence in fulfilling his duties under the indenture was alleged, claimed that the plaintiff could not bring any claims against any of the defendants because the plaintiff had not complied with the indenture. *Id.* at *3. The trust indenture in that action provided, inter alia, that a certificate holder could not file suit unless the certificate holder notified the trustee of a continuing event of default and 25% of the note holders make a written request to the trustee to institute proceedings with respect to the event of default, but the trustee fails to do so. *Id.* at *4. The plaintiff countered arguing that it was not seeking damages due to an uncured event of default. *Id.* Instead, it was seeking damages due to mismanagement of the trust collateral and failure to safeguard the plaintiff's rights. *Id.* Ultimately, the court held that the "no action" clause did not bar all the claims merely because the plaintiff did not comply with the "no action" clause. *Id.* The court also reasoned based on the holding in *Feldbaum* in coming to its ruling, concluding that the fact there was wrongdoing on the part of the trustee that was a central issue to the case, was one of the reasons the plaintiff's claims were not barred by its failure to comply with the "no action" clause. *Id.* at *5, FN4.

Case 8:07-cv-00690-EAK-MAP   Document 111   Filed 07/28/2008   Page 14 of 18

*Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al.*
*Bankers Life Insurance Co.'s Response to Bank of New York's*
*Motion to Dismiss Second Amended Complaint*
Case No. 8:07-CV-00690-EAK-MSS

Here, there has been misconduct on the part of not just BNY, the trustee, but a conspiracy involving SPS and CSFB, as well as DLJ, the seller of the mortgages to CSFB. It would be unreasonable to expect BNY to sue itself, or its co-conspirators, because it is a part of the conspiracy that caused financial damage to the certificate holders that it was to protect. BNY also seems to think that even if compliance with the PSA would be futile, Bankers is still under the obligation to "garner support" from 25% of certificateholders. This contention is also incorrect. The case law makes abundantly clear that if a party will not live up to a contract, the aggrieved party is relieved from performance of futile acts, such as conditions precedent. Therefore, because BNY breached the PSA and conspired with the other defendants to the detriment of Bankers, Bankers has no obligation to satisfy any condition precedent at all, including garnering support from 25 % of certificate holders. *See In re: N.Y. City Housing Dev. Corp.*, 1987 WL 494921 at * 9.

Therefore, the impossibility of complying with the "no action" clause in the PSA should be recognized under the present set of facts, and compliance with the clause excused. The motion to dismiss on the basis of the "no action" clause should be denied.

## Point VI

### BANKERS HAS PROPERLY STATED A CLAIM
### AGAINST BNY FOR CIVIL CONSPIRACY

A civil conspiracy requires: (a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *Raimi v. Furlong*, 702 So.2d 1273 (Fla. 3d DCA 1997); *Cresser v. Am. Tobacco Co.*, 662 N.Y.S.2d 374 (N.Y. 1997) (recognizing civil conspiracy as a tort in New York); *City of*

Case 8:07-cv-00690-EAK-MAP    Document 111    Filed 07/28/2008    Page 15 of 18

*Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al.*
*Bankers Life Insurance Co.'s Response to Bank of New York's*
*Motion to Dismiss Second Amended Complaint*
Case No. 8:07-CV-00690-EAK-MSS

*New York v. Lead Industries Ass'n, Inc.*, No. 14365/89, 1991 WL 284454 (N.Y.S Dec. 23, 1991);

*Fisk v. Letterman*, 424 F.Supp.2d 670 (S.D.N.Y. 2006).

As an initial matter, BNY can be held liable for the torts of its predecessor trustee because it purchased the right to act as trustee for the loan portfolio in question. *See Heights*, 525 N.Y.S.2d at 653, *supra* p. 5. Bankers has also properly pled a conspiracy between the Defendants. Indeed, Bankers alleged that there was an agreement between the Defendants to engage in illegal conduct. In that regard, Bankers alleged in ¶ 154 of the Second Amended Complaint that the Defendants acted in concert, and conspired and agreed to develop and implement a scheme to defraud purchasers, such as Bankers, which was carried out by the making of material misrepresentations or omission of material facts, and failures to perform contractual obligations. Second Am. Compl. at ¶ 154. BNY's role in the conspiracy is also properly alleged in the Second Amended Complaint. BNY instead wishes to overlook them and claim that the allegation in ¶ 159 is barebones. However, the civil conspiracy count incorporates previous allegations by Bankers of illegal conduct by the defendants (in which BNY or its predecessor participated) that were incorporated into that count such as withholding information from Moody's, which would have affected the ratings of the certificates and disclosed the true risks associated with the certificates, as Bankers alleged in ¶ 159. Second Am. Compl. at ¶¶ 29, 30, 33, 159.

