UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

BANKERS LIFE INSURANCE COMPANY,

 Plaintiff,

vs.

CREDIT SUISSE FIRST BOSTON
CORPORATION, also known as Credit Suisse
Securities (USA) LLC, CREDIT SUISSE
FIRST BOSTON MORTGAGE SECURITIES
CORP., DLJ MORTGAGE CAPITAL, INC.,
TRIAD GUARANTY INSURANCE
CORPORATION, SELECT PORTFOLIO
SERVICING, INC. and BANK OF NEW
YORK,

 Defendants.

Civil Action No.

8:07-CV-00690-EAK-MSS

## BANKERS LIFE INSURANCE COMPANY'S RESPONSE TO CREDIT SUISSE SECURITIES (USA) LLC, CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORP., DLJ MORTGAGE CAPITAL, INC., AND SELECT PORTFOLIO SERVICING, INC.'S MOTION TO DISMISS

Plaintiff, Bankers Life Insurance Company ("Bankers") respectfully submits this Response Opposing the Motion of Defendants Credit Suisse Securities (USA) LLC ("Credit Suisse"), Credit Suisse First Boston Mortgage Securities Corp. ("Credit Suisse Mortgage"), DLJ Mortgage Capital, Inc. ("DLJ") and Select Portfolio Servicing, Inc. ("SPS") (collectively the "Credit Suisse Defendants") to Dismiss the Second Amended Complaint. As the authorities cited hereinbelow demonstrate, the Defendants' Motion to Dismiss is without merit and must be denied.

*Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al.*
*Bankers Life Insurance Co.'s Response to Credit Suisse's Motion to Dismiss Second Amended Complaint*
Case No. 8:07-CV-00690-EAK-MSS

## RESPONSE TO CREDIT SUISSE DEFENDANTS'
## BACKGROUND AND RELEVANT FACTS

The Credit Suisse Defendants, throughout the Motion to Dismiss Bankers' Second Amended Complaint, repeatedly attempt to avoid liability by noting that the Credit Suisse Defendants' actions or, more appropriately, inactions occurred <u>after</u> the issuance date of the Prospectus and Supplemental Prospectus and that Bankers did not purchase the subject Securities until approximately two years after the issuance of the Prospectus and Supplemental Prospectus. This is based upon the flawed premise that the Credit Suisse Defendants are permitted to sit silently while they have actual knowledge that the Prospectus and Supplemental Prospectus are false, the Pooling and Servicing Agreement is being breached, and the credit enhancement vehicles are not being utilized. Further, this assertion ignores the Credit Suisse Defendants' ongoing responsibilities including servicing the mortgage pools, curing breaches upon discovery, supplying substitute mortgages for loans that cause a breach, and/or repurchasing the subject mortgage loan. *See* Second Am. Compl at ¶¶ 17, 19, 23(c). Additionally, this oft repeated theme underscores the Credit Suisse Defendants' ability to prevent Bankers and similar certificate holders from purchasing the subject Securities had it disclosed the true status of the failed credit enhancements, fraudulent loans, and defaults.

The Credit Suisse Defendants also make several statements in their "Background and Relevant Facts" section that require a closer examination and expose the flaws in their position. For instance, the Credit Suisse Defendants note that subordinated purchasers such as Bankers were exposed to heightened risks and were to be compensated for this heightened risk with a fixed rate of 7.75% return. However, the "least risky" certificates described by the Credit Suisse Defendants are floating rate securities and with a pay rate of one month LIBOR plus 65 basis