Therefore, Bankers has clearly alleged misconduct on the part of Bank One and BNY, as its successor. Consequently, the Motion to Dismiss on this issue should accordingly be denied.

Case 8:07-cv-00690-EAK-MAP   Document 141   Filed 07/28/2008   Page 16 of 18

*Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al*
*Bankers Life Insurance Co.'s Response to Bank of New York's*
*Motion to Dismiss Second Amended Complaint*
Case No. 8:07-CV-00690-EAK-MSS

## CONCLUSION

Based on the arguments presented and the authorities cited, Bankers prays that this Court enter an order denying BNY's Motion to Dismiss and granting any other relief the court deems just. To the extent the Court considers any of BNY's arguments to have merit, Bankers should be given leave to amend its Complaint. *See, e.g., G.K. Alan Assoc., Inc. v. Lazzari*, 44 A.D.3d 95, 840 N.Y.S.2d 378, 383 (N.Y.A.D. 2 Dept., 2007).

Respectfully submitted,

BRIAN R. KOPELOWITZ
Florida Bar No. 097255
e-mail – Kopelowitz@tkolaw.com
The Kopelowitz Ostrow Firm, P.A.
200 SW 1st Ave., 12th Floor
Fort Lauderdale, FL 33301
Telephone:   (954) 525-4100
Facsimile:   (954) 525-4300
Co-Counsel for Plaintiff

Dated: July 28, 2008

/S/ Brian R. Kopelowitz
BRIAN R. KOPELOWITZ

DALE LEDBETTER
Florida Bar No.: 0948411
e-mail – dledbetter@dlsecuritieslaw.com
Ledbetter & Associates, P.A.
350 East Las Olas Boulevard
Suite 1700
Fort Lauderdale, Florida 33301
Telephone:   (954) 766-7875
Facsimile:   (954) 766-7800
Co-Counsel for Plaintiff

/S/ Dale Ledbetter
DALE LEDBETTER

Case 8:07-cv-00690-EAK-MAP   Document 111   Filed 07/28/2008   Page 17 of 18

*Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al.*
*Bankers Life Insurance Co.'s Response to Bank of New York's*
*Motion to Dismiss Second Amended Complaint*
*Case No. 8:07-CV-00690-EAK-MSS*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on July 28, 2008, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, in the manner specified, either via transmission of Notices of Electronic filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

/s/ Brian Kopelowitz

## SERVICE LIST
Case No.. 8:07-CV-00690-EAK-MSS

John M. Murray, Esq.
jmurray@mmhlaw.com
Christopher Doran, Esq.
cdoran@mmhlaw.com
Murray, Mariani & Herman, P.A.
Bank of America Plaza
101 E. Kennedy Blvd., Suite 1810
Telephone:   813 222 1800
Facsimile:    813 222 1801
Attorney for Triad Guaranty Insurance

Simon A. Fleischmann, Esq.
sfleichmann@lordbissell.com
Thomas J. Cunningham, Esq.
tcunningham@lordbissell.com
Lord Bissell & Brook, LLP
111 South Wacker Drive
Chicago, IL 60606
Telephone:   312 443 0452
Facsimile:    312 896 6471
Attorney for Triad Guaranty Insurance

Richard F. Hans, Esq.
rhans@tpw.com
Thacher Proffitt & Wood, LLP
Two World Financial Center
New York, NY 10281
Attorney for Bank of New York

Case 8:07-cv-00690-EAK-MAP    Document 111    Filed 07/28/2008    Page 18 of 18

*Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al.*
*Bankers Life Insurance Co.'s Response to Bank of New York's*
*Motion to Dismiss Second Amended Complaint*
*Case No. 8:07-CV-00690-EAK-MSS*

Edmund S. Whitson, Esq.
Edmund.whitson@akerman.com
Akerman Senterfitt
401 Jackson Street, Stuite 1700
Tampa, FL 33601
Telephone:    813 223 7333
Attorney for Bank of New York

Colleen J. O'Loughlin, Esq.
colouglin@mckeenelson.com
Scott Eckas, Esq
seckas@mckeenelson.com
McKee Nelson, LLP
One Battery Park Plaza, 34th Floor
New York, NY 10004
Telephone:    917 777 4466
Facsimile      917 777 4299
Attorney for Select Portfolio Servicing, Inc.
Credit Suisse First Boston Corp.
Credit Suisse First Boston Mortgage Securities Corp.
DLJ Mortgage Capital, Inc.

John F Mariani, Esq.
jmariani@gunster.com
Gunster Yoakley & Stewart
777 S. Flagler Drive
West Palm Beach, FL 33401
Telephone:    561 650 0600
Facsimile:    561 655 5677
Attorney for Select Portfolio Servicing, Inc.
Credit Suisse First Boston Corp.
Credit Suisse First Boston Mortgage Securities Corp.
DLJ Mortgage Capital, Inc.