2

Case 8:07-cv-00690-EAK-MAP    Document 112    Filed 07/28/2008    Page 3 of 16

*Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al.*
*Bankers Life Insurance Co.'s Response to Credit Suisse's Motion to Dismiss Second Amended Complaint*
*Case No. 8:07-CV-00690-EAK-MSS*

points, could rise to as high as 8.5% if the LIBOR rate rose to 7.85%. Floating rate securities enable an investor to manage interest rate risk. Fixed securities are not necessarily more risky than floating certificates and Credit Suisse's suggestions otherwise are disingenuous and misleading. The Credit Suisse Defendants also note that Bankers' purchase was subject to the general state of the United States housing market. It is interesting to note that the subject Securities diminished in value well before the recent decline in the housing market. Regardless, the degree to which the certificates turn out to be a success or failure depends not on the United States housing market, but rather on the Credit Suisse Defendants' proper implementation of the credit enhancement vehicles, which they failed to utilize in this instance, such as over-collateralization, replacement mortgages, insurance claims, proper servicing, and prompt handling of fraudulent loans. It is the credit enhancements that are designed to protect investors from a declining market and defaulted loans. Thus, the success, or failure, of the investment depends upon the willingness of the Credit Suisse Defendants to comply with their obligations–not on the United States housing market.

Thus, although the Credit Suisse Defendants try to hide behind a statement in the offering documents that a decline in the real estate market might adversely affect the value of the certificates, the fact is that the real estate market was still sound when Defendants issued the Certificates, but a number of loans in the mortgage pool supporting the Certificates were non-performing even then. Nevertheless, Defendants never bothered to issue any information about the decline in value and nonperformance of the specific loans that were backing the certificates in question. In other words, even during one of the greatest real estate bull markets of the last century, the specific loans the Defendants selected as collateral were performing poorly even

Case 8:07-cv-00690-EAK-MAP    Document 112    Filed 07/28/2008    Page 4 of 16

*Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al.*
*Bankers Life Insurance Co.'s Response to Credit Suisse's Motion to Dismiss Second Amended Complaint*
*Case No. 8:07-CV-00690-EAK-MSS*

while the Defendants pretended the loans were performing adequately. The problem is that the loans were not performing adequately from the outset, but the Defendants sat silent and never let on that the loans were declining. Additionally, the Credit Suisse Defendants presented the loans as if they were performing loans, with full knowledge that they were not.

In another transparent attempt to deflect liability, the Credit Suisse Defendants advise the Court that the subject Certificates were rated by Moody's Investor Services, Standard & Poor's or Fitch Ratings and the ratings given to the various tranches of Certificates are in the sole judgment of the rating agencies, rather than Credit Suisse. However, rating agencies rate such tranches of Certificates based upon the credit enhancements represented to be in place to protect against a sluggish housing market or uncreditworthy borrowers. Certainly, if the rating agencies knew that the Credit Suisse Defendants' representations regarding credit enhancement were empty, the ratings would have been drastically lower at the time of the initial rating of the securities. The securities owned by Bankers were downgraded by Moody's because of losses which occurred as a result of the Credit Suisse Defendants' failure to utilize available credit enhancements prior to charging the over-collateralization account. Thus, Moody's was duped by Credit Suisse in granting the initial ratings of the Bankers' securities since the credit enhancements which appeared to be in place to protect Bankers proved to be illusory.

The Credit Suisse Defendants hope to avoid addressing their failure to apply the credit enhancements that should have protected Bankers. In fact, Credit Suisse highlighted the mortgage guaranty insurance coverage as a benefit to prospective purchasers (*See* Prospectus Supp. at S-5) and in the Credit Enhancement description (*See* Prospectus Supp. at S-8). The Triad insurance policy seemingly insured Bankers against losses that may result from default

Case 8:07-cv-00690-EAK-MAP   Document 112   Filed 07/28/2008   Page 5 of 16

*Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al.*
*Bankers Life Insurance Co.'s Response to Credit Suisse's Motion to Dismiss Second Amended Complaint*
*Case No. 8:07-CV-00690-EAK-MSS*

mortgage loans. Only after the Triad $21,000,000 available insurance proceeds were exhausted should the over collateralization account be charged. *See* Second Am. Compl. at ¶ 19(c). Bankers has alleged that there was available insurance coverage when the Credit Suisse Defendants depleted the over collateralization account for mortgage loan defaults. Bankers believes discovery will reveal as much as $18,000,000 was available for insurance claims when the Credit Suisse Defendants exhausted the over collateralization account. As a result, as Bankers has alleged, the Credit Suisse Defendants wrongfully charged the subordinate securities for losses that the insurance policy should have covered.

## LEGAL ARGUMENT AND CITATION OF AUTHORITY

### Point I

### STANDARD FOR MOTION TO DISMISS

In reviewing a motion to dismiss, all well-pleaded facts in a plaintiff's complaint and all reasonable inferences drawn from those facts must be taken as true. *Baker v. Carnival Corp.*, No. 06-21527-CIV, 2006 WL 3519093, at *1 (S.D. Fla. December 6, 2006). The federal rules do not require a claimant to set out in detail all the facts upon which the claim is based. *Id.* at *2. All that is required is a short and plain statement of the claim. *Id.* Under the federal notice pleading standard, a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts that support a claim. *See Id.* Additionally, "[i]n considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the averments of the complaint should be construed in the light most favorable to the plaintiff." *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). "Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with

Case 8:07-cv-00690-EAK-MAP   Document 112   Filed 07/28/2008   Page 6 of 16

*Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al.*
*Bankers Life Insurance Co.'s Response to Credit Suisse's Motion to Dismiss Second Amended Complaint*
Case No. 8:07-CV-00690-EAK-MSS

prejudice, but must permit the amendment." *Crouch v. Mulvihill*, No. 07-0054, 2007 WL 1657187 (D.N.J. June 4, 2007) (*citing Denton v. Hernandez*, 504 U.S. 25 (1992)).

## Point II

### THE COMMON LAW FRAUD COUNTS PROPERLY STATE CLAIMS AND ARE PLED WITH SUFFICIENT PARTICULARITY PURSUANT TO RULE 9(B)

**A.   Bankers has alleged sufficient fraud allegations with the requisite particularity.**

The elements of a claim for fraud are: (1) a false statement concerning a material fact; (2) knowledge by the person making the statement that the representation is false; (3) the intent by the person making the statement that the representation will induce another to act on it; and (4) reliance on the representation to the injury of the other party. *Larson v Correct Craft, Inc.*, 537 F.Supp.2d 1264 (M.D. Fla. 2008). Fraud must be alleged with particularity. *Wexner v. First Manhattan Co.*, 902 F.2d 169 (2d Cir. 1990). However, scienter need not be alleged with great specificity; plaintiffs are only required to plead a strong inference of fraudulent intent. *Id.* Allegations of fraud may be based on information and belief when facts are peculiarly within the opposing party's knowledge. *Id.* To satisfy the particularity requirement of Rule 9(b), a complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements. *Cosmas v. Hassett*, 886 F.2d 8 (2d Cir. 1989).

Even with these standards firmly in place, the Credit Suisse Defendants have strenuously extended the Rules' provisions to argue that Bankers has not alleged fraud with particularity.

Case 8:07-cv-00690-EAK-MAP    Document 112    Filed 07/28/2008    Page 7 of 16

*Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al.*
*Bankers Life Insurance Co.'s Response to Credit Suisse's Motion to Dismiss Second Amended Complaint*
Case No. 8:07-CV-00690-EAK-MSS

The defendants have also glossed over the critical facts underlying the fraud claims, which have been sufficiently pled.

First, and contrary to the CSFB defendants' position, Bankers has clearly alleged fraudulent statements or omissions by the defendants. Indeed, in ¶¶ 17 and 19 of the Second Amended Complaint, Bankers alleged that the Prospectus and the Supplement, which the defendants prepared, contained the following false representations:

> a. [n]o mortgage loan [that makes up the pool collateralizing the Certificates] will be delinquent more than 30 days as of the cut-off date, which was November 1, 2001;
>
> b. In the event of a breach of any representation or warranty relating to a mortgage loan that materially and adversely affects the interest of the certificateholders in that mortgage loan, the seller of that mortgage loan (including defendant DLJ) would be obligated to do one of the following: (i) cure that breach; (ii) repurchase that mortgage loan ... or (iii) substitute a replacement mortgage loan for that mortgage loan within two years of the closing date (*see* Exhibit "B", S-17 and S-18);
>
> c. That credit support would be provided by over-collateralization of $2,286,915 which would be properly administered;
>
> d. That fraudulent mortgage loans would be returned to DLJ;
>
> e. That the mortgage loans would be properly serviced; and
>
> f. That insurance claims would be properly filed and pursued.

Bankers also alleged the following misrepresentations in ¶ 55 of the Second Amended Complaint:

> a. CSFB failed to disclose the presence of default and fraudulent mortgages based upon numerous submissions of claims to Triad Insurance Company, yet failed to disclose them to purchasers or Moody's despite actual knowledge;
>
> b. That there were at least 190 claims arising from the Certificates were submitted to Triad Insurance Company, and that at least 51 claims were rescinded or denied by Triad Insurance Company due to misrepresentations;

Case 8:07-cv-00690-EAK-MAP   Document 112   Filed 07/28/2008   Page 8 of 16

*Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al.*
*Bankers Life Insurance Co.'s Response to Credit Suisse's Motion to Dismiss Second Amended Complaint*
*Case No. 8:07-CV-00690-EAK-MSS*

and

    c. that insurance claims had been presented to Triad, and that there was a need to present additional insurance claims to Triad because of the existence of defaulted and fraudulent mortgage loans within Security I-B-2 and I-B-3.

Bankers further alleged that the following misrepresentations were made by DLJ:

    a. That all payments due prior to the Cut-Off Date for such Mortgage Loans that formed the collateral for the Certificates had been made as of the Closing Date;

    b. The Mortgage Loans were not delinquent in payment more than 30 days;

    c. There are no material defaults under the terms of the Mortgage Loan; and

    d. That there was no fraud, error, omission, misrepresentation, negligence, or similar occurrence with respect to the Mortgage Loan on the part of Seller or the Mortgagor.

Second, Rule 9(b)'s heightened level of particularity in pleading fraud claims has been met by Bankers alleging when and where the statements were made, and identifying those responsible for the statements. To do so, Bankers has alleged that the Prospectus (which contained some of the subject misrepresentations) was published on October 23, 2001, and the Supplement (containing more misrepresentations) was published on November 29, 2001. Second Am. Compl. at ¶ 16. Bankers also alleged that in furtherance of the fraudulent conduct, the CSFB defendants entered into the Pooling and Servicing Agreement on November 1, 2001, and DLJ's misrepresentations were made in the Pooling and Servicing Agreement on November 1, 2001. Second Am. Compl. at ¶¶ 18(c), 23.

Bankers went further to explain how the representations were false by alleging that "at least 132 of the loans underlying the Certificates were more than 30 days delinquent as of November 30, 2001", quite contrary to the representation in at page S-5 of the Prospectus Supplement. Second Am. Compl. at ¶ 20. Bankers further explained the falsity of the

Case 8:07-cv-00690-EAK-MAP   Document 112   Filed 07/28/2008   Page 9 of 16

*Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al.*
*Bankers Life Insurance Co.'s Response to Credit Suisse's Motion to Dismiss Second Amended Complaint*
*Case No. 8:07-CV-00690-EAK-MSS*

representations in footnote 4, explaining that the losses from the delinquent loans were charged to the over-collateralization account, when they should have been charged or returned to DLJ, or insurance claims for them should have been filed with Triad. Second Am. Compl. at p. 7. Additionally, Bankers alleged DLJ did not cure the breaches of the representations and warranties it made, nor did it repurchase the delinquent loans or supply substitute collateral for the breach of the representation or warranty, as it stated it would. Second Am. Compl. at ¶¶ 26, 56.

Third, Bankers has pled that the Credit Suisse Defendants knew or should have known that their statements were false, and their omissions were material. Indeed, the Credit Suisse Defendants participated in the preparation of the very Prospectus and the Supplement that contained the misrepresentations. Second Am. Compl. at ¶ 21, 52. The Credit Suisse Defendants also knew or should have known that purchasers like Bankers would rely on the statements because they themselves told purchasers, including Bankers, that they should rely on the information in the Prospectus Supplement, and no one else was authorized to provide them information. Second Am. Compl. at ¶ 22, 50. Finally, as alleged, the Credit Suisse Defendants knew DLJ failed to cure the breaches of warranties because they knew from the outset that there were delinquent loans, but none of the loans were repurchased. See Second Am. Compl. at ¶¶ 19, 20, 25, 26.

Fourth, Bankers has alleged it was misled because it relied on the defendants' misrepresentations that they would cure discovered breaches and submit claims to Triad. Additionally, the plaintiffs were misled by the inaccurate Moody's ratings resulting from the defendants' failure to account for the delinquent and poor quality loans in the pool backing the

Case 8:07-cv-00690-EAK-MAP   Document 112   Filed 07/28/2008   Page 10 of 16

*Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al.*
*Bankers Life Insurance Co.'s Response to Credit Suisse's Motion to Dismiss Second Amended*
*Complaint*
*Case No. 8:07-CV-00690-EAK-MSS*

securities. Bankers would not have purchased the securities but for these misrepresentations and omissions. Second Am. Compl. at ¶¶ 55, 57, 58.

Fifth, the Credit Suisse Defendants also ignore Bankers' allegations of Defendants' emphasis on continued profit, rather than disclosure to the investing public. As Bankers alleged in the Second Amended Complaint at ¶ 53 ". . . because underwriting, acquiring and packaging mortgages, such as the mortgages that comprise Security I-B-2 and Security I-B3, proved to be extremely profitable for CSFB and its affiliates . . .," the Credit Suisse Defendants developed a comprehensive system to ensure continued profits, including: (a) pressuring mortgage originators to lower their criteria and underwriting standards for evaluating the mortgages and borrowers that comprised Security I-B-2 and Security I-B-3; and (b) aggressively seeking more sub-prime mortgages from the originators, even though the loans were of poor quality. Second Amended Complaint at ¶ 53.

The Credit Suisse Defendants belabor the fact that Bankers has not identified the loan originators and they have not been added to the lawsuit. However, such originators are agents of the Credit Suisse Defendants and additionally, this is information that is in the Defendants' possession to which Bankers does not have access until discovery commences. *See Wexner*, supra p. 5. Discovery will further detail the identify of the originators and the reckless pressure applied upon the originators by the Credit Suisse Defendants.

**B.     Bankers has sufficiently alleged the materiality of the misrepresentations.**

One of the very cases cited by the Credit Suisse Defendants supports Bankers' position that it has sufficiently pled materiality. Indeed, in *Butterworth v. Quick & Reilly*, the court explained that the United States Supreme Court has held the materiality of a particular statement

Case 8:07-cv-00690-EAK-MAP   Document 112   Filed 07/28/2008   Page 11 of 16
Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al.
Bankers Life Insurance Co.'s Response to Credit Suisse's Motion to Dismiss Second Amended Complaint
Case No. 8:07-CV-00690-EAK-MSS

or omission must be measured on the "total mix" of other information available to the investor, and the investor's intentions in making the investment. 998 F. Supp. 1404 (M.D. Fla. 1998) (citing *Basic Inc. v. Levinson*, 485 U.S. 224 (1988)). To fulfill the materiality requirement "there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Id.*

Undoubtedly, the allegations in Plaintiff's Second Amended Complaint, particularly regarding the above-referenced misrepresentations and omissions made by the Credit Suisse Defendants, would enter into a reasonable investor's "total mix" in making such an investment.

C. **Bankers has reasonably relied on the misrepresentations made by the defendants.**

The defendants argue that Bankers had access to critical information and did not take advantage of it. Therefore, there is no reasonable or justifiable reliance. However, as has been alleged throughout the Second Amended Complaint, the information provided to Bankers was not true and was incomplete. Additionally, as alleged, the monthly trustee statements were not updated and included no information regarding insurance claims.

The Defendants also make much of the fact that the Supplemental Prospectus on which Bankers relied was not the "primary source" of information for investors, and instead the un-updated Trustee Statements were. However, the way the relevant provision is presented on page S-72 of supplement is also misleading. The provision says "the **primary** source of information available to investors concerning the preferred certificates will be monthly statements . . .." (emphasis added). The provision then goes on to provide that "there can be no assurance that

Case 8:07-cv-00690-EAK-MAP    Document 112    Filed 07/28/2008    Page 12 of 16

*Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al.*
*Bankers Life Insurance Co.'s Response to Credit Suisse's Motion to Dismiss Second Amended Complaint*
*Case No. 8:07-CV-00690-EAK-MSS*

any additional information regarding the offered certificates will be available through any other source." Therefore, secondary market purchasers like Bankers were never told not to rely on the Prospectus Supplement. Instead, they were told their primary source of information was another document, **but not the only source**. In the absence of the updated trustee statements, secondary market purchasers could and did reasonably rely on the Prospectus Supplement.

### D.    Bankers has properly alleged proximate cause.

The Defendants are now attempting to impose a heightened pleading requirement that Bankers has to plead proximate causation and show that the harm it has suffered is independent of any other causes. Even if the Court indulges the Defendants in this assertion, the Second Amended Complaint alleges sufficient facts to demonstrate this proximate causation. The short version of the Credit Suisse Defendants' argument in this regard is that Bankers cannot establish that its losses are due to a misstatement or omission concealed by the Credit Suisse Defendants. However, as Bankers has consistently alleged, if the false representations and omissions were not made, Bankers would not have purchased the Certificates. Second Amended Complaint at ¶¶ 32, 33, 34, 41, 45, 51, 58, 72, 76, 148.

### Point III

### BANKERS HAS PROPERLY ALLEGED A CLAIM FOR CIVIL CONSPIRACY

A civil conspiracy requires: (a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *Raimi v. Furlong*, 702 So.2d 1273 (Fla. 3d DCA 1997); *Cresser v. Am. Tobacco*

Case 8:07-cv-00690-EAK-MAP   Document 112   Filed 07/28/2008   Page 13 of 16

*Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al.*
*Bankers Life Insurance Co.'s Response to Credit Suisse's Motion to Dismiss Second Amended Complaint*
Case No. 8:07-CV-00690-EAK-MSS

Co., 662 N.Y.S.2d 374 (N.Y. 1997) (recognizing civil conspiracy as a tort in New York); *City of New York v. Lead Industries Ass'n, Inc.*, No. 14365/89, 1991 WL 284454 (N.Y.S Dec. 23, 1991).

Contrary to the Defendant's position, Bankers alleges an agreement between the Defendants to engage in illegal conduct. In that regard, Bankers alleged in ¶ 154 of the Second Amended Complaint that the Defendants acted in concert, and conspired and agreed to develop and implement a scheme to defraud purchasers, such as Bankers, which was carried out by the making of material misrepresentations or omission of material facts, and failures to perform contractual obligations. Each defendant's role in the conspiracy is explained in ¶¶ 154 through 160 of the Second Amended Complaint. Although the Defendants continue to dispute it, the underlying tort is clearly fraud. Bankers has clearly alleged that the Defendants developed a scheme to "defraud" purchasers. Second Am. Compl. at ¶ 54.

Therefore, Bankers has properly alleged a claim for civil conspiracy.

## CONCLUSION

For all the foregoing reasons, Defendants' Motion to Dismiss Bankers' Second Amended Complaint should be denied. To the extent the Court considers any of the Defendants' arguments to have merit, Bankers should be given leave to amend its Complaint. *See, e.g., G.K. Alan Assoc., Inc. v. Lazzari*, 44 A.D.3d 95, 840 N.Y.S.2d 378, 383 (N.Y.A.D. 2 Dept. 2007).

*Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al.*
*Bankers Life Insurance Co.'s Response to Credit Suisse's Motion to Dismiss Second Amended Complaint*
Case No. 8:07-CV-00690-EAK-MSS

Respectfully submitted,

/S/ Brian R. Kopelowitz
BRIAN R. KOPELOWITZ
Florida Bar No. 097255
e-mail – Kopelowitz@tkolaw.com
The Kopelowitz Ostrow Firm, P.A.
200 SW 1st Ave., 12th Floor
Fort Lauderdale, FL 33301
Telephone:   (954) 525-4100
Facsimile:   (954) 525-4300
Co-Counsel for Plaintiff

Dated: July 28, 2008

/S/ Dale Ledbetter
DALE LEDBETTER
Florida Bar No.: 0948411
e-mail – dledbetter@dlsecuritieslaw.com
Ledbetter & Associates, P.A.
350 East Las Olas Boulevard
Suite 1700
Fort Lauderdale, Florida 33301
Telephone:   (954) 766-7875
Facsimile:   (954) 766-7800
Co-Counsel for Plaintiff

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on July 28, 2008, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, in the manner specified, either via transmission of Notices of Electronic filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

/s/ Brian Kopelowitz

*Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al.*
*Bankers Life Insurance Co.'s Response to Credit Suisse's Motion to Dismiss Second Amended Complaint*
*Case No. 8:07-CV-00690-EAK-MSS*

## SERVICE LIST
Case No.: 8:07-CV-00690-EAK-MSS

John M. Murray, Esq.
jmurray@mmhlaw.com
Christopher Doran, Esq.
cdoran@mmhlaw.com
Murray, Mariani & Herman, P.A.
Bank of America Plaza
101 E. Kennedy Blvd., Suite 1810
Telephone:   813 222 1800
Facsimile:    813 222 1801
Attorney for Triad Guaranty Insurance

Simon A. Fleischmann, Esq.
sfleichmann@lordbissell.com
Thomas J. Cunningham, Esq.
tcunningham@lordbissell.com
Lord Bissell & Brook, LLP
111 South Wacker Drive
Chicago, IL 60606
Telephone:   312 443 0452
Facsimile:    312 896 6471
Attorney for Triad Guaranty Insurance

Richard F. Hans, Esq.
rhans@tpw.com
Thacher Proffitt & Wood, LLP
Two World Financial Center
New York, NY 10281
Attorney for Bank of New York

Edmund S. Whitson, Esq.
Edmund.whitson@akerman.com
Akerman Senterfitt
401 Jackson Street, Stuite 1700
Tampa, FL 33601
Telephone:   813 223 7333
Attorney for Bank of New York

Colleen J. O'Loughlin, Esq.
colouglin@mckeenelson.com
Scott Eckas, Esq
seckas@mckeenelson.com
McKee Nelson, LLP

15

*Bankers Life Insurance Co. v. Credit Suisse First Boston Corporation, et al.*
*Bankers Life Insurance Co.'s Response to Credit Suisse's Motion to Dismiss Second Amended Complaint*
*Case No. 8:07-CV-00690-EAK-MSS*

One Battery Park Plaza, 34th Floor
New York, NY 10004
Telephone:   917 777 4466
Facsimile    917 777 4299
Attorney for Select Portfolio Servicing, Inc.
Credit Suisse First Boston Corp.
Credit Suisse First Boston Mortgage Securities Corp.
DLJ Mortgage Capital, Inc.

John F Mariani, Esq.
jmariani@gunster.com
Gunster Yoakley & Stewart
777 S. Flagler Drive
West Palm Beach, FL 33401
Telephone:   561 650 0600
Facsimile:   561 655 5677
Attorney for Select Portfolio Servicing, Inc.
Credit Suisse First Boston Corp.
Credit Suisse First Boston Mortgage Securities Corp.
DLJ Mortgage Capital, Inc.